IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joseph Iannacchino,<br>Victor Marchese, and<br>Soledad Berrios,<br>Individually and as<br>  Representatives of a Proposed Class,<br><br>        Plaintiffs,<br><br>v.<br><br>Ford Motor Company,<br>Ford Motor Company of Canada, Ltd.,<br>Magna Donnelly Corporation, Individually<br>  And d/b/a Donnelly Corp. and as successor<br>  By merger to Donnelly Corp.,<br>Intier Automotive Seating of America, Inc.,<br>  Individually and d/b/a Dortec Industries,<br>And<br>Intier Automotive Closures of America, Inc.,<br>  Individually and d/b/a Dortec Industries,<br><br>        Defendants. | Civil Action No. _____<br><br><br><br>05 - 1 1 1 4 1 RCL<br><br><br>MAGISTRATE JUDGE Sowler |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441, Defendants Ford Motor Company and Ford Motor

Company of Canada, Ltd. (collectively, "Ford") hereby remove the state court class action

entitled *Joseph Iannacchino et al. v. Ford Motor Co. et al.*, Case No. 05-0538, filed in the

Superior Court of Middlesex County, Massachusetts on February 15, 2005. The Original

Complaint (the "Complaint" or "Compl.") in this action was filed on February 15, 2005, and the

First Amended Class Action Complaint (the "Amended Complaint" or "Am. Compl.") was filed

on April 29, 2005. Ford was served with both on May 2, 2005. Thus, this Notice of Removal is

being timely filed within thirty days of service, as required by 28 U.S.C. § 1446(b). Pursuant to

28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Ford is filed with this notice at Tab A. In support of removal, Ford states as follows:

## GROUNDS FOR REMOVAL

1.     Federal jurisdiction exists over this removed action pursuant to 28 U.S.C. § 1441 because this action could originally have been filed in this Court pursuant to 28 U.S.C. §§ 1331 and 1332. Federal question jurisdiction exists over this action because an alleged violation of a Federal Motor Vehicle Safety Standard is an essential element of four of Plaintiffs' five causes of action, the proof of which involves the resolution of a substantial, disputed question of federal law, and Plaintiff's fifth cause of action – for unjust enrichment – requires the Court to determine whether Ford complied with the National Traffic and Motor Vehicle Safety Act (the "National Safety Act"), 49 U.S.C. § 30118, *et seq.*, in not initiating a recall. Moreover, diversity jurisdiction exists over this action because it is a class action in which members of the putative class are citizens of different states than Defendants and the aggregate amount in controversy exceeds the sum of $5,000,000.

2.     Defendant Magna Donnelly Corporation, which was served with the Amended Complaint on May 2, 2005, has given its consent to removal (attached hereto at Tab B).

3.     Defendants Intier Automotive Closures of America Inc. and Intier Automotive Seating of America Inc. were served with the Amended Complaint on May 2, 2005, and have given their consent to removal (attached hereto at Tab C).

## FEDERAL QUESTION JURISDICTION

## SUBSTANTIAL FEDERAL QUESTION

4.     The gravamen of Plaintiffs' Amended Complaint is the allegation that a door latch system and door handle mechanism used in model year 1997 to 2000 Ford F-150 trucks, F-250 trucks and Expeditions (the "subject vehicles") do not comply with federal safety standards, and

2

more specifically with Federal Motor Vehicle Safety Standard ("FMVSS") 206. *See* Am. Compl. ¶ 37 ("The defect in the outside door handle systems were such that the outside door handle systems are not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, 'Door Locks and Door Retention Components' or Canadian Federal Motor Vehicles Safety Standard (CMVSS) 206 at any time for Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.").

5.    Throughout the Amended Complaint, Plaintiffs repeatedly cite Defendants' alleged failure to comply with FMVSS 206 and Defendants' alleged failure to notify the National Highway Traffic Safety Administration ("NHTSA") as the basis for their various causes of action. *See, e.g., id.* ¶¶ 45-47, 49, 53, 56, 57, 59, 69, 71.

6.    Indeed, the Amended Complaint expressly alleges that Ford violated federal law, particularly the National Safety Act, by not notifying NHTSA of the vehicles' supposed noncompliance with FMVSS 206. *See id.* ¶ 38 ("Under the Motor Vehicle Safety Act . . . and the Transportation Recall Enhancement , Accountability, and Documentation Act, Ford is required to recall and repair motor vehicle defects related to safety or which causes the vehicle to be non-compliant with the FMVSS."); *id.* ¶ 74 ("Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2)."); *see also id.* ¶¶ 39-43 (detailing violations of the National Safety Act supposedly committed by Defendants).

7.    Even though Plaintiffs have artfully pled only state law causes of action to obscure this Court's subject matter jurisdiction over the action, all of their causes of action require the Court to resolve questions of federal law. Plaintiffs, for example, allege that Defendants violated the Massachusetts Consumer Protection Act and breached express and implied warranties by "[u]nfairly and deceptively applying a national safety mark to the vehicles

3

despite the fact that the vehicles did not comply with CMVSS and FMVSS 206." *Id.* ¶ 78(d); *see also id.* ¶ 93 ("Defendants expressly warranted that the vehicles, including the component parts in the outside door handle systems of those vehicles, were in compliance with CMVSS and FMVSS 206; a sticker affixed to the vehicles certifies and warrants this compliance."), *id.* ¶ 98 ("Defendants impliedly warranted that the vehicles, including the component parts in the outside door handle systems of those vehicles, were safe for the ordinary purpose and use and conformed to the promises of fact made on their label.").

8.      Likewise, Plaintiffs claim that Defendants violated the Massachusetts Consumer Protection Act and are liable for civil conspiracy for "[h]aving actually [sic] knowledge that the outside door handle system components did not comply with CMVSS and FMVSS 206 and yet failing to disclose this information for the sole purpose of limiting their financial liability." *Id.* ¶ 78(c); *see also id.* ¶ 87.

9.      Finally, in their unjust enrichment claim, which was newly added in Plaintiffs' Amended Complaint, Plaintiffs go even further and allege that "Defendants refused to issue a recall and/or fund the cost of a field fix for the defects" -- thereby suggesting that Defendants violated the National Safety Act itself. *Id.* ¶ 104.

10.     Thus, for Plaintiffs to succeed on their claim, they must show that Ford violated either FMVSS 206, which was promulgated by NHTSA pursuant to the National Safety Act, *see* 49 U.S.C. § 30111(a) (NHTSA has authority to "prescribe motor safety vehicle standards"), or the National Safety Act itself. *See* 49 U.S.C. §§ 30118(c)(1) & (2).

11.     In recent years, the United States Court of Appeals for the First Circuit has repeatedly emphasized that the so-called "federal ingredient" doctrine "remains vibrant in this circuit." *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 12 (1st Cir. 2004); *Metheny v.*

4

*Becker*, 352 F.3d 458, 460 (1st Cir. 2003). According to this doctrine, "a case arises under federal law for purposes of removal when 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Rossello-Gonzalez*, 398 F.3d at 12 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)). Hence, because Plaintiffs' causes of action rely on the resolution of substantial federal questions – *i.e.*, interpreting and determining whether Defendants violated either a federal motor vehicle safety standard promulgated pursuant to the National Safety Act or the National Safety Act itself – these claims "arise under" federal law. *See Franchise Tax Bd.*, 463 U.S. at 9 ("We have often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law"); *Almond v. Capital Props., Inc.*, 212 F.3d 20, 23-24 (1st Cir. 2000) (federal question jurisdiction existed over contract dispute that turned on whether one of the parties was obliged to ask the Federal Railroad Administration for permission before raising the rates at a parking garage); *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (federal question jurisdiction existed where the interpretation and application of the federal Clean Air Act to the contractual arrangement of the parties determined the resolution of the dispute even though the cause of action was not created by federal law), *cited with approval by Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Massachusetts, Inc.*, 352 F.3d 33, 39-41 (1st Cir. 2003).

12.    Insofar as Plaintiffs' causes of action necessarily arise under federal law, this Court has jurisdiction over the claim under 28 U.S.C. § 1331.[1]

---

[1] Even if the Court found that only one of Plaintiffs' causes of action arose under federal law, the Court would have supplemental jurisdiction over the others pursuant to 28 U.S.C. § 1367.

## DIVERSITY JURISDICTION

### APPLICABILITY OF CLASS ACTION FAIRNESS ACT OF 2005

13.     The Class Action Fairness Act of 2005 ("CAFA") was signed into law by
President George W. Bush on February 18, 2005. Pursuant to the terms of the statute, it
"appl[ies] to any civil action commenced on or after the date of enactment of this Act," *i.e.*,
February 16, 2005. Pub. L. No. 109-2, 119 Stat. 4, 14 (2005).

14.     To elude the reform provisions in CAFA, Plaintiffs filed the Complaint in this
action on February 15, 2005 – just three days before CAFA became effective – alleging that
Defendants had violated the Massachusetts Consumer Protection Act and were liable for civil
conspiracy, breach of express warranty, and breach of implied warranty. For over two months,
Plaintiffs chose not to serve Defendants with the Complaint.

15.     On April 29, 2005, still having not served Defendants with the Complaint,
Plaintiffs filed an Amended Complaint.

16.     The Amended Complaint brought a new cause of action against Defendants for
unjust enrichment. Unlike the four causes of action brought in the Complaint, which simply seek
monetary damages from Defendants for supposed injuries caused by the subject vehicles' alleged
noncompliance with FMVSS 206, Plaintiffs' unjust enrichment claim asks the Court to exercise
its equitable powers and force Defendants to disgorge their profits from the sale of the subject
vehicles because they "refused to issue a recall and/or fund the cost of a field fix for the defects."
Am. Compl. ¶ 104.

17.     To support this new cause of action, Plaintiffs also added a new factual allegation
to their Amended Complaint, specifically that Ford, in a 2000 memorandum, after "estimating

6

the cost of the field fix, recommended not to fix the outside door handles in the affected
vehicles." Am. Compl. ¶ 73.

18.     Because the Amended Complaint adds a new cause of action supported, in turn,
by a new allegation, it does not "relate back" to the Complaint, *see* Fed. R. Civ. P. 15, but instead
supersedes the Complaint. *See New Bank of New England, N.A. v. Tritek Communications, Inc.*,
143 F.R.D. 13, 17 (D. Mass. 1992) ("Where the amended complaint . . . asserts a different action,
the amended complaint supersedes the original and should serve as the Court's basis for
determining jurisdiction."); *cf. Benjelloun v. Robbins (In re Robbins)*, 178 B.R. 299, 305 (Bankr.
D. Mass. 1995) ("Amendment of a complaint to assert a new cause of action is the equivalent,
for statute of limitation purposes, to the filing of a new complaint on that cause of action.")
(citing *O'Loughlin v. Nat'l R.R. Passenger Corp.*, 928 F.2d 24 (1st Cir.1991)). Therefore, the
present action "commenced" with the filing of the Amended Complaint on April 29, 2005. *See
New Bank of New England*, 143 F.R.D. at 18 (deeming an action to have been commenced with
an amended complaint for the basis of determining subject matter jurisdiction because the
amended complaint alleged new causes of action that sought new types of relief).

19.     As this action commenced after the enactment of CAFA on February 18, 2005,
the provisions of that reform statute are applicable to this litigation.[2]

## COMPLETE DIVERSITY

20.     Plaintiff Joseph Iannacchino is a citizen of Massachusetts. *See* Am. Compl. ¶ 7.

21.     Plaintiff Victor Marchese is a citizen of Massachusetts. *See* Am. Compl. ¶ 8.

22.     Plaintiff Soledad Berrios is a citizen of Massachusetts. *See* Am. Compl. ¶ 9.

---

[2] Should the Court find that only Plaintiffs' unjust enrichment claim commenced after the effective date of CAFA, it
would still have supplemental jurisdiction over Plaintiffs' other claims pursuant to 28 U.S.C. § 1367.

23.    Defendant Ford Motor Company is a corporation organized and existing under the

laws of the State of Delaware, and has its principal place of business in Michigan. *See* Am.

Compl. ¶ 10. It therefore is a citizen of either Delaware or Michigan. *See* 28 U.S.C. §

1332(c)(1).

24.    Defendant Ford Motor Company of Canada Limited is a corporation organized

and existing under the laws of Canada, and has its principal place of business in Canada. *See*

Am. Compl. ¶ 12. It therefore is a citizen of Canada. *See* 28 U.S.C. § 1332(c)(1).

25.    Defendant Magna Donnelly Corporation is a corporation organized and existing

under the laws of the State of Michigan, and has its principal place of business in Michigan. *See*

Am. Compl. ¶ 12. It therefore is a citizen of Michigan. *See* 28 U.S.C. § 1332(c)(1).

26.    Defendants Intier Automotive Closures of America Inc. and Intier Automotive

Seating of America Inc. are both corporations organized and existing under the laws of the State

of Delaware, and have their principal place of business in Michigan. *See* Am. Compl. ¶¶ 13-14.

They therefore are citizens of either Delaware or Michigan. *See* 28 U.S.C. § 1332(c)(1).

27.    Because Plaintiffs are citizens of Massachusetts and none of the Defendants are

citizens of Massachusetts, the diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is clearly met.

## AMOUNT IN CONTROVERSY

28.    Plaintiffs seek to certify the following class:

Owners of model year 1997 to 2000 Ford F-150, Ford 250 (light duty), Ford
Expedition or model year 2000 Ford F150 Super Crew vehicles that contain
defective outside door handle systems and who are residents of Massachusetts.
Excluded from the class are all claims for personal injury by Plaintiffs or class
members. Also excluded from the class are defendants, any entity in which
defendants have a controlling interest and defendants' legal representatives heirs
and successors.

Am. Compl. ¶ 23.

8

29.     Approximately 43,242 new Ford F-150 trucks, F-250 trucks, and Expeditions, model years 1997-2000, were sold in Massachusetts. *See* Declaration of Richard Serafini (attached hereto at Tab D) ¶ 7.

30.     While the body of the Amended Complaint is artfully vague as to the type and amount of damages Plaintiffs and other putative class members supposedly suffered, Plaintiffs' demand letters, which are attached to the Amended Complaint, assert that "[e]ach individual Plaintiff has suffered economic damages based on the conducts of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle." Am. Compl. Exs. A-E.

31.     Multiplying this amount times the number of subject vehicles sold in Massachusetts shows that at least $51,890,400 in damages is in dispute in this litigation.

32.     This estimate for the amount in controversy, moreover, does not even include double or treble damages, which Plaintiffs can seek under the Massachusetts Consumer Protection Act and thus which must be included in any complete calculation of the amount in controversy. *See* Am. Compl. ¶ 82; Am. Compl. Prayer for Relief ¶ 3; Am Compl. Exs. A-E ("If you fail to make a tender of settlement [of $1,200 per putative class member], or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs, and attorneys' fees."); Mass. Gen. Laws ch. 93A, § 9(3) ("[I]f the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two.").

9

33.    Accordingly, through their pleadings in the Amended Complaint, Plaintiffs have

placed an amount in controversy far greater than the $5,000,000 required for diversity

jurisdiction purposes under 28 U.S.C. § 1332(d)(2).

34.    Concurrent with the filing of this Notice of Removal, Ford is giving written notice

of this Notice of Removal to the Superior Court of Middlesex County, Massachusetts.

Dated:  June 1, 2005                                Respectfully Submitted,

                                                    FORD MOTOR COMPANY,
                                                    FORD MOTOR COMPANY OF
                                                    CANADA, LTD.,

                                                    By their Attorneys:

                                                    Joseph S. Sano (BBO # 545706)
                                                    Walter B. Prince, Esq. (BBO#: 406640)
                                                    Daniel S. Tarlow, Esq. (BBO# 552920)
                                                    PRINCE, LOBEL, GLOVSKY & TYE LLP
                                                    585 Commercial Street
                                                    Boston, MA 02109
                                                    (617) 456-8100

**OF COUNSEL:**

John H. Beisner
John F. Niblock
Mel Andrew Schwing
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., Suite 1000
Washington, D.C.  20006-4001
(202) 383-5300 – Telephone
(202) 383-5414 – Fax

## CERTIFICATE OF SERVICE

I, Joseph S. Sano, hereby certify that on June 1, 2005, I served the within document by causing copies to be mailed by first class mail postage prepaid to counsel of record as follows:

Plaintiffs' Counsel:
David C. Strouss, Esq.
Kristin Marquis Fritz, Esq.
THORNTON & NAUMES
100 Summer Street – 30th Floor
Boston, MA 02110

Plaintiffs' Counsel:
Frederick Jekel, Esq.
William Narwold, Esq.
Suzanne Lafleur Klok, Esq.
MOTLEY RICE LLP
28 Bridgeside Boulevard
Mt. Pleasant, SC  29464

Intier Automotive Counsel:
John B. Strasburger, Esq.
James Messenger, Esq.
Jason W. Billeck, Esq.
Weil, Gotshal & Manges LLP
700 Louisiana
Suite 1600
Houston, Texas 77002

Magna Donnelly Corp.'s Counsel:
Terri Steinhaus Reiskin, Esq.
Hogan & Hartson
Columbia Square
555 Thirteenth Street, NW
Washington, DC  20004-1109

Of Counsel - Ford Motor Company:
John H. Beisner
John F. Niblock
Mel Andrew Schwing
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., Suite 1000
Washington, D.C.  20006-4001

Joseph S. Sano

DC1:627055.3

11

**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —**
**TORT — MOTOR VEHICLE TORT — CONTRACT —**
**EQUITABLE RELIEF — OTHER**

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE

.......... MIDDLESEX .......... , ss

[seal]

TRIAL COURT
CIVIL ACTION

JOSEPH IANNUCCHINO, VICTOR MARCHESE, and
SOLEDAD BERRIOS, Individually and as
Representatives of a Proposed Class

No.

05-0538

............................................ , Plaintiff(s)

v.

FORD MOTOR COMPANY, et al.

...................................... , Defendant(s)

## SUMMONS

## FORD MOTOR COMPANY

To the above-named Defendant:

THORNTON & NAUMES, LLP

You are hereby summoned and required to serve upon ....................................................................

................................................. plaintiff's attorney, whose address is ......... 100 Summer St., 30th Fl.,

..... Boston, MA 02110 ................................................, an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .................. 40 Thorndike St.,

..... Cambridge, MA 02141 ........................ either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a). your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

**Barbara J. Rouse**

Witness, Suzanne V. DelVecchio, Esquire. at .........................................................................................

the ................. 29th ............................. day of .................. APRIL ...................................

...................., in the year of our Lord ........................................... 2005

5/2/05

Clerk

* TRACKING ORDER; CIVIL ACTION COVER SHEET; COMPLAINT (with Exhibits A through F); PLAINTIFFS' NOTICE OF FILING
FIRST AMENDED COMPLAINT; and FIRST AMENDED COMPLAINT (with Exhibits A through F)

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

**Commonwealth of Massachusetts**
**County of Middlesex**
**The Superior Court**

CIVIL DOCKET# **MICV2005-00538-E**

RE:    **Iannacchino, Individually & Representative Of A Proposed Class et al v Ford Motor Company et al**

TO: David C Strouss, Esquire
Thornton & Naumes
100 Summer Street
30th floor
Boston, MA 02110

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                          DEADLINE

| | |
|---|---|
| Service of process made and return filed with the Court | 05/16/2005 |
| Response to the complaint filed (also see MRCP 12) | 07/15/2005 |
| All motions under MRCP 12, 19, and 20 filed | 07/15/2005 ✓ |
| All motions under MRCP 15 filed | 07/15/2005 ✓ |
| All discovery requests and depositions completed | 12/12/2005 ✓ |
| All motions under MRCP 56 served and heard | 01/11/2006 ✓ |
| Final pre-trial conference held and firm trial date set | 02/10/2006 |
| Case disposed | 04/11/2006 |

The final pre-trial deadline is **not the scheduled date of the conference**.  You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to session **E** sitting in **Rm 7B (Cambridge) at Middlesex Superior Court.**

Dated: 02/22/2005                                             Edward J. Sullivan
                                                              Clerk of the Courts

                                                              BY: Arthur B. Sutherland
                                                              Assistant Clerk

Location: Rm 7B (Cambridge)
Telephone: 617-494-4010 EXT 4254

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdtracf_2.wpd 2685994 inidoc01 dipacee

| CIVIL ACTION<br>COVER SHEET | DOCKET NO.(S) | Trial Court of Massachusetts<br>Superior Court Department <br>County: MIDDLESEX |
|---|---|---|

| PLAINTIFF(S) JOSEPH IANNACCHINO, VICTOR MARCHESE,<br>and SOLEDAD BERRIOS, Individually and as Representatives of<br>a Proposed Class | DEFENDANT(S)<br><br>FORD MOTOR COMPANY, et al. |
|---|---|
| ATTORNEY, FIRM, ADDRESS AND TELEPHONE (617) 720-1333<br>David C. Strouss, Esq.<br>THORNTON & NAUMES, LLP<br>100 Summer St., 30th fl., Boston, MA 02110<br>Board of Bar Overseers number: 546253 | ATTORNEY (if known) |

## Origin code and track designation

Place an x in one box only:
☒ 1.FO1 Original Complaint
☐ 2.FO2 Removal to Sup.Ct. C.231, s.104
   (Before trial) (F)
☐ 3.FO3 Retransfer to Sup.Ct.C.231,s.102C(X)

☐ 4.F04 District Court Appeal c.231,s.97 & 104
   (After trial) (X)
☐ 5.F05 Reactivated after rescript; relief
   from judgment/Order (Mass.R.Civ.P.60) (X)
☐ 6.E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See Reverse Side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| | Class action involving product defect,<br>including breach of warranty and | | |
| B99 | violation of c. 93A | (F) | ( x ) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ............................................................... $...............
  2. Total Doctor expenses ................................................................ $...............
  3. Total chiropractic expenses .......................................................... $...............
  4. Total physical therapy expenses ...................................................... $...............
  5. Total other expenses (describe) ...................................................... $...............
                       Subtotal $...............
B. Documented lost wages and compensation to date ......................................... $...............
C. Documented property damages to date .................................................. $...............
D. Reasonably anticipated future medical and hospital expenses .............................. $...............
E. Reasonably anticipated lost wages .................................................... $...............
F. Other documented items of damages (describe)

                                   $...............

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
Plaintiffs and the Class they seek to represent were injured in that they (1) own vehicles that are unsafe,
(2) own vehicles that are worth less than their value were they to comply with all safety standards, and
(3) will incur the cost of repairing the vehicles to make them safe; damages for breach of warranty.

                                   $...............
                            TOTAL $...............

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

                            TOTAL $...............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 2/11/11
                              David C. Strouss, Esq.

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

SUPERIOR COURT
TRIAL DEPARTMENT

| | |
|---|---|
| Joseph Iannacchino, )<br>Victor Marchese, and )<br>Soledad Berrios, )<br>Individually and as )<br>    Representatives of a Proposed Class, )<br>  )<br>        Plaintiffs, )<br>  )<br>v.  )<br>  )<br>  )<br>  )<br>Ford Motor Company, )<br>Ford Motor Company of Canada, Ltd., )<br>Magna Donnelly Corporation, Individually )<br>  And d/b/a Donnelly Corp. and as successor )<br>  By merger to Donnelly Corp., )<br>Intier Automotive Seating of America, Inc., )<br>  Individually and d/b/a Dortec Industries, )<br>And )<br>Intier Automotive Closures of America, Inc.,)<br>  Individually and d/b/a Dortec Industries, )<br>  )<br>        Defendants. )<br> ) | **05-0538**<br><br>CIVIL ACTION NO: _____<br><br><br><br>**COMPLAINT<br>AND DEMAND<br>FOR JURY TRIAL**<br><br><br>FILED<br>IN THE OFFICE OF THE<br>CLERK OF THE COURTS<br>FOR THE ... ESEX<br>FEB. 15 2005<br>CLERK |

## I.    INTRODUCTION

1.  This class action centers on causes of action arising under Mass. Gen. Laws c.

93A §§ 2, 9 and on breaches of various express and implied warranties. The

acts that constitute these causes of action encompass the activities of

Defendants in designing, manufacturing, installing, supplying, selling, and

distributing defective outside door handle systems in model year 1997 to 2000

Ford F-150, Ford F250 (light duty), Ford Expedition or model year 2000 Ford

F150 Super Crew vehicles (hereinafter "the vehicles"), owned by Plaintiffs and members of the proposed Class in the Commonwealth of Massachusetts.

2. The claims arise out of Massachusetts' sovereign right to protect Massachusetts consumers as defined by Mass. Gen. Laws c. 93A. This action seeks only to hold the Defendants liable to individuals who own vehicles with defective outside door handle systems.

3. At all times relevant herein, Defendants have willfully, knowingly, and/or recklessly committed unfair or deceptive acts or practices in Massachusetts for the express unlawful purpose of wrongfully hiding the defects and their knowledge of those defects in violation of Mass. Gen. Laws c. 93A, §§ 2, 9.

4. The claims arise out of various warranties, express and implied, made by Defendants to Plaintiffs and members of the proposed Class regarding the safety and compliance of the vehicles and their component parts, as discussed herein.

5. Plaintiffs did not know, and by the exercise of reasonable diligence could not have known, (1) of all the conduct constituting violation of c. 93A and breaching various express and implied warranties, (2) that they had been injured by this unlawful conduct, and (3) the entities responsible for the unlawful conduct.

6. The facts set forth herein based upon information and belief and are only representative of facts recently revealed to Plaintiffs and their counsel.

## II.    PARTIES

### A.    Representative Plaintiffs

7.  Plaintiff Joseph Iannacchino is a resident of the Commonwealth of
    Massachusetts. Plaintiff Iannacchino owns a 1997 Ford F-150 and has been
    injured by the wrongful and illegal conduct of Defendants as explained later in
    this complaint.

8.  Plaintiff Victor Marchese is a resident of the Commonwealth of
    Massachusetts. Plaintiff Marchese owns a 1997 Ford F-250 and has been
    injured by the wrongful and illegal conduct of Defendants as explained later in
    this complaint.

9.  Plaintiff Soledad Berrios is a resident of the Commonwealth of
    Massachusetts. Plaintiff Berrios owns a 1997 Ford Expedition and has been
    injured by the wrongful and illegal conduct of Defendants as explained later in
    this complaint.

### B.    Defendants

10. Defendant Ford Motor Company is a Delaware Corporation with its principal
    place of business in Michigan. Ford Motor Company, hereinafter "Ford," is a
    manufacturer of automobiles and other vehicles, including those owned by the
    Plaintiffs.

11. Defendant Ford Motor Company of Canada Limited is a Canadian
    corporation. Ford Motor Company of Canada Limited, hereinafter "Ford
    Canada," is a manufacturer of automobiles and other vehicles, including those
    owned by the Plaintiffs.

12. Defendant, Magna Donnelly Corporation, Individually and d/b/a Donnelly
Corporation and as successor by merger to Donnelly Corporation, is a
corporation created under the laws of Michigan. Donnelly Corporation was
incorporated under the laws of Michigan on June 12, 1936. On February 19,
2003, Magna Donnelly Corporation registered to transact business in
Michigan under the assumed name of Donnelly Corporation. Magna
Donnelly Corporation, hereinafter "Donnelly," is a manufacturer of vehicle
component parts, including those parts in vehicles owned by the Plaintiffs.

13. Defendant, Intier Automotive Closures of America, Inc. Individually and d/b/a
Dortec Industries is registered to do business in Michigan. Intier Automotive
Closures of America, Inc., hereinafter "Dortec," is a manufacturer of vehicle
component parts, including those parts in vehicles owned by the Plaintiffs.

14. Defendant, Intier Automotive Seating of America, Inc. Individually and d/b/a
Dortec Industries, is a Delaware corporation that is registered to do business
in Michigan. Intier Automotive Seating of America, Inc., hereinafter
"Dortec," is a manufacturer of vehicle component parts, including those parts
in vehicles owned by the Plaintiffs.

15. Reference in this complaint to "the manufacturing defendants" includes the
Defendants as manufacturers of vehicles and their component parts and
members of that industry. Reference to "component part manufacturers" also
includes the Defendants Magna Donnelly Corp., Intier Automotive Closures
of America, Inc. and Intier Automotive Seating of America Inc. as well as
other members of that industry.

4

## II.    JURISDICTION AND VENUE

16. This is a class action brought on behalf of Massachusetts residents who own
    model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition
    or 2000 Ford F150 Super Crew vehicles that contain defective outside door
    handle systems and who, therefore, were affected in Massachusetts by
    Defendants' conduct.

17. Representative Plaintiffs are residents of the Commonwealth of Massachusetts
    own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford
    Expedition or 2000 Ford F150 Super Crew vehicles that contain defective
    outside door handle systems **and** who were injured by Defendants' conduct in
    Massachusetts.

18. Upon information and belief, at all relevant times complained of herein,
    Defendants, individually or through their co-conspirators or their agents, were
    doing business in the Commonwealth of Massachusetts.

19. Inasmuch as Defendants have (a) transacted business in this state, (b) caused
    injury, as detailed herein, by an act or omission in this state, (c) caused injury
    in this state, as detailed herein, by an act or omission outside this state and,
    moreover, regularly do or solicit business, or engage in any other persistent
    course of conduct, or derive substantial revenue from goods used or consumed
    or services rendered in this state, and (d) violated Mass. Gen. Laws c. 93A and
    breached various express and implied warranties, thereby injuring
    Massachusetts owners of certain Ford vehicles and/or materially participated
    or assisted in the above, jurisdiction may be exercised over all Defendants

5

pursuant to Mass. Gen. Laws c. 223A, § 3(a). Further, all Defendants,

individually and through their agents, otherwise engaged in business activities

in Massachusetts on a continuous and systematic basis.

20. Venue is appropriate in the Superior Court of Middlesex County,

Massachusetts as Defendants and/or their agents or representatives have

committed unfair or deceptive acts or practices in this county.

21. At all times mentioned herein, the Defendants acted through their duly

authorized agents, servants, and employees who were at all times relevant

herein acting within the course of their employment and within the scope of

their employment for the furtherance of the business of each of the Defendant

corporations.

22. Plaintiffs and the class they seek to represent ask for no direct relief under any

federal law or regulation, assert no federal claims, and withdraw any asserted

claim if it is preempted by federal law. Any remedy under federal law,

regulation, rule, or other federal authority is expressly disclaimed at this time.

no federal diversity jurisdiction exists because the amount in controversy for

any individual plaintiff or class member does not exceed $74,999.00.

## IV.    CLASS ACTION ALLEGATIONS

23. Plaintiffs bring this action on their own behalf and on behalf of all other

persons similarly situated for the purpose of asserting claims alleged herein on

a common basis, pursuant to Rule 23 of the Massachusetts Rules of Civil

6

Procedure and under Mass. Gen. Laws c. 93A, § 9(2). The proposed Class is

defined as:

> Owners of model year 1997 to 2000 Ford F-150, Ford F250 (light
> duty), Ford Expedition or model year 2000 Ford F150 Super Crew
> vehicles that contain defective outside door handle systems and
> who are residents of Massachusetts. Excluded from the class are
> all claims for personal injury by Plaintiffs or class members. Also
> excluded from the class are defendants, any entity in which
> defendants have a controlling interest and defendants' legal
> representatives heirs and successors.

24. The named representative Plaintiffs are members of the class they seek to

represent; that is, those residents of Massachusetts who own model year 1997

to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition or model year

2000 Ford F150 Super Crew vehicles that were manufactured by Ford Motor

Company or Ford Motor Company of Canada and which contain defective

outside door handle systems and who were injured by Defendants' conduct in

Massachusetts.

25. All of the outside door handles and their component parts do not comply with

FMVSS or CMVSS nor do they meet Ford's own internal standards,

regardless of the make or model or year of the vehicle.

26. This action is brought and may properly be maintained as a class action

pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure and Mass.

Gen. Laws c. 93A, § 9(2). This action satisfies the procedural requirements

set forth by Rule 23 and c. 93A, § 9(2).

27. The use or employment of unfair or deceptive acts or practices by the

Defendants, acting individually and in concert, have caused similar injury to

members of the Class who are similarly situated and who have been damaged

and/or injured by and through the allegations contained herein. The Class of

plaintiffs is so numerous that joinder of all members is impracticable.

28. There are substantial questions of law and fact common to the class.

These common questions include, but are not limited to, the following:

   a.  Whether the outside door handle systems or certain component parts in
the outside door handle systems in the vehicles are defective;

   b.  Whether Defendants knew, or became aware, that the outside door
handle systems or certain component parts in the vehicles were not
properly designed or manufactured, yet they continued to manufacture,
distribute, advertise, and market the vehicles without correcting the
problems;

   c.  Whether Defendants knew or should have known that the presence of
these defective outside door handle systems in the vehicles had the
potential to result in significant injury or death to vehicle occupants;

   d.  Whether Defendants engaged in unfair and deceptive acts or practices
when they represented that the vehicles complied with safety
standards, when in fact, and to Defendants' knowledge, they did not;

   e.  Whether the vehicles are unreasonably dangers and not fit and safe for
their ordinary and intended use;

   f.  Whether Defendants' express and implied warranties and
representations that the vehicles complied with all safety standards and
regulations, while Defendants knew or should have known that the
outside door handle systems were subject to failure during normal use
and that if such a failure occurred, the vehicle occupants would be
placed in great danger of being injured or killed, constituted a violation
of Mass. Gen. Laws c. 93A, §§ 2, 9 which prohibits "...unfair or
deceptive acts or practices in the conduct of any trade or commerce..."

   g.  Whether Defendants' failure to inform Plaintiffs, members of the
proposed Class and others that their vehicles contained defective
outside door handle systems, Defendants' silence concerning the likely
known problems with the outside door handle systems, and the fact
that these outside door handle systems were not merchantable or fit for
their intended purposes constitute violations of Mass. Gen. Laws c.
93A, §§ 2, 9 and breached express and implied warranties made to
Plaintiffs and members of the proposed Class.

h.  Whether the conduct described herein breached the various express
    and implied warranties made to Plaintiffs and members of the
    proposed Class.

i.  Whether Defendants have violated various regulations promulgated by
    the Massachusetts Attorney General, the violation of which are a per
    se violation of Mass. Gen. Laws c. 93A, to wit:

    1.  940 CMR 5.03 (5), which provides: "It is an unfair or
        deceptive act or practice for a manufacturer to fail to give
        prompt written notice of any defect in motor vehicles
        manufactured by it to its distributors, zone offices, dealers and
        other representatives, as well as to the purchasers or owners of
        such vehicles who are known to the manufacturer. Such
        written notice shall contain the following information:
            (a) A clear description of such defect and the identity of
            the model or class of vehicles in which such defect occurs;
            (b) An evaluation of the risk of accident, impairment of
            operation or performance or impairment of the value
            reasonably related to such defect;
            (c) A statement of the measures to be taken to obtain
            remedy of such defect; and
            (d) Whether the cost of such remedy or any part thereof
            will be borne by the manufacturer."

    2.  940 CMR 3.05(1), which provides: "No claim or representation
        shall be made by any means concerning a product which
        directly, or by implication, or by failure to adequately disclose
        additional relevant information, has the capacity or tendency or
        effect of deceiving buyers or prospective buyers in any
        material respect. This prohibition includes, but is not limited to,
        representations or claims relating to the construction,
        durability, reliability, manner or time of performance, safety,
        strength, condition, or life expectancy of such product, or
        financing relating to such product, or the utility of such product
        or any part thereof, or the ease with which such product may be
        operated, repaired, or maintained or the benefit to be derived
        from the use thereof."

    3.  940 CMR 3.08(2), which provides: "It shall be an unfair and
        deceptive act or practice to fail to perform or fulfill any
        promises or obligations arising under a warranty. The
        utilization of a deceptive warranty is unlawful.

j.  Whether Class members have been injured by defendants' alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties;

k.  Whether Defendants' alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 were knowing, willful, wanton, intentional, deliberate and malicious or otherwise such that plaintiffs are entitled to an award of multiple or punitive damages;

l.  Whether Defendants combined and acted in concert with one another in their alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties;

m.  Whether Defendants' alleged combination and actions in concert with one another in their alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties were done for the purpose of causing, and in fact caused, class members to be injured; and

n.  Whether Defendants' alleged combination and actions in concert with one another in their alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties were knowing, willful, wanton, intentional, deliberate and malicious or otherwise such that Plaintiffs and members of the proposed Class are entitled to an award of multiple or punitive damages.

29. The claims of the representative Plaintiffs are typical of the claims of the Class. The same events and conduct that give rise to the claims and legal theories of Plaintiffs also give rise to the same claims and legal theories of the Class. The Plaintiffs' claims are typical of the claims of the other members of the Class in that litigation of Plaintiffs' claims will advance the interest of absent Class members.

30. The representative Plaintiffs will fairly and adequately represent the interests of the Class. There are no disabling conflicts of interests between the representative Plaintiffs and the Class.

31. The named representative Plaintiffs are part of the Class, possess the same interests, and suffer the same injuries as the Class members, making their interests coextensive with those of the Class. The interests of the representative Plaintiffs and the Class are identical so that the motive and inducement to protect and preserve these interests are the same for each.

32. The Class is represented by experienced counsel well qualified to handle this case. This lawsuit will be capably and vigorously pursued by the representative Plaintiffs and their counsel. In this case, a class action is superior to other methods for the fair and efficient adjudication of the controversy.

## IV.    BACKGROUND AND FACTUAL ALLEGATIONS

33. In addition to the allegations set forth herein, Plaintiffs incorporate by reference herein the factual allegations set out in certain "demand letters" sent to Defendants pursuant to Mass. Gen. Laws c. 93A, § 9, and attached hereto as **Exhibits A - F.**

34. Ford, Ford Canada and various component part manufacturers, to wit: Magna, Donnelly, Dortec and Intier, hereinafter collectively "the manufacturing defendants," have committed unfair and deceptive acts and practices in the conduct of their trade and commerce.

35. Ford, Ford Canada and the manufacturing defendants have committed unfair and deceptive acts and practices and have deceived the National Highway Transportation Safety Administration (NHTSA), purchasers of vehicles manufactured between November 1995 and the end of April, 2000, to wit:

11

Ford F150 (various models) Model Years 1997 through 2000, Ford F250

(light duty) Model Years 1997 through 2000, Ford Expedition Model Years

1997 through 2000, and Ford F150 Super Crew Model Year 2000.

36. The wrongful conduct was designed to conceal a defect in the outside door

handle systems and certain component parts of the outside door handle

systems utilized in the above vehicles.

37. The defect in the outside door handle systems were such that the outside door

handle systems are not compliant with Federal Motor Vehicle Safety Standard

(FMVSS) 206, "Door Locks and Door Retention Components" or Canadian

Federal Motor Vehicles Safety Standard (CMVSS) 206 at any time for Model

Year 1997-2000 vehicles which were manufactured before April/May, 2000.

38. Federal law requires Ford, the manufacturing defendants and their employees

to report and investigate potential safety defects. Under the Motor Vehicle

Safety Act (the "Safety Act"), 49 U.S.C. §30101 et seq., and the

Transportation Recall Enhancement, Accountability, and Documentation Act

(the "Tread Act"), 49 U.S.C. § 30170, Ford is required to recall and repair

motor vehicle defects related to safety or which cause the vehicle to be non-

compliant with the FMVSS. Under the Tread Act, if defects are discovered,

NHTSA, as well as all known purchasers of the defective vehicles must be

notified and a recall must be implemented.

39. Under the Safety Act, the Secretary of Transportation "shall prescribe motor

vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits,

with certain limited exceptions, the manufacture for sale or the delivery in

12

interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a).

40. The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

41. The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115.

42. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2).

43. If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

44. It is believed based on current information that the outside door handle systems their component parts were designed, manufactured and installed by Ford, Ford Canada, Magna, Donnelly, Dortec and/or Intier.

45. These companies were aware that the outside door handle systems had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity.

13

46. Magna, Donnelly, Dortec and Intier knew or should have known that their respective designs and equipment they manufactured and/or installed, did not comply with FMVSS 206 and did not meet Ford's own internal standards.

47. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the outside door handle systems that were to be used in the Ford Vehicles.

48. On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Expeditions and 4-door Supercrew Cab. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their component parts were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

49. By October, 1995, Ford and Ford Canada knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206.

50. For example, but without limitation, in or about October 1995, Ford conducted crash testing of a prototype of the vehicles. During the testing, it

14

was observed that upon impact, the impacted side door would open, and after crash testing revealed that *both* impacted and non-impacted doors opened. As of that date, Ford and Ford Canada knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions.

51. Notwithstanding the above knowledge, Ford and Ford Canada continued to manufacture and market the vehicles for the next five years.

52. Ford and Ford Canada have repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective outside door handle systems over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants.

53. The receipt of this information concerning the defective outside door handle systems obligated Ford and Ford Canada to report and warn the National Highway Transport Safety Association and consumers of the defective outside door handle systems and to replace those door latches with FMVSS and CMVSS 206 compliant door handle systems.

54. In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford

and Ford Canada to inspect the tested vehicle. Ford did inspect the tested
vehicle and, at that time, removed the door handle mechanisms and took them
with them.

55. Following notice of the unintended door opening by Transport Canada, Ford
had its Critical Concern Review Group (hereinafter "CCRG") formally
investigate the issue of the doors opening upon impact. The manufacturing
defendants were involved in this investigation as well.

56. Ford and Ford Canada took no action to replace the non-compliant outside
door handle systems in any of the affected vehicles, nor did it take any steps to
warn consumers of the defective outside door handle systems.

57. In and around August and October 1997, Ford, Ford Canada and the
manufacturing defendants further investigated the defects in the affected
vehicles. Donnelly, Dortec and the other manufacturing defendants were
aware that component parts in the outside door handle systems did not comply
with CMVSS or FMVSS 206, nor did they comply with Ford's worldwide
internal guidelines.

58. In or about February 2000 an Ad Hoc Committee at Ford began an additional
investigation into the defect. By this time, Ford and Ford Canada had further
actual knowledge of the known safety related defects and had identified non-
compliant component parts in the outside door handle systems of the vehicles.
At this point in time, in excess of approximately 6,000,000 defective outside
door handle systems were in vehicles that were on the road in Canada and the
United States.

59. On or about March 6, 2000, a Ford engineering report acknowledged that the door handles did not comply with Federal guidelines, FMVSS 206. The report was based on testing and analysis conducted by Ford and the component part manufacturers—Donnelly, Dortec, Magna and Intier. The report concluded a field campaign to perform replacement should be instituted.

60. Upon receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a field campaign by hiding the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

61. In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of the vehicles. The memo concluded that a safety-related field campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000.

62. In this revision of the prior memo, Ford deleted all reference to potential accidents or injuries attributable to this defect, deleted references to the Expeditions, deleted all reference to "non-compliance," and reduced the number of affected vehicles from an estimated 3,000,000 down to an

17

estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety campaign was necessary and began its own campaign process.

63. During this time, Ford evaluated the cost to it of issuing a field campaign to perform replacement.

64. On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety campaign was deleted from this memorandum. Ford cancelled the campaign on March 30, 2000.

65. Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its outside door handle systems, initiated a field campaign program and then cancelled the campaign. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance.

66. The initial product specifications for the outside door handle systems prepared by Ford stated that the latch systems must be tested for strength, the integral part in FMVSS 206, utilizing the SAE J839 methodology. The SAE J839 methodology is the preferred method utilized to establish FMVSS 206 compliance.

18

67. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used the component part manufacturers to establish compliance for outside door handle systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work. However, the outside door handle systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase only because they had used the wrong number in their calculations of the strength of a spring in the outside door handle systems.

68. Ford and the component part manufacturers had established prior to March 3rd that the outside door handle systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the outside door handle system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to justify cancellation of the campaign.

69. With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the campaign to replace the door handle systems with FMVSS 206 complaint handles. A Ford engineer utilized a 30 year-old methodology to establish the "straw" argument that the outside door handle systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work.

70. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate.

71. Ford and the component part manufacturers never contacted NHTSA because they knew that the outside door handle systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the outside door handle systems.

72. Ford, Ford Canada and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

73. On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the vehicles. This memo discussed the field fix for Ford to replace the outside door handle systems with those that complied with FMVSS 206.

74. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2).

75. To date, consumers have not been notified and a field campaign has not been issued.

### FIRST CAUSE OF ACTION

#### (Violation of Mass. Gen. Laws c. 93A, §§2, 9
#### Unfair Methods of Competition and Unfair or Deceptive Acts and Practices)

76. Plaintiffs hereby adopt the allegations of paragraphs 1-75 and incorporate the same herein by reference.

77. Defendants and/or their predecessors are/were engaged in trade or commerce.

78. Defendants individually and collectively committed unfair and deceptive acts
    and practices in violation of the Massachusetts Consumer Protection Act,
    Mass. Gen. Laws c. 93A, §§ 2, 9, and particularly, but without limitation:

   a. Unfairly and deceptively permitting a known defective outside door
      handle system to be manufactured and installed into the vehicles which
      in turn endangered the lives and health of Plaintiffs and members of
      the proposed Class;

   b. Unfairly and deceptively disregarding information solely for the
      purpose of not having to issue a field campaign;

   c. Having actually knowledge that the outside door handle system
      components did not comply with CMVSS and FMVSS 206 and yet
      failing to disclose this information for the sole purpose of limiting
      their financial liability despite the fact that the defendants knew that
      the defect could result in serious injury and/or death;

   d. Unfairly and deceptively applying a national safety mark to the
      vehicles despite the fact that the vehicles did not comply with CMVSS
      and FMVSS 206, and fell well below internal guidelines;

   e. Unfairly and deceptively applying a national safety mark to the
      vehicles despite the fact that the defendants knew that the defect could
      result in serious injury and/or death;

   f. Unfairly and deceptively relying upon an antiquated and nonstandard
      method for testing the safety of the outside door handle system, despite

21

the fact that defendants knew that this method was not approved and did not comply with their own internal standards; and

g.  Violating Attorney General Regulations, including 940 CMR § 5.03(5), 940 CMR § 3.05(1) and 940 CMR § 3.08(2).

79. Defendants knew or should have known that these acts or practices were in violation of sections 2 and 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

80. Defendants used or employed these acts or practices in willful or knowing violation of sections 2 and 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

81. As a result of the unfair and deceptive conduct of Defendants, individually and collectively, the named Plaintiffs and the Class they seek to represent were injured in that they (1) own vehicles that are unsafe, (2) own vehicles that are worth less than their value were they to comply with all safety standards and (3) will incur the cost of repairing the vehicles to make them safe.

82. Plaintiffs and members of the proposed Class are entitled to compensatory damages from Defendants, and each of them, for the economic and non-economic damages identified herein; and Defendants, and each of them, are liable to the Plaintiffs and members of the proposed Class for multiple or punitive damages predicated on the allegations set forth herein.

## SECOND CAUSE OF ACTION

### (Conspiracy And Concert of Action to Violate Mass. Gen. Laws c. 93A, §§2, 9)

83. Plaintiffs hereby adopt the allegations of paragraphs 1-82 and incorporate the same herein by reference.

84. The conduct set forth above constitutes a conspiracy and concert of action to violate the duties owed by Defendants to Plaintiffs and members of the proposed Class under Mass. Gen. Laws c. 93A, §§ 2, 9.

85. The allegations herein prove that the Defendants joined forces, exchanged information and resources and undertook unfair or deceptive acts or practices which proximately caused the harm to the Plaintiffs and members of the proposed Class, as set forth herein.

86. Defendants conspired to commit these unfair and deceptive acts or practices for the purpose of wrongfully limiting their financial liability, knowing such conduct would result in injury to Plaintiffs and members of the proposed Class who, as a result, (1) own vehicles that are unsafe, (2) own vehicles that are worth less than their value were they to comply with all safety standards and (3) will incur the cost of repairing the vehicles to make them safe.

87. Defendants conspired among and between themselves to intentionally misrepresent and suppress relevant information regarding their knowledge of the defects in the outside door handle systems and to minimize the full nature and extent of their financial liability, which resulted in injury to Plaintiffs and members of the proposed Class.

23

88. Defendants were aware of the potential dangers that could result from the defective outside door handle systems. The Defendants or their predecessors have actively conspired and acted in concert with each other to suppress the truth and knowledge concerning their liability for the defective outside door handle systems, and the potential for serious injury or death that could result from failure of the outside door handle systems.

89. The conduct of the Defendants was, has been, and is willful, knowing, and deliberate.

90. As a result of the unfair and deceptive conduct of the Defendants, individually and collectively, the named Plaintiffs and the Class they seek to represent were injured in that they (1) own vehicles that are unsafe, (2) own vehicles that are worth less than their value were they to comply with all safety standards and (3) will incur the cost of repairing the vehicles to make them safe.

91. The Plaintiffs and members of the proposed Class are entitled to compensatory damages from the Defendants, and each of them, for the economic and non-economic damages identified herein; and the Defendants, and each of them, are liable to the Plaintiffs and members of the proposed Class for multiple or punitive damages predicated on the allegations set forth herein.

24

### THIRD CAUSE OF ACTION

### (Breach of Express Warranty)

92. Plaintiffs hereby adopt the allegations of paragraphs 1- 91 and incorporate the same herein by reference.

93. Defendants expressly warranted that the vehicles, including the component parts in the outside door handle systems of those vehicles, were in compliance with CMVSS and FMVSS 206; a sticker affixed to the vehicles certifies and warrants this compliance.

94. Having knowledge of the defect in the outside door handle systems that resulted in non-compliance with CMVSS and FMVSS 206, defendants nonetheless certified and warranted that the vehicles complied with FMVSS 206 and affixed a sticker warranting compliance.

95. Defendants breached the express warranties made to Plaintiffs and members of the proposed class because the vehicles they own do not conform to the express warranties made by Defendants.

96. As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs and members of the proposed Class suffered and are entitled to recover damages.

### FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty)

97. Plaintiffs hereby adopt the allegations of paragraphs 1- 96 and incorporate the same herein by reference.

98. Defendants impliedly warranted that the vehicles, including the component
parts in the outside door handle systems of those vehicles, were safe for their
ordinary purpose and use and conformed to the promises of fact made on their
label.

99. Having knowledge of the defect in the outside door handle systems that could
result in the door opening unintentionally and that could result in serious
injury or death, Defendants knew that the vehicles were not safe for their
ordinary purpose and use and that they do not conform to the promises made
on the label.

100.    Defendants breached the implied warranties made to Plaintiffs and
members of the proposed Class because the vehicles they own are not safe for
their ordinary purpose and use and do not conform to the promises made on
the label.

101.    As a direct and proximate result of Defendants' breach of implied
warranties, Plaintiffs and members of the proposed Class suffered and are
entitled to recover damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the proposed Class seek compensatory
and multiple or punitive damages against all Defendants for participation in the violation
of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties as

26

detailed herein. Plaintiffs demand judgment against Defendants, jointly and severally, as

follows:

1. Certification of the Class under Rule 23 of the Massachusetts Rules of Civil Procedure and Mass. Gen. Laws c. 93A, § 9(2) and appointment of Plaintiffs as representatives of the Class and their counsel as Class counsel;

2. Compensatory damages for economic and non-economic damages identified herein;

3. Multiple or punitive damages under Mass. Gen. Laws c. 93A, § 9;

4. Prejudgment interest;

5. Cost of investigation and suit;

6. Reasonable attorney's fees; and

7. Such other relief as the Court deems equitable and just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

DATED: February 15, 2005

Respectfully submitted,
by Plaintiffs' attorneys,

David C. Strouss, Esq. BBO# 546253
Kristen Marquis Fritz, Esq. BBO# 650886
**THORNTON & NAUMES**
100 Summer Street - 30th Floor
Boston, MA 02110
(617) 720-1333

AND

Frederick Jekel, Esq.
William Narwold, Esq.
Suzanne Lafleur Klok, Esq.
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000

ATTORNEYS AT LAW
# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

_____
Of Counsel
Elizabeth M. Short
Admitted in NY & PA only

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600  FAX# 617-720-2445
www.tenlaw.com

# FILE COPY

September 2, 2004

## VIA FEDERAL EXPRESS, SIGNATURE REQUIRED

Mr. William Clay Ford, Jr., Chairman/Chief Executive Officer
Ford Motor Company
C/O CT Corporation System
101 Federal Street
Boston, MA 02110

      RE:   Violation of Massachusetts General Laws Chapter 93A

Dear Chairman/CEO of Ford Motor Company:

      I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

      Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford

Motor Company, hereinafter jointly "Ford," and various component part manufacturers, to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly Corporation f/k/a Donnelly Corporation (hereinafter "Donnelly"), Dortec Industries (hereinafter "Dortec"), and Atoma Latching Systems Group (hereinafter "Atoma"), hereinafter collectively "the manufacturing defendants," have committed unfair and deceptive acts and practices in the conduct of their trade and commerce. These acts and practices are declared unlawful by Section 2 of the Consumer Protection Act. In addition, Plaintiffs claim that these acts and practices committed by Ford, Magna, Donnelly, Dortec and Atoma violated various other statutory and common law duties owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter described.

Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec and Atoma misrepresented and deceived the Plaintiffs with respect to defects in Ford vehicles. Plaintiffs further claim that Ford, Magna, Donnelly, Dortec and Atoma have committed willful and fraudulent practices to prevent Plaintiffs from learning of these defects. Each of these acts and practices, as set forth in detail below, violates Massachusetts General Laws, Chapter 93A as well as various other statutes and the Massachusetts Common Law and breaches warranties made to the Plaintiffs.

The unfair and deceptive trade practices arise out of an ongoing effort aimed solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford, Magna, Donnelly, Dortec and Atoma failed to disclose their knowledge to Plaintiffs as well as to the National Highway Transportation Safety Administration (NHTSA). While Ford's and the manufacturing defendants' own investigations confirmed the presence of the defects, Ford and the manufacturing defendants concealed, and continue to conceal, their own negative results and conclusions.

## UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES

Ford and the manufacturing defendants have committed unfair and deceptive acts and practices and have deceived the National Highway Transportation Safety Administration (NHTSA), personal injury victims and purchasers of vehicles manufactured between November 1995 and the end of April, 2000, to wit: Ford F150 (various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years 1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The wrongful conduct was designed to conceal several defects in the door latch mechanism utilized in the above referenced vehicles. The defects in the door latch assembly were such that the door latches were not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

Federal law requires Ford, the manufacturing defendants and their employees to report and investigate potential safety defects. Under the Safety Act and the Tread Act, Ford is required to recall and repair motor vehicle defects related to safety or which cause the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as

Page 3

well as all known purchasers of the defective vehicles must be notified and a recall must be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

It is believed based on current information that the door latch systems and door handle mechanisms were designed, manufactured and installed by Ford, Magna, Donnelly, Dortec and Atoma. At all relevant times, these companies were aware that the door latch systems and door handle mechanisms had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly, Dortec and Atoma knew or should have known that their respective designs and equipment they manufactured did not comply with FMVSS 206. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch systems that were to be used in the Ford Vehicles.

On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Ford manufactured Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford Vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their components were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

By October, 1995, Ford knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206. For example, but without limitation, in or about October 1995, Ford conducted crash testing of a Lincoln Navigator prototype. During the testing, it was observed that the impacted side

door would open, and additional crash testing revealed that *both* impacted and non-impacted doors opened. As of that date, Ford knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions. Notwithstanding this knowledge, Ford continued to manufacture and market the Ford Vehicles for the next five years. In addition, Ford has repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective door latches over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants. The receipt of this information concerning the defective door latches obligated Ford to issue a recall, to fix the defect, and also to report and warn the National Highway Transport Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had its Critical Concern Review Group (herein referred to as CCRG) formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well. At that time, Ford took no action to rectify, recall or repair or fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the defective door latch systems. In and around August and October 1997, Ford and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants discovered that components parts in the door latches were not manufactured in accordance with specifications and did not comply with FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation into the defects. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000 defective door latch systems were in vehicles that were on the road in Canada and the United States.

On or about March 6, 2000, a Ford engineering report recognized that the door handles did not comply with Federal guidelines. The report was based on testing conducted by Ford along with the component part manufacturers—Donnelly, Dortec, Magna, and Atoma. The report concluded by recommending a recall. Upon receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a recall by hiding

the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00508.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1] Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

---

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

Page 6

With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the recall. Ford had an engineer utilize a 30 year-old methodology to establish the "straw" argument that the door latch systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate. Ford and the component part manufacturers never contacted NHTSA because they knew that the door latch systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the door latch systems. Ford and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to address the door latch defects that had been identified. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been notified and a recall has not been issued.

## THEORIES OF RECOVERY

## I.    Violations of the Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants

Ford and the manufacturing defendants are engaged in trade or commerce in Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, § 2(a) including, but not limited to, the following:

a.    Failing to disclose material information concerning knowledge of door latch system defects.

b.    Failing to disclose material information regarding the safety of Ford vehicles or their component parts.

c.    Taking actions to prevent Plaintiffs and members of the proposed class from learning of defects in Ford vehicles, including those defects that could result in personal injury.

d.    Breaching various express and implied warranties made to the Plaintiffs and members of the proposed class.

Page 7

Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

## II.     Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class

Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

## DAMAGES SUSTAINED

As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate inspection, repair, and/or replacement of such defective door latches. In addition,

Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.

Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

## DEMAND FOR RELIEF

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.          and

Frederick J. Jekel, Esq.
Motley Rice LLC

ATTORNEYS AT LAW

# Thornton & Naumes LLP

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600  FAX# 617-720-2445
www.tenlaw.com

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

**FILE COPY**

September 2, 2004

**VIA FEDERAL EXPRESS, SIGNATURE REQUIRED**

Chairman/Chief Executive Officer
Ford Motor Company of Canada Ltd./ Ford Du Canada Limitée
1 Canadian Road
Oakville, Ontario
L6J 5E4

      RE:   Violation of Massachusetts General Laws Chapter 93A

Dear Chairman/CEO of Ford Motor Company of Canada Limited:

      I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

      Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford

Page 2

Motor Company, hereinafter jointly "Ford," and various component part manufacturers, to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly Corporation f/k/a Donnelly Corporation (hereinafter "Donnelly"), Dortec Industries (hereinafter "Dortec"), and Atoma Latching Systems Group (hereinafter "Atoma"), hereinafter collectively "the manufacturing defendants," have committed unfair and deceptive acts and practices in the conduct of their trade and commerce. These acts and practices are declared unlawful by Section 2 of the Consumer Protection Act. In addition, Plaintiffs claim that these acts and practices committed by Ford, Magna, Donnelly, Dortec and Atoma violated various other statutory and common law duties owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter described.

Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec and Atoma misrepresented and deceived the Plaintiffs with respect to defects in Ford vehicles. Plaintiffs further claim that Ford, Magna, Donnelly, Dortec and Atoma have committed willful and fraudulent practices to prevent Plaintiffs from learning of these defects. Each of these acts and practices, as set forth in detail below, violates Massachusetts General Laws, Chapter 93A as well as various other statutes and the Massachusetts Common Law and breaches warranties made to the Plaintiffs.

The unfair and deceptive trade practices arise out of an ongoing effort aimed solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford, Magna, Donnelly, Dortec and Atoma failed to disclose their knowledge to Plaintiffs as well as to the National Highway Transportation Safety Administration (NHTSA). While Ford's and the manufacturing defendants' own investigations confirmed the presence of the defects, Ford and the manufacturing defendants concealed, and continue to conceal, their own negative results and conclusions.

## UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES

Ford and the manufacturing defendants have committed unfair and deceptive acts and practices and have deceived the National Highway Transportation Safety Administration (NHTSA), personal injury victims and purchasers of vehicles manufactured between November 1995 and the end of April, 2000, to wit: Ford F150 (various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years 1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The wrongful conduct was designed to conceal several defects in the door latch mechanism utilized in the above referenced vehicles. The defects in the door latch assembly were such that the door latches were not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

Federal law requires Ford, the manufacturing defendants and their employees to report and investigate potential safety defects. Under the Safety Act and the Tread Act, Ford is required to recall and repair motor vehicle defects related to safety or which cause the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as

Page 3

well as all known purchasers of the defective vehicles must be notified and a recall must be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

It is believed based on current information that the door latch systems and door handle mechanisms were designed, manufactured and installed by Ford, Magna, Donnelly, Dortec and Atoma. At all relevant times, these companies were aware that the door latch systems and door handle mechanisms had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly, Dortec and Atoma knew or should have known that their respective designs and equipment they manufactured did not comply with FMVSS 206. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch systems that were to be used in the Ford Vehicles.

On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Ford manufactured Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford Vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their components were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

By October, 1995, Ford knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206. For example, but without limitation, in or about October 1995, Ford conducted crash testing of a Lincoln Navigator prototype. During the testing, it was observed that the impacted side

door would open, and additional crash testing revealed that *both* impacted and non-impacted doors opened. As of that date, Ford knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions. Notwithstanding this knowledge, Ford continued to manufacture and market the Ford Vehicles for the next five years. In addition, Ford has repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective door latches over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants. The receipt of this information concerning the defective door latches obligated Ford to issue a recall, to fix the defect, and also to report and warn the National Highway Transport Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had its Critical Concern Review Group (herein referred to as CCRG) formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well. At that time, Ford took no action to rectify, recall or repair or fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the defective door latch systems. In and around August and October 1997, Ford and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants discovered that components parts in the door latches were not manufactured in accordance with specifications and did not comply with FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation into the defects. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000 defective door latch systems were in vehicles that were on the road in Canada and the United States.

On or about March 6, 2000, a Ford engineering report recognized that the door handles did not comply with Federal guidelines. The report was based on testing conducted by Ford along with the component part manufacturers—Donnelly, Dortec, Magna, and Atoma. The report concluded by recommending a recall. Upon receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a recall by hiding

Page 5

the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00508.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1] Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

---

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

Page 6

With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the recall. Ford had an engineer utilize a 30 year-old methodology to establish the "straw" argument that the door latch systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate. Ford and the component part manufacturers never contacted NHTSA because they knew that the door latch systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the door latch systems. Ford and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to address the door latch defects that had been identified. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been notified and a recall has not been issued.

## THEORIES OF RECOVERY

### I.    Violations of the Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants

Ford and the manufacturing defendants are engaged in trade or commerce in Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, § 2(a) including, but not limited to, the following:

a.    Failing to disclose material information concerning knowledge of door latch system defects.

b.    Failing to disclose material information regarding the safety of Ford vehicles or their component parts.

c.    Taking actions to prevent Plaintiffs and members of the proposed class from learning of defects in Ford vehicles, including those defects that could result in personal injury.

d.    Breaching various express and implied warranties made to the Plaintiffs and members of the proposed class.

Page 7

  Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

  Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

## II. Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class

  Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

  The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

### DAMAGES SUSTAINED

  As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate inspection, repair, and/or replacement of such defective door latches. In addition,

Page 8

Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.

Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

## DEMAND FOR RELIEF

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.         and

Frederick J. Jekel, Esq.
Motley Rice LLC

ATTORNEYS AT LAW

# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600 FAX# 617-720-2445
www.tenlaw.com

# FILE COPY

September 2, 2004

**VIA FEDERAL EXPRESS, SIGNATURE REQUIRED**

Chairman/Chief Executive Officer
Donnelly Corporation/Magna Donnelly Corporation
49 West Third Street
Holland, Michigan 49423-2813

      RE:    <u>Violation of Massachusetts General Laws Chapter 93A</u>

Dear Chairman/CEO of Donnelly Corp./Magna Donnelly:

      I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

      Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford

Page 2

to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly Corporation f/k/a Donnelly Corporation (hereinafter "Donnelly"), Dortec Industries (hereinafter "Dortec"), and Atoma Latching Systems Group (hereinafter "Atoma"), hereinafter collectively "the manufacturing defendants," have committed unfair and deceptive acts and practices in the conduct of their trade and commerce. These acts and practices are declared unlawful by Section 2 of the Consumer Protection Act. In addition, Plaintiffs claim that these acts and practices committed by Ford, Magna, Donnelly, Dortec and Atoma violated various other statutory and common law duties owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter described.

Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec and Atoma misrepresented and deceived the Plaintiffs with respect to defects in Ford vehicles. Plaintiffs further claim that Ford, Magna, Donnelly, Dortec and Atoma have committed willful and fraudulent practices to prevent Plaintiffs from learning of these defects. Each of these acts and practices, as set forth in detail below, violates Massachusetts General Laws, Chapter 93A as well as various other statutes and the Massachusetts Common Law and breaches warranties made to the Plaintiffs.

The unfair and deceptive trade practices arise out of an ongoing effort aimed solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford, Magna, Donnelly, Dortec and Atoma failed to disclose their knowledge to Plaintiffs as well as to the National Highway Transportation Safety Administration (NHTSA). While Ford's and the manufacturing defendants' own investigations confirmed the presence of the defects, Ford and the manufacturing defendants concealed, and continue to conceal, their own negative results and conclusions.

<u>UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES</u>

Ford and the manufacturing defendants have committed unfair and deceptive acts and practices and have deceived the National Highway Transportation Safety Administration (NHTSA), personal injury victims and purchasers of vehicles manufactured between November 1995 and the end of April, 2000, to wit: Ford F150 (various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years 1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The wrongful conduct was designed to conceal several defects in the door latch mechanism utilized in the above referenced vehicles. The defects in the door latch assembly were such that the door latches were not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

Federal law requires Ford, the manufacturing defendants and their employees to report and investigate potential safety defects. Under the Safety Act and the Tread Act, Ford is required to recall and repair motor vehicle defects related to safety or which cause the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as well as all known purchasers of the defective vehicles must be notified and a recall must

Page 3

be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

It is believed based on current information that the door latch systems and door handle mechanisms were designed, manufactured and installed by Ford, Magna, Donnelly, Dortec and Atoma. At all relevant times, these companies were aware that the door latch systems and door handle mechanisms had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly, Dortec and Atoma knew or should have known that their respective designs and equipment they manufactured did not comply with FMVSS 206. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch systems that were to be used in the Ford Vehicles.

On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Ford manufactured Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford Vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their components were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

By October, 1995, Ford knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206. For example, but without limitation, in or about October 1995, Ford conducted crash testing of a Lincoln Navigator prototype. During the testing, it was observed that the impacted side door would open, and additional crash testing revealed that *both* impacted and non-

Page 4

impacted doors opened. As of that date, Ford knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions. Notwithstanding this knowledge, Ford continued to manufacture and market the Ford Vehicles for the next five years. In addition, Ford has repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective door latches over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants. The receipt of this information concerning the defective door latches obligated Ford to issue a recall, to fix the defect, and also to report and warn the National Highway Transport Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had its Critical Concern Review Group (herein referred to as CCRG) formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well. At that time, Ford took no action to rectify, recall or repair or fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the defective door latch systems. In and around August and October 1997, Ford and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants discovered that components parts in the door latches were not manufactured in accordance with specifications and did not comply with FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation into the defects. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000 defective door latch systems were in vehicles that were on the road in Canada and the United States.

On or about March 6, 2000, a Ford engineering report recognized that the door handles did not comply with Federal guidelines. The report was based on testing conducted by Ford along with the component part manufacturers—Donnelly, Dortec, Magna, and Atoma. The report concluded by recommending a recall. Upon receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a recall by hiding

Page 5

the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00S08.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1] Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

---

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

Page 6

With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the recall. Ford had an engineer utilize a 30 year-old methodology to establish the "straw" argument that the door latch systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate. Ford and the component part manufacturers never contacted NHTSA because they knew that the door latch systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the door latch systems. Ford and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to address the door latch defects that had been identified. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been notified and a recall has not been issued.

## THEORIES OF RECOVERY

I.    **Violations of the Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants**

Ford and the manufacturing defendants are engaged in trade or commerce in Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, § 2(a) including, but not limited to, the following:

    a.    Failing to disclose material information concerning knowledge of door latch system defects.

    b.    Failing to disclose material information regarding the safety of Ford vehicles or their component parts.

    c.    Taking actions to prevent Plaintiffs and members of the proposed class from learning of defects in Ford vehicles, including those defects that could result in personal injury.

    d.    Breaching various express and implied warranties made to the Plaintiffs and members of the proposed class.

Page 7

Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

## II.    Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class

Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

### DAMAGES SUSTAINED

As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate inspection, repair, and/or replacement of such defective door latches. In addition,

Page 8

Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.
Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

## DEMAND FOR RELIEF

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.          and

Frederick J. Jekel, Esq.
Motley Rice LLC

ATTORNEYS AT LAW
# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600  FAX# 617-720-2445
www.tenlaw.com

# FILE COPY

September 16, 2004

## VIA FEDERAL EXPRESS, SIGNATURE REQUIRED

President/Chief Executive Officer
Intier Automotive Seating of America, Inc.
c/o The Corporation Company
30600 Telegraph Road
Bingham Farms, MI 48025

      RE:    Violation of Massachusetts General Laws Chapter 93A

Dear President/CEO of Intier Automotive Seating of America, Inc.:

I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford Motor Company, hereinafter jointly "Ford," and various component part manufacturers,

Page 2

to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly
Corporation as successor by merger to and d/b/a Donnelly Corporation (hereinafter
"Donnelly"), Intier Automotive Inc. (hereinafter "Intier"), Intier Automotive Closures of
America Inc. f/k/a Dortec and Intier Automotive Seating of America Inc. f/k/a Dortec,
hereinafter jointly "Dortec," and Atoma Latching Systems Group (hereinafter "Atoma"),
hereinafter collectively "the manufacturing defendants," have committed unfair and
deceptive acts and practices in the conduct of their trade and commerce. These acts and
practices are declared unlawful by Section 2 of the Consumer Protection Act. In
addition, Plaintiffs claim that these acts and practices committed by Ford, Magna,
Donnelly, Dortec, Intier and Atoma violated various other statutory and common law
duties owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter
described.

Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec, Intier and
Atoma misrepresented and deceived the Plaintiffs with respect to defects in Ford
vehicles. Plaintiffs further claim that Ford, Magna, Donnelly, Dortec, Intier and Atoma
have committed willful and fraudulent practices to prevent Plaintiffs from learning of
these defects. Each of these acts and practices, as set forth in detail below, violates
Massachusetts General Laws, Chapter 93A as well as various other statutes and the
Massachusetts Common Law and breaches warranties made to the Plaintiffs.

The unfair and deceptive trade practices arise out of an ongoing effort aimed
solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford,
Magna, Donnelly, Dortec, Intier and Atoma failed to disclose their knowledge to
Plaintiffs as well as to the National Highway Transportation Safety Administration
(NHTSA). While Ford's and the manufacturing defendants' own investigations
confirmed the presence of the defects, Ford and the manufacturing defendants concealed,
and continue to conceal, their own negative results and conclusions.

## UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES

Ford and the manufacturing defendants have committed unfair and deceptive acts
and practices and have deceived the National Highway Transportation Safety
Administration (NHTSA), personal injury victims and purchasers of vehicles
manufactured between November 1995 and the end of April, 2000, to wit: Ford F150
(various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years
1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator
Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The
wrongful conduct was designed to conceal several defects in the door latch mechanism
utilized in the above referenced vehicles. The defects in the door latch assembly were
such that the door latches were not compliant with Federal Motor Vehicle Safety
Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for
Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

Federal law requires Ford, the manufacturing defendants and their employees to
report and investigate potential safety defects. Under the Safety Act and the Tread Act,

Page 3

Ford is required to recall and repair motor vehicle defects related to safety or which cause the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as well as all known purchasers of the defective vehicles must be notified and a recall must be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

It is believed based on current information that the door latch systems and door handle mechanisms were designed, manufactured and installed by Ford, Magna, Donnelly, Dortec, Intier and Atoma. At all relevant times, these companies were aware that the door latch systems and door handle mechanisms had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly, Dortec, Intier and Atoma knew or should have known that their respective designs and equipment they manufactured did not comply with FMVSS 206. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch systems that were to be used in the Ford Vehicles.

On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Ford manufactured Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford Vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their components were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

By October, 1995, Ford knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206. For example,

but without limitation, in or about October 1995, Ford conducted crash testing of a Lincoln Navigator prototype. During the testing, it was observed that the impacted side door would open, and additional crash testing revealed that *both* impacted and non-impacted doors opened. As of that date, Ford knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions. Notwithstanding this knowledge, Ford continued to manufacture and market the Ford Vehicles for the next five years. In addition, Ford has repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective door latches over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants. The receipt of this information concerning the defective door latches obligated Ford to issue a recall, to fix the defect, and also to report and warn the National Highway Transport Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had its Critical Concern Review Group (herein referred to as CCRG) formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well. At that time, Ford took no action to rectify, recall or repair or fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the defective door latch systems. In and around August and October 1997, Ford and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants discovered that components parts in the door latches were not manufactured in accordance with specifications and did not comply with FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation into the defects. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000 defective door latch systems were in vehicles that were on the road in Canada and the United States.

On or about March 6, 2000, a Ford engineering report recognized that the door handles did not comply with Federal guidelines. The report was based on testing conducted by Ford along with the component part manufacturers—Donnelly, Dortec, Magna, , Intier and Atoma. The report concluded by recommending a recall. Upon

receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a recall by hiding the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00508.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1] Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

---

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the recall. Ford had an engineer utilize a 30 year-old methodology to establish the "straw" argument that the door latch systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate. Ford and the component part manufacturers never contacted NHTSA because they knew that the door latch systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the door latch systems. Ford and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to address the door latch defects that had been identified. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been notified and a recall has not been issued.

## THEORIES OF RECOVERY

### I. Violations of the Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants

Ford and the manufacturing defendants are engaged in trade or commerce in Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, § 2(a) including, but not limited to, the following:

a.    Failing to disclose material information concerning knowledge of door latch system defects.

b.    Failing to disclose material information regarding the safety of Ford vehicles or their component parts.

c.    Taking actions to prevent Plaintiffs and members of the proposed class from learning of defects in Ford vehicles, including those defects that could result in personal injury.

d.    Breaching various express and implied warranties made to the Plaintiffs and members of the proposed class.

Page 7

Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

## II.    Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class

Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

## DAMAGES SUSTAINED

As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate

inspection, repair, and/or replacement of such defective door latches. In addition, Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec, Intier and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.

Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

## DEMAND FOR RELIEF

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.     and

Frederick J. Jekel, Esq.
Motley Rice LLC

ATTORNEYS AT LAW
## Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

_____
Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600  FAX# 617-720-2445
www.tenlaw.com

# FILE COPY

September 16, 2004

**VIA FEDERAL EXPRESS, SIGNATURE REQUIRED**

President/Chief Executive Officer
Intier Automotive Closures of America, Inc.
c/o The Corporation Company
30600 Telegraph Road
Bingham Farms, MI 48025

   RE: Violation of Massachusetts General Laws Chapter 93A

Dear President/CEO of Intier Automotive Closures of America, Inc.:

   I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

   Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford

Motor Company, hereinafter jointly "Ford," and various component part manufacturers, to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly Corporation as successor to and d/b/a Donnelly Corporation (hereinafter "Donnelly"), Intier Automotive Inc. (hereinafter "Intier"), Intier Automotive Closures of America Inc. f/k/a Dortec and Intier Automotive Seating of America Inc. f/k/a Dortec, hereinafter jointly "Dortec," and Atoma Latching Systems Group (hereinafter "Atoma"), hereinafter collectively "the manufacturing defendants," have committed unfair and deceptive acts and practices in the conduct of their trade and commerce. These acts and practices are declared unlawful by Section 2 of the Consumer Protection Act. In addition, Plaintiffs claim that these acts and practices committed by Ford, Magna, Donnelly, Dortec, Intier and Atoma violated various other statutory and common law duties owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter described.

Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec, Intier and Atoma misrepresented and deceived the Plaintiffs with respect to defects in Ford vehicles. Plaintiffs further claim that Ford, Magna, Donnelly, Dortec, Intier and Atoma have committed willful and fraudulent practices to prevent Plaintiffs from learning of these defects. Each of these acts and practices, as set forth in detail below, violates Massachusetts General Laws, Chapter 93A as well as various other statutes and the Massachusetts Common Law and breaches warranties made to the Plaintiffs.

The unfair and deceptive trade practices arise out of an ongoing effort aimed solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford, Magna, Donnelly, Dortec, Intier and Atoma failed to disclose their knowledge to Plaintiffs as well as to the National Highway Transportation Safety Administration (NHTSA). While Ford's and the manufacturing defendants' own investigations confirmed the presence of the defects, Ford and the manufacturing defendants concealed, and continue to conceal, their own negative results and conclusions.

## UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES

Ford and the manufacturing defendants have committed unfair and deceptive acts and practices and have deceived the National Highway Transportation Safety Administration (NHTSA), personal injury victims and purchasers of vehicles manufactured between November 1995 and the end of April, 2000, to wit: Ford F150 (various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years 1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The wrongful conduct was designed to conceal several defects in the door latch mechanism utilized in the above referenced vehicles. The defects in the door latch assembly were such that the door latches were not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

Federal law requires Ford, the manufacturing defendants and their employees to report and investigate potential safety defects. Under the Safety Act and the Tread Act,

Ford is required to recall and repair motor vehicle defects related to safety or which cause the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as well as all known purchasers of the defective vehicles must be notified and a recall must be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

It is believed based on current information that the door latch systems and door handle mechanisms were designed, manufactured and installed by Ford, Magna, Donnelly, Dortec, Intier and Atoma. At all relevant times, these companies were aware that the door latch systems and door handle mechanisms had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly, Dortec, Intier and Atoma knew or should have known that their respective designs and equipment they manufactured did not comply with FMVSS 206. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch systems that were to be used in the Ford Vehicles.

On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Ford manufactured Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford Vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their components were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

By October, 1995, Ford knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206. For example,

but without limitation, in or about October 1995, Ford conducted crash testing of a Lincoln Navigator prototype. During the testing, it was observed that the impacted side door would open, and additional crash testing revealed that *both* impacted and non-impacted doors opened. As of that date, Ford knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions. Notwithstanding this knowledge, Ford continued to manufacture and market the Ford Vehicles for the next five years. In addition, Ford has repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective door latches over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants. The receipt of this information concerning the defective door latches obligated Ford to issue a recall, to fix the defect, and also to report and warn the National Highway Transport Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had its Critical Concern Review Group (herein referred to as CCRG) formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well. At that time, Ford took no action to rectify, recall or repair or fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the defective door latch systems. In and around August and October 1997, Ford and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants discovered that components parts in the door latches were not manufactured in accordance with specifications and did not comply with FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation into the defects. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000 defective door latch systems were in vehicles that were on the road in Canada and the United States.

On or about March 6, 2000, a Ford engineering report recognized that the door handles did not comply with Federal guidelines. The report was based on testing conducted by Ford along with the component part manufacturers—Donnelly, Dortec, Magna, , Intier and Atoma. The report concluded by recommending a recall. Upon

Page 5

receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a recall by hiding the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00508.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1] Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

_____

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

Page 6

With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the recall. Ford had an engineer utilize a 30 year-old methodology to establish the "straw" argument that the door latch systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate. Ford and the component part manufacturers never contacted NHTSA because they knew that the door latch systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the door latch systems. Ford and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to address the door latch defects that had been identified. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been notified and a recall has not been issued.

## THEORIES OF RECOVERY

### I.    Violations of the Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants

Ford and the manufacturing defendants are engaged in trade or commerce in Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, § 2(a) including, but not limited to, the following:

a.    Failing to disclose material information concerning knowledge of door latch system defects.

b.    Failing to disclose material information regarding the safety of Ford vehicles or their component parts.

c.    Taking actions to prevent Plaintiffs and members of the proposed class from learning of defects in Ford vehicles, including those defects that could result in personal injury.

d.    Breaching various express and implied warranties made to the Plaintiffs and members of the proposed class.

Page 7

Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

## II.    Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class

Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

### DAMAGES SUSTAINED

As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate

Page 8

inspection, repair, and/or replacement of such defective door latches. In addition, Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec, Intier and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.

Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

## DEMAND FOR RELIEF

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.        and

Frederick J. Jekel, Esq.
Motley Rice LLC

ATTORNEYS AT LAW
# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

_____
Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600  FAX# 617-720-2445
www.tenlaw.com

**FILE COPY**

September 2, 2004

## VIA FEDERAL EXPRESS, SIGNATURE REQUIRED

Chairman/Chief Executive Officer
Dortec Industries
337 Magna Drive
Aurora, Ontario
L4G 7K1

      RE:    Violation of Massachusetts General Laws Chapter 93A

Dear Chairman/CEO of Dortec Industries:

      I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

      Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford

Page 2

that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford
Motor Company, hereinafter jointly "Ford," and various component part manufacturers,
to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly
Corporation f/k/a Donnelly Corporation (hereinafter "Donnelly"), Dortec Industries
(hereinafter "Dortec"), and Atoma Latching Systems Group (hereinafter "Atoma"),
hereinafter collectively "the manufacturing defendants," have committed unfair and
deceptive acts and practices in the conduct of their trade and commerce. These acts and
practices are declared unlawful by Section 2 of the Consumer Protection Act. In
addition, Plaintiffs claim that these acts and practices committed by Ford, Magna,
Donnelly, Dortec and Atoma violated various other statutory and common law duties
owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter described.

        Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec and Atoma
misrepresented and deceived the Plaintiffs with respect to defects in Ford vehicles.
Plaintiffs further claim that Ford, Magna, Donnelly, Dortec and Atoma have committed
willful and fraudulent practices to prevent Plaintiffs from learning of these defects. Each
of these acts and practices, as set forth in detail below, violates Massachusetts General
Laws, Chapter 93A as well as various other statutes and the Massachusetts Common Law
and breaches warranties made to the Plaintiffs.

        The unfair and deceptive trade practices arise out of an ongoing effort aimed
solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford,
Magna, Donnelly, Dortec and Atoma failed to disclose their knowledge to Plaintiffs as
well as to the National Highway Transportation Safety Administration (NHTSA). While
Ford's and the manufacturing defendants' own investigations confirmed the presence of
the defects, Ford and the manufacturing defendants concealed, and continue to conceal,
their own negative results and conclusions.

### UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES

        Ford and the manufacturing defendants have committed unfair and deceptive acts
and practices and have deceived the National Highway Transportation Safety
Administration (NHTSA), personal injury victims and purchasers of vehicles
manufactured between November 1995 and the end of April, 2000, to wit: Ford F150
(various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years
1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator
Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The
wrongful conduct was designed to conceal several defects in the door latch mechanism
utilized in the above referenced vehicles. The defects in the door latch assembly were
such that the door latches were not compliant with Federal Motor Vehicle Safety
Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for
Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

        Federal law requires Ford, the manufacturing defendants and their employees to
report and investigate potential safety defects. Under the Safety Act and the Tread Act,
Ford is required to recall and repair motor vehicle defects related to safety or which cause

Page 3

the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as well as all known purchasers of the defective vehicles must be notified and a recall must be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

It is believed based on current information that the door latch systems and door handle mechanisms were designed, manufactured and installed by Ford, Magna, Donnelly, Dortec and Atoma. At all relevant times, these companies were aware that the door latch systems and door handle mechanisms had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly, Dortec and Atoma knew or should have known that their respective designs and equipment they manufactured did not comply with FMVSS 206. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch systems that were to be used in the Ford Vehicles.

On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Ford manufactured Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford Vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their components were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

By October, 1995, Ford knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206. For example, but without limitation, in or about October 1995, Ford conducted crash testing of a

Page 4

Lincoln Navigator prototype. During the testing, it was observed that the impacted side door would open, and additional crash testing revealed that *both* impacted and non-impacted doors opened. As of that date, Ford knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions. Notwithstanding this knowledge, Ford continued to manufacture and market the Ford Vehicles for the next five years. In addition, Ford has repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective door latches over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants. The receipt of this information concerning the defective door latches obligated Ford to issue a recall, to fix the defect, and also to report and warn the National Highway Transport Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had its Critical Concern Review Group (herein referred to as CCRG) formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well. At that time, Ford took no action to rectify, recall or repair or fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the defective door latch systems. In and around August and October 1997, Ford and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants discovered that components parts in the door latches were not manufactured in accordance with specifications and did not comply with FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation into the defects. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000 defective door latch systems were in vehicles that were on the road in Canada and the United States.

On or about March 6, 2000, a Ford engineering report recognized that the door handles did not comply with Federal guidelines. The report was based on testing conducted by Ford along with the component part manufacturers—Donnelly, Dortec, Magna, and Atoma. The report concluded by recommending a recall. Upon receipt of that report, the CCRG, the field review committee and Ford's office of general counsel

Page 5

further investigated these defects and made a business decision to avoid a recall by hiding the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00508.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1]  Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

---

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

Page 6

With this background Ford knew that it would have to include a regulatory
compliance component in its justification for canceling the recall. Ford had an engineer
utilize a 30 year-old methodology to establish the "straw" argument that the door latch
systems were compliant with FMVSS 206. The method used by Ford in 2000 has never
been used by Ford, prior to or since, and has never been referenced in an internal
specification or instruction to component part manufacturers that performed the
compliance work. Ford and the component part manufacturers never informed NHTSA
of their decision to utilize the 30 year-old test or inquired whether the methodology was
appropriate. Ford and the component part manufacturers never contacted NHTSA
because they knew that the door latch systems did not pass the SAE J839 test, and thus
did not comply with FMVSS 206, which could have caused NHTSA to perform an
investigation into the door latch systems. Ford and the manufacturing defendants
manipulated the data, internal specifications, federal rules, and violated commonly
accepted practices in order to avoid the purchaser notification and recall requirements
that non-compliance triggered.

On or about October 16, 2000, Ford prepared a closure memo regarding the
safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to
address the door latch defects that had been identified. At that time, Ford decided not to
notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. §
30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been
notified and a recall has not been issued.

### THEORIES OF RECOVERY

**I.    Violations of the Massachusetts Consumer Protection Act, Mass. General
Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants**

Ford and the manufacturing defendants are engaged in trade or commerce in
Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive
acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c.
93A, § 2(a) including, but not limited to, the following:

a.    Failing to disclose material information concerning knowledge of door
latch system defects.

b.    Failing to disclose material information regarding the safety of Ford
vehicles or their component parts.

c.    Taking actions to prevent Plaintiffs and members of the proposed class
from learning of defects in Ford vehicles, including those defects that
could result in personal injury.

d.    Breaching various express and implied warranties made to the Plaintiffs
and members of the proposed class.

Page 7

Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

## II.    Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class

Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

### DAMAGES SUSTAINED

As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate inspection, repair, and/or replacement of such defective door latches. In addition,

Page 8

Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.

Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

## DEMAND FOR RELIEF

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.          and

Frederick J. Jekel, Esq.
Motley Rice LLC

ATTORNEYS AT LAW
# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

Of Counsel
Elizabeth M. Short
Admitted in NY & PA only

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600  FAX# 617-720-2445
www.tenlaw.com

**FILE COPY**

September 2, 2004

**VIA FEDERAL EXPRESS, SIGNATURE REQUIRED**

Mr. William Clay Ford, Jr., Chairman/Chief Executive Officer
Ford Motor Company
C/O CT Corporation System
101 Federal Street
Boston, MA 02110

     RE:   Violation of Massachusetts General Laws Chapter 93A

Dear Chairman/CEO of Ford Motor Company:

     I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

     Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford

Page 2

Motor Company, hereinafter jointly "Ford," and various component part manufacturers, to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly Corporation f/k/a Donnelly Corporation (hereinafter "Donnelly"), Dortec Industries (hereinafter "Dortec"), and Atoma Latching Systems Group (hereinafter "Atoma"), hereinafter collectively "the manufacturing defendants," have committed unfair and deceptive acts and practices in the conduct of their trade and commerce. These acts and practices are declared unlawful by Section 2 of the Consumer Protection Act. In addition, Plaintiffs claim that these acts and practices committed by Ford, Magna, Donnelly, Dortec and Atoma violated various other statutory and common law duties owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter described.

Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec and Atoma misrepresented and deceived the Plaintiffs with respect to defects in Ford vehicles. Plaintiffs further claim that Ford, Magna, Donnelly, Dortec and Atoma have committed willful and fraudulent practices to prevent Plaintiffs from learning of these defects. Each of these acts and practices, as set forth in detail below, violates Massachusetts General Laws, Chapter 93A as well as various other statutes and the Massachusetts Common Law and breaches warranties made to the Plaintiffs.

The unfair and deceptive trade practices arise out of an ongoing effort aimed solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford, Magna, Donnelly, Dortec and Atoma failed to disclose their knowledge to Plaintiffs as well as to the National Highway Transportation Safety Administration (NHTSA). While Ford's and the manufacturing defendants' own investigations confirmed the presence of the defects, Ford and the manufacturing defendants concealed, and continue to conceal, their own negative results and conclusions.

## UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES

Ford and the manufacturing defendants have committed unfair and deceptive acts and practices and have deceived the National Highway Transportation Safety Administration (NHTSA), personal injury victims and purchasers of vehicles manufactured between November 1995 and the end of April, 2000, to wit: Ford F150 (various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years 1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The wrongful conduct was designed to conceal several defects in the door latch mechanism utilized in the above referenced vehicles. The defects in the door latch assembly were such that the door latches were not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

Federal law requires Ford, the manufacturing defendants and their employees to report and investigate potential safety defects. Under the Safety Act and the Tread Act, Ford is required to recall and repair motor vehicle defects related to safety or which cause the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as

Page 3

well as all known purchasers of the defective vehicles must be notified and a recall must be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

It is believed based on current information that the door latch systems and door handle mechanisms were designed, manufactured and installed by Ford, Magna, Donnelly, Dortec and Atoma. At all relevant times, these companies were aware that the door latch systems and door handle mechanisms had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly, Dortec and Atoma knew or should have known that their respective designs and equipment they manufactured did not comply with FMVSS 206. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch systems that were to be used in the Ford Vehicles.

On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Ford manufactured Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford Vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their components were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

By October, 1995, Ford knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206. For example, but without limitation, in or about October 1995, Ford conducted crash testing of a Lincoln Navigator prototype. During the testing, it was observed that the impacted side

Page 4

door would open, and additional crash testing revealed that *both* impacted and non-impacted doors opened. As of that date, Ford knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions. Notwithstanding this knowledge, Ford continued to manufacture and market the Ford Vehicles for the next five years. In addition, Ford has repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective door latches over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants. The receipt of this information concerning the defective door latches obligated Ford to issue a recall, to fix the defect, and also to report and warn the National Highway Transport Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had its Critical Concern Review Group (herein referred to as CCRG) formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well. At that time, Ford took no action to rectify, recall or repair or fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the defective door latch systems. In and around August and October 1997, Ford and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants discovered that components parts in the door latches were not manufactured in accordance with specifications and did not comply with FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation into the defects. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000 defective door latch systems were in vehicles that were on the road in Canada and the United States.

On or about March 6, 2000, a Ford engineering report recognized that the door handles did not comply with Federal guidelines. The report was based on testing conducted by Ford along with the component part manufacturers—Donnelly, Dortec, Magna, and Atoma. The report concluded by recommending a recall. Upon receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a recall by hiding

Page 5

the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00508.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1] Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

---

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

Page 6

With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the recall. Ford had an engineer utilize a 30 year-old methodology to establish the "straw" argument that the door latch systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate. Ford and the component part manufacturers never contacted NHTSA because they knew that the door latch systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the door latch systems. Ford and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to address the door latch defects that had been identified. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been notified and a recall has not been issued.

## THEORIES OF RECOVERY

**I.    Violations of the Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants**

Ford and the manufacturing defendants are engaged in trade or commerce in Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, § 2(a) including, but not limited to, the following:

a.    Failing to disclose material information concerning knowledge of door latch system defects.

b.    Failing to disclose material information regarding the safety of Ford vehicles or their component parts.

c.    Taking actions to prevent Plaintiffs and members of the proposed class from learning of defects in Ford vehicles, including those defects that could result in personal injury.

d.    Breaching various express and implied warranties made to the Plaintiffs and members of the proposed class.

Page 7

Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

## II.   Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class

Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

### DAMAGES SUSTAINED

As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate inspection, repair, and/or replacement of such defective door latches. In addition,

Page 8

Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.

Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

**DEMAND FOR RELIEF**

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.          and

Frederick J. Jekel, Esq.
Motley Rice LLC

ATTORNEYS AT LAW
# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600  FAX# 617-720-2445
www.tenlaw.com

**FILE COPY**

September 2, 2004

**VIA FEDERAL EXPRESS, SIGNATURE REQUIRED**

Chairman/Chief Executive Officer
Ford Motor Company of Canada Ltd./ Ford Du Canada Limitée
1 Canadian Road
Oakville, Ontario
L6J 5E4

RE:    Violation of Massachusetts General Laws Chapter 93A

Dear Chairman/CEO of Ford Motor Company of Canada Limited:

I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford

Page 2

Motor Company, hereinafter jointly "Ford," and various component part manufacturers, to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly Corporation f/k/a Donnelly Corporation (hereinafter "Donnelly"), Dortec Industries (hereinafter "Dortec"), and Atoma Latching Systems Group (hereinafter "Atoma"), hereinafter collectively "the manufacturing defendants," have committed unfair and deceptive acts and practices in the conduct of their trade and commerce. These acts and practices are declared unlawful by Section 2 of the Consumer Protection Act. In addition, Plaintiffs claim that these acts and practices committed by Ford, Magna, Donnelly, Dortec and Atoma violated various other statutory and common law duties owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter described.

Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec and Atoma misrepresented and deceived the Plaintiffs with respect to defects in Ford vehicles. Plaintiffs further claim that Ford, Magna, Donnelly, Dortec and Atoma have committed willful and fraudulent practices to prevent Plaintiffs from learning of these defects. Each of these acts and practices, as set forth in detail below, violates Massachusetts General Laws, Chapter 93A as well as various other statutes and the Massachusetts Common Law and breaches warranties made to the Plaintiffs.

The unfair and deceptive trade practices arise out of an ongoing effort aimed solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford, Magna, Donnelly, Dortec and Atoma failed to disclose their knowledge to Plaintiffs as well as to the National Highway Transportation Safety Administration (NHTSA). While Ford's and the manufacturing defendants' own investigations confirmed the presence of the defects, Ford and the manufacturing defendants concealed, and continue to conceal, their own negative results and conclusions.

<u>UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES</u>

Ford and the manufacturing defendants have committed unfair and deceptive acts and practices and have deceived the National Highway Transportation Safety Administration (NHTSA), personal injury victims and purchasers of vehicles manufactured between November 1995 and the end of April, 2000, to wit: Ford F150 (various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years 1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The wrongful conduct was designed to conceal several defects in the door latch mechanism utilized in the above referenced vehicles. The defects in the door latch assembly were such that the door latches were not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

Federal law requires Ford, the manufacturing defendants and their employees to report and investigate potential safety defects. Under the Safety Act and the Tread Act, Ford is required to recall and repair motor vehicle defects related to safety or which cause the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as

Page 3

well as all known purchasers of the defective vehicles must be notified and a recall must
be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe
motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with
certain limited exceptions, the manufacture for sale or the delivery in interstate commerce
of any vehicle that does not comply with the standards promulgated in accordance with
the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles
to issue a certification to the distributor or dealer that the "vehicle or equipment complies
with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

        The Safety Act further provides that manufacturers of motor vehicles "may not
issue the certificate if, in exercising reasonable care, the person has reason to know the
certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a
manufacturer learns that a vehicle contains a defect and that defect is related to safety or
the vehicle does not comply with proper application of the FMVSS, the manufacturer
must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the
Secretary of Transportation determines the vehicle is defective or noncompliant with the
FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of
the defect and require it to remedy the defect or noncompliance. 49 U.S.C. §
30118(b)(2)(A) & (B).

        It is believed based on current information that the door latch systems and door
handle mechanisms were designed, manufactured and installed by Ford, Magna,
Donnelly, Dortec and Atoma. At all relevant times, these companies were aware that the
door latch systems and door handle mechanisms had to comply with the FMVSS and
specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly,
Dortec and Atoma knew or should have known that their respective designs and
equipment they manufactured did not comply with FMVSS 206. Despite this, these
entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch
systems that were to be used in the Ford Vehicles.

        On or about November 4, 1995, Ford and Ford Canada commenced production of
the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would
include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the
same time, Ford and Ford Canada commenced production of the Ford manufactured
Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4,
1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford
Vehicles to consumers including but not limited to the United States and Canada. Ford
and Ford Canada represented that the vehicles and their components were properly
designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles
carry a certification label indicating that the vehicle conforms to all motor vehicles safety
standards in effect when the vehicle was manufactured.

        By October, 1995, Ford knew or should have known that the door latch assembly
was improperly designed and manufactured, and did not meet FMVSS 206. For example,
but without limitation, in or about October 1995, Ford conducted crash testing of a
Lincoln Navigator prototype. During the testing, it was observed that the impacted side

Page 4

door would open, and additional crash testing revealed that *both* impacted and non-impacted doors opened. As of that date, Ford knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions. Notwithstanding this knowledge, Ford continued to manufacture and market the Ford Vehicles for the next five years. In addition, Ford has repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective door latches over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants. The receipt of this information concerning the defective door latches obligated Ford to issue a recall, to fix the defect, and also to report and warn the National Highway Transport Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had its Critical Concern Review Group (herein referred to as CCRG) formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well. At that time, Ford took no action to rectify, recall or repair or fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the defective door latch systems. In and around August and October 1997, Ford and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants discovered that components parts in the door latches were not manufactured in accordance with specifications and did not comply with FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation into the defects. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000 defective door latch systems were in vehicles that were on the road in Canada and the United States.

On or about March 6, 2000, a Ford engineering report recognized that the door handles did not comply with Federal guidelines. The report was based on testing conducted by Ford along with the component part manufacturers—Donnelly, Dortec, Magna, and Atoma. The report concluded by recommending a recall. Upon receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a recall by hiding

Page 5

the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00508.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1] Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

---

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

Page 6

With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the recall. Ford had an engineer utilize a 30 year-old methodology to establish the "straw" argument that the door latch systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate. Ford and the component part manufacturers never contacted NHTSA because they knew that the door latch systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the door latch systems. Ford and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to address the door latch defects that had been identified. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been notified and a recall has not been issued.

## THEORIES OF RECOVERY

I.    **Violations of the Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants**

Ford and the manufacturing defendants are engaged in trade or commerce in Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, § 2(a) including, but not limited to, the following:

a.    Failing to disclose material information concerning knowledge of door latch system defects.

b.    Failing to disclose material information regarding the safety of Ford vehicles or their component parts.

c.    Taking actions to prevent Plaintiffs and members of the proposed class from learning of defects in Ford vehicles, including those defects that could result in personal injury.

d.    Breaching various express and implied warranties made to the Plaintiffs and members of the proposed class.

Page 7

Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

## II.    Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class

Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

## DAMAGES SUSTAINED

As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate inspection, repair, and/or replacement of such defective door latches. In addition,

Page 8

Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.

Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

## DEMAND FOR RELIEF

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.        and

Frederick J. Jekel, Esq.
Motley Rice LLC

ATTORNEYS AT LAW
# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600  FAX# 617-720-2445
www.tenlaw.com

# FILE COPY

September 2, 2004

## VIA FEDERAL EXPRESS, SIGNATURE REQUIRED

Chairman/Chief Executive Officer
Donnelly Corporation/Magna Donnelly Corporation
49 West Third Street
Holland, Michigan 49423-2813

    RE:   Violation of Massachusetts General Laws Chapter 93A

Dear Chairman/CEO of Donnelly Corp./Magna Donnelly:

    I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

    Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford

Page 2

to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly
Corporation f/k/a Donnelly Corporation (hereinafter "Donnelly"), Dortec Industries
(hereinafter "Dortec"), and Atoma Latching Systems Group (hereinafter "Atoma"),
hereinafter collectively "the manufacturing defendants," have committed unfair and
deceptive acts and practices in the conduct of their trade and commerce. These acts and
practices are declared unlawful by Section 2 of the Consumer Protection Act. In
addition, Plaintiffs claim that these acts and practices committed by Ford, Magna,
Donnelly, Dortec and Atoma violated various other statutory and common law duties
owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter described.

Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec and Atoma
misrepresented and deceived the Plaintiffs with respect to defects in Ford vehicles.
Plaintiffs further claim that Ford, Magna, Donnelly, Dortec and Atoma have committed
willful and fraudulent practices to prevent Plaintiffs from learning of these defects. Each
of these acts and practices, as set forth in detail below, violates Massachusetts General
Laws, Chapter 93A as well as various other statutes and the Massachusetts Common Law
and breaches warranties made to the Plaintiffs.

The unfair and deceptive trade practices arise out of an ongoing effort aimed
solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford,
Magna, Donnelly, Dortec and Atoma failed to disclose their knowledge to Plaintiffs as
well as to the National Highway Transportation Safety Administration (NHTSA). While
Ford's and the manufacturing defendants' own investigations confirmed the presence of
the defects, Ford and the manufacturing defendants concealed, and continue to conceal,
their own negative results and conclusions.

### UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES

Ford and the manufacturing defendants have committed unfair and deceptive acts
and practices and have deceived the National Highway Transportation Safety
Administration (NHTSA), personal injury victims and purchasers of vehicles
manufactured between November 1995 and the end of April, 2000, to wit: Ford F150
(various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years
1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator
Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The
wrongful conduct was designed to conceal several defects in the door latch mechanism
utilized in the above referenced vehicles. The defects in the door latch assembly were
such that the door latches were not compliant with Federal Motor Vehicle Safety
Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for
Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

Federal law requires Ford, the manufacturing defendants and their employees to
report and investigate potential safety defects. Under the Safety Act and the Tread Act,
Ford is required to recall and repair motor vehicle defects related to safety or which cause
the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as
well as all known purchasers of the defective vehicles must be notified and a recall must

Page 3

be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

It is believed based on current information that the door latch systems and door handle mechanisms were designed, manufactured and installed by Ford, Magna, Donnelly, Dortec and Atoma. At all relevant times, these companies were aware that the door latch systems and door handle mechanisms had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly, Dortec and Atoma knew or should have known that their respective designs and equipment they manufactured did not comply with FMVSS 206. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch systems that were to be used in the Ford Vehicles.

On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Ford manufactured Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford Vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their components were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

By October, 1995, Ford knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206. For example, but without limitation, in or about October 1995, Ford conducted crash testing of a Lincoln Navigator prototype. During the testing, it was observed that the impacted side door would open, and additional crash testing revealed that *both* impacted and non-

Page 4

impacted doors opened. As of that date, Ford knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions. Notwithstanding this knowledge, Ford continued to manufacture and market the Ford Vehicles for the next five years. In addition, Ford has repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective door latches over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants. The receipt of this information concerning the defective door latches obligated Ford to issue a recall, to fix the defect, and also to report and warn the National Highway Transport Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had its Critical Concern Review Group (herein referred to as CCRG) formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well. At that time, Ford took no action to rectify, recall or repair or fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the defective door latch systems. In and around August and October 1997, Ford and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants discovered that components parts in the door latches were not manufactured in accordance with specifications and did not comply with FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation into the defects. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000 defective door latch systems were in vehicles that were on the road in Canada and the United States.

On or about March 6, 2000, a Ford engineering report recognized that the door handles did not comply with Federal guidelines. The report was based on testing conducted by Ford along with the component part manufacturers—Donnelly, Dortec, Magna, and Atoma. The report concluded by recommending a recall. Upon receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a recall by hiding

the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00508.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1] Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

---

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

Page 6

With this background Ford knew that it would have to include a regulatory
compliance component in its justification for canceling the recall. Ford had an engineer
utilize a 30 year-old methodology to establish the "straw" argument that the door latch
systems were compliant with FMVSS 206. The method used by Ford in 2000 has never
been used by Ford, prior to or since, and has never been referenced in an internal
specification or instruction to component part manufacturers that performed the
compliance work. Ford and the component part manufacturers never informed NHTSA
of their decision to utilize the 30 year-old test or inquired whether the methodology was
appropriate. Ford and the component part manufacturers never contacted NHTSA
because they knew that the door latch systems did not pass the SAE J839 test, and thus
did not comply with FMVSS 206, which could have caused NHTSA to perform an
investigation into the door latch systems. Ford and the manufacturing defendants
manipulated the data, internal specifications, federal rules, and violated commonly
accepted practices in order to avoid the purchaser notification and recall requirements
that non-compliance triggered.

On or about October 16, 2000, Ford prepared a closure memo regarding the
safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to
address the door latch defects that had been identified. At that time, Ford decided not to
notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. §
30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been
notified and a recall has not been issued.

## THEORIES OF RECOVERY

**I.    Violations of the Massachusetts Consumer Protection Act, Mass. General
Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants**

Ford and the manufacturing defendants are engaged in trade or commerce in
Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive
acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c.
93A, § 2(a) including, but not limited to, the following:

   a.    Failing to disclose material information concerning knowledge of door
         latch system defects.

   b.    Failing to disclose material information regarding the safety of Ford
         vehicles or their component parts.

   c.    Taking actions to prevent Plaintiffs and members of the proposed class
         from learning of defects in Ford vehicles, including those defects that
         could result in personal injury.

   d.    Breaching various express and implied warranties made to the Plaintiffs
         and members of the proposed class.

Page 7

Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

## II.    Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class

Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

## DAMAGES SUSTAINED

As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate inspection, repair, and/or replacement of such defective door latches. In addition,

Page 8

Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.

Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

## DEMAND FOR RELIEF

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.          and

Frederick J. Jekel, Esq.
Motley Rice LLC



ATTORNEYS AT LAW
# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

Of Counsel
Elizabeth M. Short
Admitted in NY & PA only

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600  FAX# 617-720-2445
www.tenlaw.com

# FILE COPY

September 16, 2004

## VIA FEDERAL EXPRESS, SIGNATURE REQUIRED

President/Chief Executive Officer
Intier Automotive Seating of America, Inc.
c/o The Corporation Company
30600 Telegraph Road
Bingham Farms, MI 48025

RE:    Violation of Massachusetts General Laws Chapter 93A

Dear President/CEO of Intier Automotive Seating of America, Inc.:

I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford Motor Company, hereinafter jointly "Ford," and various component part manufacturers,

Page 2

to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly
Corporation as successor by merger to and d/b/a Donnelly Corporation (hereinafter
"Donnelly"), Intier Automotive Inc. (hereinafter "Intier"), Intier Automotive Closures of
America Inc. f/k/a Dortec and Intier Automotive Seating of America Inc. f/k/a Dortec,
hereinafter jointly "Dortec," and Atoma Latching Systems Group (hereinafter "Atoma"),
hereinafter collectively "the manufacturing defendants," have committed unfair and
deceptive acts and practices in the conduct of their trade and commerce. These acts and
practices are declared unlawful by Section 2 of the Consumer Protection Act. In
addition, Plaintiffs claim that these acts and practices committed by Ford, Magna,
Donnelly, Dortec, Intier and Atoma violated various other statutory and common law
duties owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter
described.

Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec, Intier and
Atoma misrepresented and deceived the Plaintiffs with respect to defects in Ford
vehicles. Plaintiffs further claim that Ford, Magna, Donnelly, Dortec, Intier and Atoma
have committed willful and fraudulent practices to prevent Plaintiffs from learning of
these defects. Each of these acts and practices, as set forth in detail below, violates
Massachusetts General Laws, Chapter 93A as well as various other statutes and the
Massachusetts Common Law and breaches warranties made to the Plaintiffs.

The unfair and deceptive trade practices arise out of an ongoing effort aimed
solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford,
Magna, Donnelly, Dortec, Intier and Atoma failed to disclose their knowledge to
Plaintiffs as well as to the National Highway Transportation Safety Administration
(NHTSA). While Ford's and the manufacturing defendants' own investigations
confirmed the presence of the defects, Ford and the manufacturing defendants concealed,
and continue to conceal, their own negative results and conclusions.

## UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES

Ford and the manufacturing defendants have committed unfair and deceptive acts
and practices and have deceived the National Highway Transportation Safety
Administration (NHTSA), personal injury victims and purchasers of vehicles
manufactured between November 1995 and the end of April, 2000, to wit: Ford F150
(various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years
1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator
Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The
wrongful conduct was designed to conceal several defects in the door latch mechanism
utilized in the above referenced vehicles. The defects in the door latch assembly were
such that the door latches were not compliant with Federal Motor Vehicle Safety
Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for
Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

Federal law requires Ford, the manufacturing defendants and their employees to
report and investigate potential safety defects. Under the Safety Act and the Tread Act,

Ford is required to recall and repair motor vehicle defects related to safety or which cause the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as well as all known purchasers of the defective vehicles must be notified and a recall must be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

It is believed based on current information that the door latch systems and door handle mechanisms were designed, manufactured and installed by Ford, Magna, Donnelly, Dortec, Intier and Atoma. At all relevant times, these companies were aware that the door latch systems and door handle mechanisms had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly, Dortec, Intier and Atoma knew or should have known that their respective designs and equipment they manufactured did not comply with FMVSS 206. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch systems that were to be used in the Ford Vehicles.

On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Ford manufactured Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford Vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their components were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

By October, 1995, Ford knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206. For example,

Page 4

but without limitation, in or about October 1995, Ford conducted crash testing of a Lincoln Navigator prototype. During the testing, it was observed that the impacted side door would open, and additional crash testing revealed that *both* impacted and non-impacted doors opened. As of that date, Ford knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions. Notwithstanding this knowledge, Ford continued to manufacture and market the Ford Vehicles for the next five years. In addition, Ford has repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective door latches over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants. The receipt of this information concerning the defective door latches obligated Ford to issue a recall, to fix the defect, and also to report and warn the National Highway Transport Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had its Critical Concern Review Group (herein referred to as CCRG) formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well. At that time, Ford took no action to rectify, recall or repair or fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the defective door latch systems. In and around August and October 1997, Ford and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants discovered that components parts in the door latches were not manufactured in accordance with specifications and did not comply with FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation into the defects. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000 defective door latch systems were in vehicles that were on the road in Canada and the United States.

On or about March 6, 2000, a Ford engineering report recognized that the door handles did not comply with Federal guidelines. The report was based on testing conducted by Ford along with the component part manufacturers—Donnelly, Dortec, Magna, , Intier and Atoma. The report concluded by recommending a recall. Upon

receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a recall by hiding the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00508.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1] Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

Page 6

        With this background Ford knew that it would have to include a regulatory
compliance component in its justification for canceling the recall. Ford had an engineer
utilize a 30 year-old methodology to establish the "straw" argument that the door latch
systems were compliant with FMVSS 206. The method used by Ford in 2000 has never
been used by Ford, prior to or since, and has never been referenced in an internal
specification or instruction to component part manufacturers that performed the
compliance work. Ford and the component part manufacturers never informed NHTSA
of their decision to utilize the 30 year-old test or inquired whether the methodology was
appropriate. Ford and the component part manufacturers never contacted NHTSA
because they knew that the door latch systems did not pass the SAE J839 test, and thus
did not comply with FMVSS 206, which could have caused NHTSA to perform an
investigation into the door latch systems. Ford and the manufacturing defendants
manipulated the data, internal specifications, federal rules, and violated commonly
accepted practices in order to avoid the purchaser notification and recall requirements
that non-compliance triggered.

        On or about October 16, 2000, Ford prepared a closure memo regarding the
safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to
address the door latch defects that had been identified. At that time, Ford decided not to
notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. §
30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been
notified and a recall has not been issued.

                        THEORIES OF RECOVERY

**I.    Violations of the Massachusetts Consumer Protection Act, Mass. General
       Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants**

        Ford and the manufacturing defendants are engaged in trade or commerce in
Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive
acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c.
93A, § 2(a) including, but not limited to, the following:

        a.    Failing to disclose material information concerning knowledge of door
              latch system defects.

        b.    Failing to disclose material information regarding the safety of Ford
              vehicles or their component parts.

        c.    Taking actions to prevent Plaintiffs and members of the proposed class
              from learning of defects in Ford vehicles, including those defects that
              could result in personal injury.

        d.    Breaching various express and implied warranties made to the Plaintiffs
              and members of the proposed class.

Page 7

Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

## II.    Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class

Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

### DAMAGES SUSTAINED

As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate

Page 8

inspection, repair, and/or replacement of such defective door latches. In addition, Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec, Intier and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.

Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

## DEMAND FOR RELIEF

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.          and

Frederick J. Jekel, Esq.
Motley Rice LLC



ATTORNEYS AT LAW
# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Rob...rt T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600  FAX# 617-720-2445
www.tenlaw.com

# FILE COPY

September 16, 2004

**VIA FEDERAL EXPRESS, SIGNATURE REQUIRED**

President/Chief Executive Officer
Intier Automotive Closures of America, Inc.
c/o The Corporation Company
30600 Telegraph Road
Bingham Farms, MI 48025

     RE:   <u>Violation of Massachusetts General Laws Chapter 93A</u>

Dear President/CEO of Intier Automotive Closures of America, Inc.:

     I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

     Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford

Page 2

Motor Company, hereinafter jointly "Ford," and various component part manufacturers, to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly Corporation as successor to and d/b/a Donnelly Corporation (hereinafter "Donnelly"), Intier Automotive Inc. (hereinafter "Intier"), Intier Automotive Closures of America Inc. f/k/a Dortec and Intier Automotive Seating of America Inc. f/k/a Dortec, hereinafter jointly "Dortec," and Atoma Latching Systems Group (hereinafter "Atoma"), hereinafter collectively "the manufacturing defendants," have committed unfair and deceptive acts and practices in the conduct of their trade and commerce. These acts and practices are declared unlawful by Section 2 of the Consumer Protection Act. In addition, Plaintiffs claim that these acts and practices committed by Ford, Magna, Donnelly, Dortec, Intier and Atoma violated various other statutory and common law duties owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter described.

Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec, Intier and Atoma misrepresented and deceived the Plaintiffs with respect to defects in Ford vehicles. Plaintiffs further claim that Ford, Magna, Donnelly, Dortec, Intier and Atoma have committed willful and fraudulent practices to prevent Plaintiffs from learning of these defects. Each of these acts and practices, as set forth in detail below, violates Massachusetts General Laws, Chapter 93A as well as various other statutes and the Massachusetts Common Law and breaches warranties made to the Plaintiffs.

The unfair and deceptive trade practices arise out of an ongoing effort aimed solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford, Magna, Donnelly, Dortec, Intier and Atoma failed to disclose their knowledge to Plaintiffs as well as to the National Highway Transportation Safety Administration (NHTSA). While Ford's and the manufacturing defendants' own investigations confirmed the presence of the defects, Ford and the manufacturing defendants concealed, and continue to conceal, their own negative results and conclusions.

## UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES

Ford and the manufacturing defendants have committed unfair and deceptive acts and practices and have deceived the National Highway Transportation Safety Administration (NHTSA), personal injury victims and purchasers of vehicles manufactured between November 1995 and the end of April, 2000, to wit: Ford F150 (various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years 1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The wrongful conduct was designed to conceal several defects in the door latch mechanism utilized in the above referenced vehicles. The defects in the door latch assembly were such that the door latches were not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

Federal law requires Ford, the manufacturing defendants and their employees to report and investigate potential safety defects. Under the Safety Act and the Tread Act,

Page 3

Ford is required to recall and repair motor vehicle defects related to safety or which cause the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as well as all known purchasers of the defective vehicles must be notified and a recall must be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

It is believed based on current information that the door latch systems and door handle mechanisms were designed, manufactured and installed by Ford, Magna, Donnelly, Dortec, Intier and Atoma. At all relevant times, these companies were aware that the door latch systems and door handle mechanisms had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly, Dortec, Intier and Atoma knew or should have known that their respective designs and equipment they manufactured did not comply with FMVSS 206. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch systems that were to be used in the Ford Vehicles.

On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Ford manufactured Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford Vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their components were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

By October, 1995, Ford knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206. For example,

Page 4

but without limitation, in or about October 1995, Ford conducted crash testing of a
Lincoln Navigator prototype. During the testing, it was observed that the impacted side
door would open, and additional crash testing revealed that *both* impacted and non-
impacted doors opened. As of that date, Ford knew or should have known that the door
latch assembly was unsafe and would expose their customers and their passengers to
catastrophic injuries, including death, in the event of certain types of motor vehicle
collisions. Notwithstanding this knowledge, Ford continued to manufacture and market
the Ford Vehicles for the next five years. In addition, Ford has repeatedly received
credible information confirming the non-compliance and safety hazards associated with
the defective door latches over the last nine years from a variety of sources, including but
not limited to, consumers, Transport Canada, and the manufacturing defendants. The
receipt of this information concerning the defective door latches obligated Ford to issue a
recall, to fix the defect, and also to report and warn the National Highway Transport
Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150
for fuel system integrity. During the testing, the passenger side door opened when the
driver side door sustained an impact. Transport Canada notified Ford that the side door
opened when there was an impact on the opposite door. In or about September 1997,
Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did
inspect the tested vehicle and, at that time, removed the door handle mechanisms and
took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had
its Critical Concern Review Group (herein referred to as CCRG) formally investigate the
issue of the doors opening upon impact. The manufacturing defendants were involved in
this investigation as well. At that time, Ford took no action to rectify, recall or repair or
fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the
defective door latch systems. In and around August and October 1997, Ford and the
manufacturing defendants further investigated the defects in the affected vehicles.
Donnelly, Dortec and the other manufacturing defendants discovered that components
parts in the door latches were not manufactured in accordance with specifications and did
not comply with FMVSS 206, nor did they comply with Ford's worldwide internal
guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation
into the defects. By this time, Ford and Ford Canada had further actual knowledge of the
known safety related defects and had identified non-compliant component parts in the
door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000
defective door latch systems were in vehicles that were on the road in Canada and the
United States.

On or about March 6, 2000, a Ford engineering report recognized that the door
handles did not comply with Federal guidelines. The report was based on testing
conducted by Ford along with the component part manufacturers—Donnelly, Dortec,
Magna, , Intier and Atoma. The report concluded by recommending a recall. Upon

Page 5

receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a recall by hiding the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00508.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1] Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

---

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

Page 6

With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the recall. Ford had an engineer utilize a 30 year-old methodology to establish the "straw" argument that the door latch systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate. Ford and the component part manufacturers never contacted NHTSA because they knew that the door latch systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the door latch systems. Ford and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to address the door latch defects that had been identified. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been notified and a recall has not been issued.

## THEORIES OF RECOVERY

### I.    Violations of the Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants

Ford and the manufacturing defendants are engaged in trade or commerce in Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, § 2(a) including, but not limited to, the following:

   a.    Failing to disclose material information concerning knowledge of door latch system defects.

   b.    Failing to disclose material information regarding the safety of Ford vehicles or their component parts.

   c.    Taking actions to prevent Plaintiffs and members of the proposed class from learning of defects in Ford vehicles, including those defects that could result in personal injury.

   d.    Breaching various express and implied warranties made to the Plaintiffs and members of the proposed class.

Page 7

Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

## II.    Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class

Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

### DAMAGES SUSTAINED

As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate

Page 8

inspection, repair, and/or replacement of such defective door latches. In addition, Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec, Intier and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.
Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

## DEMAND FOR RELIEF

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.     and

Frederick J. Jekel, Esq.
Motley Rice LLC



ATTORNEYS AT LAW
# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Patricia M. Flannery
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Allyson S. Hauck

Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600 FAX# 617-720-2445
www.tenlaw.com

# FILE COPY

September 2, 2004

**VIA FEDERAL EXPRESS, SIGNATURE REQUIRED**

Chairman/Chief Executive Officer
Dortec Industries
337 Magna Drive
Aurora, Ontario
L4G 7K1

RE:   Violation of Massachusetts General Laws Chapter 93A

Dear Chairman/CEO of Dortec Industries:

I am writing this letter on behalf of individual plaintiffs and a certain class of plaintiffs. The representative plaintiffs are Joseph Iannacchino, Soledad Berrios and Victor Marchese. The potential class of plaintiffs is composed of those individuals including, but not limited to, individual plaintiffs, estates of deceased individuals, wrongful death beneficiaries, spouses of plaintiffs, and others who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition, Lincoln Navigator, 2000 Lincoln Blackwood or 2000 Ford F150 Super Crew vehicles. The named representative Plaintiffs are members of the class they seek to represent. There are questions of law and fact common to the class.

Accordingly, this correspondence is intended to serve as a formal demand on behalf of said Plaintiffs against your company for relief under Massachusetts General Laws, Chapter 93A, Section 9 ("The Consumer Protection Act"). Plaintiffs herein claim that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford

Page 2

that Ford Motor Company of Canada, Limited (hereinafter "Ford Canada") and Ford Motor Company, hereinafter jointly "Ford," and various component part manufacturers, to wit: Magna International Incorporated (hereinafter "Magna"), Magna Donnelly Corporation f/k/a Donnelly Corporation (hereinafter "Donnelly"), Dortec Industries (hereinafter "Dortec"), and Atoma Latching Systems Group (hereinafter "Atoma"), hereinafter collectively "the manufacturing defendants," have committed unfair and deceptive acts and practices in the conduct of their trade and commerce. These acts and practices are declared unlawful by Section 2 of the Consumer Protection Act. In addition, Plaintiffs claim that these acts and practices committed by Ford, Magna, Donnelly, Dortec and Atoma violated various other statutory and common law duties owed to the Plaintiffs, which resulted in injuries to the Plaintiffs as hereinafter described.

Plaintiffs claim that for many years, Ford, Magna, Donnelly, Dortec and Atoma misrepresented and deceived the Plaintiffs with respect to defects in Ford vehicles. Plaintiffs further claim that Ford, Magna, Donnelly, Dortec and Atoma have committed willful and fraudulent practices to prevent Plaintiffs from learning of these defects. Each of these acts and practices, as set forth in detail below, violates Massachusetts General Laws, Chapter 93A as well as various other statutes and the Massachusetts Common Law and breaches warranties made to the Plaintiffs.

The unfair and deceptive trade practices arise out of an ongoing effort aimed solely at protecting Ford from the cost of a recall of the vehicles. Moreover, Ford, Magna, Donnelly, Dortec and Atoma failed to disclose their knowledge to Plaintiffs as well as to the National Highway Transportation Safety Administration (NHTSA). While Ford's and the manufacturing defendants' own investigations confirmed the presence of the defects, Ford and the manufacturing defendants concealed, and continue to conceal, their own negative results and conclusions.

<u>UNFAIR AND DECEPTIVE TRADE ACTS AND PRACTICES</u>

Ford and the manufacturing defendants have committed unfair and deceptive acts and practices and have deceived the National Highway Transportation Safety Administration (NHTSA), personal injury victims and purchasers of vehicles manufactured between November 1995 and the end of April, 2000, to wit: Ford F150 (various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years 1997 through 2000, Ford Expedition Model Years 1997 through 2000, Lincoln Navigator Model Years 1997 through 2000, and Lincoln Blackwood Model Year 2000. The wrongful conduct was designed to conceal several defects in the door latch mechanism utilized in the above referenced vehicles. The defects in the door latch assembly were such that the door latches were not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, "Door Locks and Door Retention Components" at any time for Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

Federal law requires Ford, the manufacturing defendants and their employees to report and investigate potential safety defects. Under the Safety Act and the Tread Act, Ford is required to recall and repair motor vehicle defects related to safety or which cause

Page 3

the vehicle to be non-compliant with the FMVSS. If defects are discovered, NHTSA, as well as all known purchasers of the defective vehicles must be notified and a recall must be implemented. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a). The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

    The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2). If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

    It is believed based on current information that the door latch systems and door handle mechanisms were designed, manufactured and installed by Ford, Magna, Donnelly, Dortec and Atoma. At all relevant times, these companies were aware that the door latch systems and door handle mechanisms had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity. Magna, Donnelly, Dortec and Atoma knew or should have known that their respective designs and equipment they manufactured did not comply with FMVSS 206. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the door latch systems that were to be used in the Ford Vehicles.

    On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Ford manufactured Expeditions, 4-door Supercrew Cab, and Lincoln Navigator. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned Ford Vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their components were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

    By October, 1995, Ford knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206. For example, but without limitation, in or about October 1995, Ford conducted crash testing of a

Page 4

Lincoln Navigator prototype. During the testing, it was observed that the impacted side door would open, and additional crash testing revealed that *both* impacted and non-impacted doors opened. As of that date, Ford knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions. Notwithstanding this knowledge, Ford continued to manufacture and market the Ford Vehicles for the next five years. In addition, Ford has repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective door latches over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants. The receipt of this information concerning the defective door latches obligated Ford to issue a recall, to fix the defect, and also to report and warn the National Highway Transport Safety Association and consumers of the defective door latch systems.

In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

Following notice of the unintended door openings by Transport Canada, Ford had its Critical Concern Review Group (herein referred to as CCRG) formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well. At that time, Ford took no action to rectify, recall or repair or fix any of the affected Ford Vehicles, nor did it take any steps to warn consumers of the defective door latch systems. In and around August and October 1997, Ford and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants discovered that components parts in the door latches were not manufactured in accordance with specifications and did not comply with FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

In or about February 2000 an Ad Hoc Committee at Ford began an investigation into the defects. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the door latch systems of the Ford Vehicles. At this point in time, in excess of 6,000,000 defective door latch systems were in vehicles that were on the road in Canada and the United States.

On or about March 6, 2000, a Ford engineering report recognized that the door handles did not comply with Federal guidelines. The report was based on testing conducted by Ford along with the component part manufacturers—Donnelly, Dortec, Magna, and Atoma. The report concluded by recommending a recall. Upon receipt of that report, the CCRG, the field review committee and Ford's office of general counsel

Page 5

further investigated these defects and made a business decision to avoid a recall by hiding the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of Ford Vehicles. The memo concluded that a safety-related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000. In this revision of the prior memo, Ford deleted all reference to accidents or injuries attributable to this defect, deleted references to the Expeditions and Navigators, deleted all reference to "non-compliance," and attempted to reduce the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and assigned a recall number 00508.

On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign had now been deleted from this memorandum. Ford then cancelled the recall on March 30, 2000.

Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its door latch systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance. In the initial product specifications for the door latch systems prepared by Ford, it is stated that the latch systems must be tested for strength, the integral part in FMVSS 206, through the SAE J839 test. The SAE J839 test is the preferred method utilized to establish FMVSS 206 compliance. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used those component part manufacturers to establish compliance for door latch systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work.[1] Ford and the component part manufacturers had established prior to March 3rd that the door latch systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the door latch system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to come up with a justification.

---

[1] The door latch systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase because they had used the wrong number in their calculations of the strength of a spring in the door latch systems.

Page 6

With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the recall. Ford had an engineer utilize a 30 year-old methodology to establish the "straw" argument that the door latch systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate. Ford and the component part manufacturers never contacted NHTSA because they knew that the door latch systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the door latch systems. Ford and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the Ford Vehicles. This memo discussed the field fix for Ford to address the door latch defects that had been identified. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2). In addition, as of the date of this letter, consumers have not been notified and a recall has not been issued.

## THEORIES OF RECOVERY

### I.     Violations of the Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A § 2(a) against Ford and the manufacturing defendants

Ford and the manufacturing defendants are engaged in trade or commerce in Massachusetts. Ford and the manufacturing defendants committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, § 2(a) including, but not limited to, the following:

a. Failing to disclose material information concerning knowledge of door latch system defects.

b. Failing to disclose material information regarding the safety of Ford vehicles or their component parts.

c. Taking actions to prevent Plaintiffs and members of the proposed class from learning of defects in Ford vehicles, including those defects that could result in personal injury.

d. Breaching various express and implied warranties made to the Plaintiffs and members of the proposed class.

Page 7

Ford and the manufacturing defendants knew or should have known that these acts or practices were in violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Ford and the manufacturing defendants used or employed these acts or practices in **willful or knowing** violation of section 2 of the Massachusetts Consumer Protection Act, G.L. c. 93A.

II.    **Violation of Other Statutes, the Massachusetts Common Law and Various Warranties Made to the Plaintiffs and Members of the Proposed Class**

Since at least 1997, Ford, the manufacturing defendants and their employees knew, or should have known through reasonable inquiry, about the serious safety-related defects in the door latch systems, as well as the non-compliant component parts within the door latch systems of the Ford vehicles at issue. Despite their knowledge (as discussed above), neither Ford nor the manufacturing defendants took any action to notify the public or NHTSA of the known safety-related defects in the door latch systems. Ford has not made any efforts to repair the defective vehicles on the road today, hence placing the occupants at unnecessary risk of severe injury or death. The actions and inaction of Ford and the manufacturing defendants violate various statutes and the Massachusetts common law.

The above conduct also breaches express warranties made to Plaintiffs and members of the proposed class in Ford Vehicle Owner's Manuals and inside-door stickers (for example and without limitation). Further, the above conduct breaches implied warranties made to Plaintiffs and members of the proposed class regarding the fitness of Ford vehicles. These breaches also result from the fact that the door handle mechanisms are defective and unreasonably dangerous, that they violate government safety standards and also there exists the possibility that the door latch systems might fail and cause the doors to open unintentionally, which puts Plaintiffs and members of the proposed class in great danger of personal injury or death.

## DAMAGES SUSTAINED

As a result of the willful, knowing and wrongful conduct of Ford and the manufacturing defendants as described in this demand letter, the named Plaintiffs and the class they seek to represent own vehicles that are not safe and which do not comply with federal safety standards: Plaintiffs purchased vehicles which were represented as being compliant with Federal motor vehicle safety standards that in fact are not compliant. Plaintiffs also suffered aggravation, inconvenience and frustration. As such, Plaintiffs seek from Ford and the manufacturing defendants the creation of an inspection and repair fund/program to assist Plaintiffs and members of the Class in identification and replacement of the defective door latches and the latch assembly mechanisms, as well as an emergency notice to members of the Class regarding the dangers presented by the defective door latches and the latch assembly mechanisms, and the need for immediate inspection, repair, and/or replacement of such defective door latches. In addition,

Page 8

Plaintiffs are entitled to compensatory damages from Ford and the manufacturing defendants for the economic damages incurred as a result of paying for vehicles that are not compliant with federal motor vehicle safety standards.

Plaintiffs are also entitled to damages resulting from the unfair and deceptive acts themselves, which have caused great aggravation and inconvenience to Plaintiffs and members of the proposed class, including prejudgment interest on all items of ascertainable pecuniary loss, double or treble damages, costs and attorney's fees. As a direct and proximate result of the willful and knowing unfair or deceptive acts or practices of Ford, Magna, Donnelly, Dortec and Atoma, Plaintiffs have suffered substantial economic loss as follows:

Individual Plaintiffs:

Each individual Plaintiff has suffered economic damages based on the conduct of Ford and each of the manufacturing defendants in the amount of approximately $1,200 per vehicle.

Class of Plaintiffs:

Each of the members of the proposed class has suffered economic damages approximately equal to those of the individual Plaintiffs. Therefore, the damages requested for the class plaintiffs are approximately $1,200 per vehicle with the total amount to be calculated based on the actual number of plaintiffs included in the class.

## DEMAND FOR RELIEF

Under Mass. General Laws c. 93A § 9, you have thirty (30) days from the receipt of this letter in which to create a fund to remedy the defects in the door latch systems for all members of the proposed class. In the alternative, you may chose to make a written tender of settlement providing for approximately $1,200 for each member of the proposed class. If you fail to make a tender of settlement, or if the relief tendered is not reasonable, your company may be liable for double or treble damages, together with interest, costs and attorneys' fees.

We look forward to receiving your settlement tender within the thirty (30) days prescribed by statute.

Very truly yours,

David C. Strouss, Esq.          and

Frederick J. Jekel, Esq.
Motley Rice LLC

# HOGAN & HARTSON

### L.L.P.

TERRI STEINHAUS REISKIN
PARTNER
(202) 637-5279
TSREISKIN@HHLAW.COM

COLUMBIA SQUARE
555 THIRTEENTH STREET, NW
WASHINGTON, DC 20004-1109
TEL (202) 637-5600
FAX (202) 637-5910
WWW.HHLAW.COM

June 1, 2005

**BY FACSIMILE**

Daniel S. Tarlow, Esq.
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109

> Re:   Iannacchino, et al. v. Ford Motor Co., et al.

Dear Dan:

On behalf of my client, Magna Donnelly Corporation, I am writing to confirm Magna's consent to the removal of the above-referenced action.

Sincerely,

*Terri Steinhaus Reiskin /lls*

Terri Steinhaus Reiskin

TSR/lls

cc:   Mel Andrew Schwing, Esq.
      Peter M. Durney, Esq.

BERLIN  BRUSSELS  LONDON  PARIS  BUDAPEST  PRAGUE  WARSAW  MOSCOW  TOKYO
\\\DC - 23102/0003 - 2131 NEW YORK  BALTIMORE  MCLEAN  MIAMI  DENVER  BOULDER  COLORADO SPRINGS  LOS ANGELES

## WEIL, GOTSHAL & MANGES LLP

700 LOUISIANA

SUITE 1600

HOUSTON, TEXAS 77002

(713) 546-5000

FAX: (713) 224-9511

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
SILICON VALLEY
SINGAPORE
WARSAW
WASHINGTON, D.C.

JOHN B. STRASBURGER
DIRECT LINE (713) 546-5102
E-MAIL: john.strasburger@weil.com

June 1, 2005

*Via E-Mail*
Mr. Daniel S. Tarlow
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109-1024

Re:    Civil Action No. 05-0538: *Joseph Iannacchino, Victor Marchese, and Soledad Berrios, Individually and as Representatives of a Proposed Class v. Ford Motor Company, Ford Motor Company of Canada, Ltd., Magna Donnelly Corporation, Individually and d/b/a Donnelly Corp. and as successor by merger to Donnelly Corp., Intier Automotive Seating of America Inc., Individually and d/b/a Dortec Industries, and Intier Automotive Closures of America Inc., Individually and d/b/a Dortec Industries*; In the Commonwealth of Massachusetts, Superior Court Trial Department, Middlesex, ss

Dear Mr. Tarlow:

Intier Automotive Seating of America Inc. and Intier Automotive Closures of America Inc. consent to Ford Motor Company and Ford Motor Company of Canada, Ltd.'s Notice of Removal of the above-referenced case.

Sincerely,

John B. Strasburger

JBS:bww

cc:    Mr. James Messenger [Firm]
       Mr. Jason W. Billeck [Firm]

HOI:\315119\01\6R5B01!.DOC\54080.0009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Joseph Iannacchino,
Victor Marchese, and
Soledad Berrios,
Individually and as
  Representatives of a Proposed Class,

               Plaintiffs,

v.                                                          Civil Action No. _____

Ford Motor Company,
Ford Motor Company of Canada, Ltd.,
Magna Donnelly Corporation, Individually
  And d/b/a Donnelly Corp. and as successor
  By merger to Donnelly Corp.,
Intier Automotive Seating of America, Inc.,
  Individually and d/b/a Dortec Industries,
And
Intier Automotive Closures of America, Inc.,
  Individually and d/b/a Dortec Industries,

               Defendants.

## DECLARATION OF RICHARD SERAFINI

I, Richard Serafini, state that if called to testify in this case, among those things to which

I would testify as to my own personal knowledge are the following:

1.      I am employed by Ford Motor Company ("Ford") as Supervisor of North

American Sales Reporting.

2.      Chris Boyd, whom I supervise, conducted a search of Ford's records to determine

how many new Ford F-150s, F-250s, and Expeditions, model years 1997 to 2000, were sold in

the State of Massachusetts.

3.      According to the research, 3,296 new 1997 Ford Expeditions, 6,975 new 1997 Ford F-150s, and 2,987 new 1997 Ford F-250s were sold in Massachusetts.

4.      According to the research, 3,572 new 1998 Ford Expeditions, 4,972 new 1998 Ford F-150s, and 316 new 1998 Ford F-250s were sold in Massachusetts.

5.      According to the research, 2,779 new 1999 Ford Expeditions, 5,131 new 1999 Ford F-150s, and 2,844 new 1999 Ford F-250s were sold in Massachusetts.

6.      According to the research, 2,833 new 2000 Ford Expeditions, 5,613 new 2000 Ford F-150s, and 1,924 new 2000 Ford F-250s were sold in Massachusetts.

7.      Therefore, in all, 43,242 new Ford F-150s, F-250s, and Expeditions, model years 1997 to 2000, were sold in the State of Massachusetts.


          I declare under penalty of perjury that the foregoing is true and correct.  Executed this  1st  day of June, 2005 in Dearborn, Michigan.


                                                        Richard Serafini


DC1:627865.2

℞JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Iannacchino, Joseph
Marchese, Victor
Berrios, Soledad

**(b)** County of Residence of First Listed Plaintiff **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

# 05 11141 RCL

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

SEE ATTACHMENT

## DEFENDANTS Ford Motor Company,

Ford Motor Company of Canada, Ltd.,
Magna Donnelly Corporation,
Intier Automotive Seating of America, Inc., an
Intier Automotive Closures of America, Inc.
County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

SEE ATTACHMENT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding

☒ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
49 USC 3011,3018
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ N/A

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE
6/2/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

        I.       160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

    X   II.     195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

       III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

       IV.    220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

       V.    150, 152, 153.             **05 - 11141 RCL**

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                YES ☐    NO ☒

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                YES ☐    NO ☒

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                YES ☐    NO ☐

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                YES ☐    NO ☒

7.  Do all of the parties  in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                YES ☒    NO ☐

       A.    If yes, in which division do all of the non-governmental parties reside?

           Eastern Division ☒    Central Division ☐    Western Division ☐

       B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,  residing in Massachusetts reside?

           Eastern Division ☐    Central Division ☐    Western Division ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                YES ☐    NO ☒

(PLEASE TYPE OR PRINT)    **Joseph S. Sano**
ATTORNEY'S NAME      **Prince Lobel Glovsky & Tye**
ADDRESS         **585 Commercial Street, Boston, MA**
TELEPHONE NO.     **617-456-8000**

                                                  (CategoryForm.wpd  -5/2/05)

05 - 1 1 1 4 1 RCL

## ATTACHMENT TO CIVIL ACTION COVER SHEET

Counsel For Plaintiffs:
David C. Strouss, Esq.
Kristin Marquis Fritz, Esq.
THORNTON & NAUMES
100 Summer Street – 30th Floor
Boston, MA 02110
617-720-1333

Counsel For Plaintiffs:
Frederick Jekel, Esq.
William Narwold, Esq.
Suzanne Lafleur Klok, Esq.
MOTLEY RICE LLP
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
843-216-9000

Counsel For Intier Automotive Defendants:
John B. Strasburger, Esq.
James Messenger, Esq.
Jason W. Billeck, Esq.
Weil, Gotshal & Manges LLP
700 Louisiana
Suite 1600
Houston, Texas 77002
713-546-5000

Counsel For Magna Donnelly Corp.:
Terri Steinhaus Reiskin, Esq.
Hogan & Hartson
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004-1109
202-637-5600

Counsel For Ford Motor Company and
Ford Motor Company Of Canada:
Joseph S. Sano (BBO # 545706)
Walter B. Prince, Esq. (BBO#: 406640)
Daniel S. Tarlow, Esq. (BBO# 552920)
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109
617-456-8000

Of Counsel:
John H. Beisner
John F. Niblock
Mel Andrew Schwing
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., Suite 1000
Washington, D.C. 20006-4001
202-383-5300