## Commonwealth of Massachusetts
## SUPERIOR COURT DEPARTMENT
## THE TRIAL COURT
## CAMBRIDGE

MICV2005-00538

I, Anne M. Cherubino, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the 15th of February, in the year of our Lord, Two Thousand Five



In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 2nd of June, in the year of our Lord, Two Thousand Five

*Anne M. Cherubino*

Deputy Assistant Clerk

MAS-20041213            **Commonwealth of Massachusetts**         06/02/2005
gilmanr                 **MIDDLESEX SUPERIOR COURT**         03:20 PM
**Case Summary**
**Civil Docket**

# MICV2005-00538
## Iannacchino, Individually & Representative Of A Proposed Class et al v Ford Motor Company et al

| | | | | | | |
|---|---|---|---|---|---|---|
| **File Date** | 02/15/2005 | **Status** | Disposed: transfered to other court (dtrans) | | | |
| **Status Date** | 06/02/2005 | **Session** | E - Cv E (7B Cambridge) | | | |
| **Origin** | 1 | **Case Type** | B99 - Misc tort | | | |
| **Lead Case** | | **Track** | F | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Service** | 05/16/2005 | **Answer** | 07/15/2005 | **Rule12/19/20** | 07/15/2005 |
| **Rule 15** | 07/15/2005 | **Discovery** | 12/12/2005 | **Rule 56** | 01/11/2006 |
| **Final PTC** | 02/10/2006 | **Disposition** | 04/11/2006 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Joseph Iannacchino, Individually & Representative
Of A Proposed Class
Active 02/15/2005

**Private Counsel 546253**
David C Strouss
Thornton & Naumes
100 Summer Street
30th floor
Boston, MA 02110
Phone: 617-720-1333
Fax: 617-720-2445
Active 02/18/2005 Notify

**Private Counsel 650886**
Kristen Marquis Fritz
Thornton & Naumes
100 Summer Street
30th Fl
Boston, MA 02110
Phone: 617-720-1333
Fax: 617-720-2445
Active 05/23/2005 Notify

**Plaintiff**
Victor Marchese, Individually & Representative Of
A Proposed Class
Active 02/15/2005

**Private Counsel 546253**
David C Strouss
Thornton & Naumes
100 Summer Street
30th floor
Boston, MA 02110
Phone: 617-720-1333
Fax: 617-720-2445
Active 02/18/2005 Notify

**Private Counsel 650886**
Kristen Marquis Fritz
Thornton & Naumes
100 Summer Street
30th Fl
Boston, MA 02110
Phone: 617-720-1333
Fax: 617-720-2445
Active 05/23/2005 Notify

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## MICV2005-00538

### Iannacchino, Individually & Representative Of A Proposed Class et al v Ford Motor Company et al

| | |
|---|---|
| **Plaintiff**<br>Soledad Berrios, Individually & Representative Of A<br>Proposed Class<br>Active 02/15/2005 | \*\*\* See Attorney Information Above \*\*\* |
| **Defendant**<br>Ford Motor Company<br>Served: 05/02/2005<br>Served (answr pending) 05/02/2005 | **Private Counsel 552920**<br>Daniel S Tarlow<br>Prince Lobel Glovsky & Tye<br>585 Commercial Street<br>Boston, MA 02109<br>Phone: 617-456-8100<br>Fax: 617-456-8100<br>Active 05/23/2005 Notify |
| | **Private Counsel 406640**<br>Walter B Prince<br>Prince Lobel Glovsky & Tye<br>585 Commercial Street<br>Boston, MA 02109-1024<br>Phone: 617-456-8000<br>Fax: 617-456-8100<br>Active 06/02/2005 Notify |
| | **Private Counsel 545706**<br>Joseph S Sano<br>Prince Lobel Glovsky & Tye<br>585 Commercial Street<br>Boston, MA 02109-<br>Phone: 617-456-8000<br>Fax: 617-456-8100<br>Active 06/02/2005 Notify |
| **Defendant**<br>Ford Motor Company Of Canada, Ltd.<br>Served: 05/05/2005<br>Served (answr pending) 05/05/2005 | **Private Counsel 552920**<br>Daniel S Tarlow<br>Prince Lobel Glovsky & Tye<br>585 Commercial Street<br>Boston, MA 02109<br>Phone: 617-456-8100<br>Fax: 617-456-8100<br>Active 05/23/2005 Notify |

MAS-20041213
gilmanr

Case 1:05-cv-11141-RCL   Document 2   Filed 06/07/2005   Page 4 of 32

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

06/02/2005
03:20 PM

## MICV2005-00538
## Iannacchino, Individually & Representative Of A Proposed Class et al v Ford Motor Company et al

**Private Counsel 406640**
Walter B Prince
Prince Lobel Glovsky & Tye
585 Commercial Street
Boston, MA 02109-1024
Phone: 617-456-8000
Fax: 617-456-8100
Active 06/02/2005 Notify

**Private Counsel 545706**
Joseph S Sano
Prince Lobel Glovsky & Tye
585 Commercial Street
Boston, MA 02109-
Phone: 617-456-8000
Fax: 617-456-8100
Active 06/02/2005 Notify

**Defendant**
Magna Donnelly Corporation, Individually and d/b/
Donnelly Corp.
successor by merger to Donnelly Corp.
Served: 05/02/2005
Served (answr pending) 05/02/2005

**Defendant**
Intier Automotive Seating Of America, Inc.
Individually & d/b/a
Dortec Industries
Served: 05/02/2005
Served (answr pending) 05/02/2005

**Defendant**
Intier Automotive Closures Of America, Inc.,
Individually & dba
Dortec Industries
Served: 05/02/2005
Served (answr pending) 05/02/2005

**ENTRIES**

| Date | Paper | Text |
|------|-------|------|
| 02/15/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 02/15/2005 | | Origin 1, Type B99, Track F. |
| 04/29/2005 | 2.0 | Plffs' Amended complaint reflects the addition of Count V (paragraphs |
| | | 102 to 108) as well as changes/additions to paragraphs 12 & 73 |
| 05/12/2005 | 3.0 | SERVICE RETURNED: Ford Motor Company(Defendant), 5/2/05, in hand to |

MAS-20041213
gilmanr

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

06/02/2005
03:20 PM

## MICV2005-00538

### Iannacchino, Individually & Representative Of A Proposed Class et al v Ford Motor Company et al

| Date | Paper | Text |
|------|-------|------|
| | 3.0 | G. Brown, agent, C/o CT Corporation System, 101 Federal St, Boston, MA |
| 05/12/2005 | 4.0 | SERVICE RETURNED: Magna Donnelly Corporation, Individually and d/b/ |
| | | Donnelly Corp.(Defendant), 5/2/05, by cert mail, receipt attached, |
| | | C/o CT Corporation Company, 30600 Telegraph Rd, Bingham Farms, MI |
| | | 48025 |
| 05/12/2005 | 5.0 | SERVICE RETURNED: Intier Automotive Seating Of America, Inc. |
| | | Individually & d/b/a(Defendant), 5/2/05, by cert mail, receipt |
| | | attached, C/o The Corporation Company, 30600 Telegraph Rd, Bingham |
| | | Farms, MI 48025 |
| 05/12/2005 | 6.0 | AFFIDAVIT OF SERVICE: Ford Motor Company Of Canada, Ltd.(Defendant), |
| | | 5/5/05, in hand to Carol Hick, Adm Clerk, 1 Canadian Rd, Oakville, |
| | | Ontario, L6J 5E4 |
| 05/12/2005 | 7.0 | SERVICE RETURNED: Intier Automotive Closures Of America, Inc., |
| | | Individually & dba(Defendant), 5/2/05, by cert mail, receipt |
| | | attached, c/o The Corporation Company, 3066600 Telegraph Rd, Bingham |
| | | Farms, MI 48025 |
| 05/23/2005 | 8.0 | Defendants' ASSENTED to MOTION to Extend Time to Respond, from |
| | | 5/23/05 to 6/13/05 |
| 05/25/2005 | | MOTION (P#8) ALLOWED (Raymond J. Brassard, Justice) (dated 5/24/05) |
| | | Notices mailed May 25, 2005. |
| 06/02/2005 | 9.0 | Case REMOVED this date to US District Court of Massachusetts by |
| | | defendants Ford Motor Co and Ford Motor Co of Canada, Ltd |
| 06/02/2005 | | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT |

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

SUPERIOR COURT
TRIAL DEPARTMENT

CIVIL ACTION NO: **05-0538**

Joseph Iannacchino, )
Victor Marchese, and )
Soledad Berrios, )
Individually and as )
    Representatives of a Proposed Class, )
         )
           Plaintiffs, )
         )
v. )
         )
         )
         )
Ford Motor Company, )
Ford Motor Company of Canada, Ltd., )
Magna Donnelly Corporation, Individually )
    And d/b/a Donnelly Corp. and as successor )
    By merger to Donnelly Corp., )
Intier Automotive Seating of America, Inc., )
    Individually and d/b/a Dortec Industries, )
And )
Intier Automotive Closures of America, Inc.,)
    Individually and d/b/a Dortec Industries, )
         )
        Defendants. )

**COMPLAINT
AND DEMAND
FOR JURY TRIAL**

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR

FEB 15 2005

| | |
|---|---|
| 4598E000002/15/05CIVIL | 240.00 |
| 4598E000002/15/05CIVIL | 240.00 |
| 4598E000002/15/05CIVIL | 240.00 |
| 4598E000002/15/05SUR CHARGE | 15.00 |
| 4598E000002/15/05SECC | 20.00 |

## I.    INTRODUCTION

1.  This class action centers on causes of action arising under Mass. Gen. Laws c.

    93A §§ 2, 9 and on breaches of various express and implied warranties.  The

    acts that constitute these causes of action encompass the activities of

    Defendants in designing, manufacturing, installing, supplying, selling, and

    distributing defective outside door handle systems in model year 1997 to 2000

    Ford F-150, Ford F250 (light duty), Ford Expedition or model year 2000 Ford

F150 Super Crew vehicles (hereinafter "the vehicles"), owned by Plaintiffs
and members of the proposed Class in the Commonwealth of Massachusetts.

2. The claims arise out of Massachusetts' sovereign right to protect
   Massachusetts consumers as defined by Mass. Gen. Laws c. 93A. This action
   seeks only to hold the Defendants liable to individuals who own vehicles with
   defective outside door handle systems.

3. At all times relevant herein, Defendants have willfully, knowingly, and/or
   recklessly committed unfair or deceptive acts or practices in Massachusetts for
   the express unlawful purpose of wrongfully hiding the defects and their
   knowledge of those defects in violation of Mass. Gen. Laws c. 93A, §§ 2, 9.

4. The claims arise out of various warranties, express and implied, made by
   Defendants to Plaintiffs and members of the proposed Class regarding the
   safety and compliance of the vehicles and their component parts, as discussed
   herein.

5. Plaintiffs did not know, and by the exercise of reasonable diligence could not
   have known, (1) of all the conduct constituting violation of c. 93A and
   breaching various express and implied warranties, (2) that they had been
   injured by this unlawful conduct, and (3) the entities responsible for the
   unlawful conduct.

6. The facts set forth herein based upon information and belief and are only
   representative of facts recently revealed to Plaintiffs and their counsel.

## II.    PARTIES

### A.    Representative Plaintiffs

7.  Plaintiff Joseph Iannacchino is a resident of the Commonwealth of Massachusetts. Plaintiff Iannacchino owns a 1997 Ford F-150 and has been injured by the wrongful and illegal conduct of Defendants as explained later in this complaint.

8.  Plaintiff Victor Marchese is a resident of the Commonwealth of Massachusetts. Plaintiff Marchese owns a 1997 Ford F-250 and has been injured by the wrongful and illegal conduct of Defendants as explained later in this complaint.

9.  Plaintiff Soledad Berrios is a resident of the Commonwealth of Massachusetts. Plaintiff Berrios owns a 1997 Ford Expedition and has been injured by the wrongful and illegal conduct of Defendants as explained later in this complaint.

### B.    Defendants

10. Defendant Ford Motor Company is a Delaware Corporation with its principal place of business in Michigan. Ford Motor Company, hereinafter "Ford," is a manufacturer of automobiles and other vehicles, including those owned by the Plaintiffs.

11. Defendant Ford Motor Company of Canada Limited is a Canadian corporation. Ford Motor Company of Canada Limited, hereinafter "Ford Canada," is a manufacturer of automobiles and other vehicles, including those owned by the Plaintiffs.

12. Defendant, Magna Donnelly Corporation, Individually and d/b/a Donnelly
Corporation and as successor by merger to Donnelly Corporation, is a
corporation created under the laws of Michigan. Donnelly Corporation was
incorporated under the laws of Michigan on June 12, 1936. On February 19,
2003, Magna Donnelly Corporation registered to transact business in
Michigan under the assumed name of Donnelly Corporation. Magna
Donnelly Corporation, hereinafter "Donnelly," is a manufacturer of vehicle
component parts, including those parts in vehicles owned by the Plaintiffs.

13. Defendant, Intier Automotive Closures of America, Inc. Individually and d/b/a
Dortec Industries is registered to do business in Michigan. Intier Automotive
Closures of America, Inc., hereinafter "Dortec," is a manufacturer of vehicle
component parts, including those parts in vehicles owned by the Plaintiffs.

14. Defendant, Intier Automotive Seating of America, Inc. Individually and d/b/a
Dortec Industries, is a Delaware corporation that is registered to do business
in Michigan. Intier Automotive Seating of America, Inc., hereinafter
"Dortec," is a manufacturer of vehicle component parts, including those parts
in vehicles owned by the Plaintiffs.

15. Reference in this complaint to "the manufacturing defendants" includes the
Defendants as manufacturers of vehicles and their component parts and
members of that industry. Reference to "component part manufacturers" also
includes the Defendants Magna Donnelly Corp., Intier Automotive Closures
of America, Inc. and Intier Automotive Seating of America Inc. as well as
other members of that industry.

4

## II.    JURISDICTION AND VENUE

16. This is a class action brought on behalf of Massachusetts residents who own
    model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition
    or 2000 Ford F150 Super Crew vehicles that contain defective outside door
    handle systems and who, therefore, were affected in Massachusetts by
    Defendants' conduct.

17. Representative Plaintiffs are residents of the Commonwealth of Massachusetts
    own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford
    Expedition or 2000 Ford F150 Super Crew vehicles that contain defective
    outside door handle systems **and** who were injured by Defendants' conduct in
    Massachusetts.

18. Upon information and belief, at all relevant times complained of herein,
    Defendants, individually or through their co-conspirators or their agents, were
    doing business in the Commonwealth of Massachusetts.

19. Inasmuch as Defendants have (a) transacted business in this state, (b) caused
    injury, as detailed herein, by an act or omission in this state, (c) caused injury
    in this state, as detailed herein, by an act or omission outside this state and,
    moreover, regularly do or solicit business, or engage in any other persistent
    course of conduct, or derive substantial revenue from goods used or consumed
    or services rendered in this state, and (d) violated Mass. Gen. Laws c. 93A and
    breached various express and implied warranties, thereby injuring
    Massachusetts owners of certain Ford vehicles and/or materially participated
    or assisted in the above, jurisdiction may be exercised over all Defendants

5

pursuant to Mass. Gen. Laws c. 223A, § 3(a). Further, all Defendants,
individually and through their agents, otherwise engaged in business activities
in Massachusetts on a continuous and systematic basis.

20. Venue is appropriate in the Superior Court of Middlesex County,
Massachusetts as Defendants and/or their agents or representatives have
committed unfair or deceptive acts or practices in this county.

21. At all times mentioned herein, the Defendants acted through their duly
authorized agents, servants, and employees who were at all times relevant
herein acting within the course of their employment and within the scope of
their employment for the furtherance of the business of each of the Defendant
corporations.

22. Plaintiffs and the class they seek to represent ask for no direct relief under any
federal law or regulation, assert no federal claims, and withdraw any asserted
claim if it is preempted by federal law. Any remedy under federal law,
regulation, rule, or other federal authority is expressly disclaimed at this time.
no federal diversity jurisdiction exists because the amount in controversy for
any individual plaintiff or class member does not exceed $74,999.00.

## IV.    CLASS ACTION ALLEGATIONS

23. Plaintiffs bring this action on their own behalf and on behalf of all other
persons similarly situated for the purpose of asserting claims alleged herein on
a common basis, pursuant to Rule 23 of the Massachusetts Rules of Civil

6

Procedure and under Mass. Gen. Laws c. 93A, § 9(2). The proposed Class is

defined as:

> Owners of model year 1997 to 2000 Ford F-150, Ford F250 (light
> duty), Ford Expedition or model year 2000 Ford F150 Super Crew
> vehicles that contain defective outside door handle systems and
> who are residents of Massachusetts. Excluded from the class are
> all claims for personal injury by Plaintiffs or class members. Also
> excluded from the class are defendants, any entity in which
> defendants have a controlling interest and defendants' legal
> representatives heirs and successors.

24. The named representative Plaintiffs are members of the class they seek to

represent; that is, those residents of Massachusetts who own model year 1997

to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition or model year

2000 Ford F150 Super Crew vehicles that were manufactured by Ford Motor

Company or Ford Motor Company of Canada and which contain defective

outside door handle systems and who were injured by Defendants' conduct in

Massachusetts.

25. All of the outside door handles and their component parts do not comply with

FMVSS or CMVSS nor do they meet Ford's own internal standards,

regardless of the make or model or year of the vehicle.

26. This action is brought and may properly be maintained as a class action

pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure and Mass.

Gen. Laws c. 93A, § 9(2). This action satisfies the procedural requirements

set forth by Rule 23 and c. 93A, § 9(2).

27. The use or employment of unfair or deceptive acts or practices by the

Defendants, acting individually and in concert, have caused similar injury to

members of the Class who are similarly situated and who have been damaged

and/or injured by and through the allegations contained herein. The Class of

plaintiffs is so numerous that joinder of all members is impracticable.

28. There are substantial questions of law and fact common to the class.

These common questions include, but are not limited to, the following:

    a.  Whether the outside door handle systems or certain component parts in the outside door handle systems in the vehicles are defective;

    b.  Whether Defendants knew, or became aware, that the outside door handle systems or certain component parts in the vehicles were not properly designed or manufactured, yet they continued to manufacture, distribute, advertise, and market the vehicles without correcting the problems;

    c.  Whether Defendants knew or should have known that the presence of these defective outside door handle systems in the vehicles had the potential to result in significant injury or death to vehicle occupants;

    d.  Whether Defendants engaged in unfair and deceptive acts or practices when they represented that the vehicles complied with safety standards, when in fact, and to Defendants' knowledge, they did not;

    e.  Whether the vehicles are unreasonably dangers and not fit and safe for their ordinary and intended use;

    f.  Whether Defendants' express and implied warranties and representations that the vehicles complied with all safety standards and regulations, while Defendants knew or should have known that the outside door handle systems were subject to failure during normal use and that if such a failure occurred, the vehicle occupants would be placed in great danger of being injured or killed, constituted a violation of Mass. Gen. Laws c. 93A, §§ 2, 9 which prohibits "…unfair or deceptive acts or practices in the conduct of any trade or commerce…"

    g.  Whether Defendants' failure to inform Plaintiffs, members of the proposed Class and others that their vehicles contained defective outside door handle systems, Defendants' silence concerning the likely known problems with the outside door handle systems, and the fact that these outside door handle systems were not merchantable or fit for their intended purposes constitute violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breached express and implied warranties made to Plaintiffs and members of the proposed Class.

h.  Whether the conduct described herein breached the various express
    and implied warranties made to Plaintiffs and members of the
    proposed Class.

i.  Whether Defendants have violated various regulations promulgated by
    the Massachusetts Attorney General, the violation of which are a per
    se violation of Mass. Gen. Laws c. 93A, to wit:

    1.  940 CMR 5.03 (5), which provides: "It is an unfair or
        deceptive act or practice for a manufacturer to fail to give
        prompt written notice of any defect in motor vehicles
        manufactured by it to its distributors, zone offices, dealers and
        other representatives, as well as to the purchasers or owners of
        such vehicles who are known to the manufacturer. Such
        written notice shall contain the following information:
            (a) A clear description of such defect and the identity of
            the model or class of vehicles in which such defect occurs;
            (b) An evaluation of the risk of accident, impairment of
            operation or performance or impairment of the value
            reasonably related to such defect;
            (c) A statement of the measures to be taken to obtain
            remedy of such defect; and
            (d) Whether the cost of such remedy or any part thereof
            will be borne by the manufacturer."

    2.  940 CMR 3.05(1), which provides: "No claim or representation
        shall be made by any means concerning a product which
        directly, or by implication, or by failure to adequately disclose
        additional relevant information, has the capacity or tendency or
        effect of deceiving buyers or prospective buyers in any
        material respect. This prohibition includes, but is not limited to,
        representations or claims relating to the construction,
        durability, reliability, manner or time of performance, safety,
        strength, condition, or life expectancy of such product, or
        financing relating to such product, or the utility of such product
        or any part thereof, or the ease with which such product may be
        operated, repaired, or maintained or the benefit to be derived
        from the use thereof."

    3.  940 CMR 3.08(2), which provides: "It shall be an unfair and
        deceptive act or practice to fail to perform or fulfill any
        promises or obligations arising under a warranty. The
        utilization of a deceptive warranty is unlawful.

9

j.  Whether Class members have been injured by defendants' alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties;

k.  Whether Defendants' alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 were knowing, willful, wanton, intentional, deliberate and malicious or otherwise such that plaintiffs are entitled to an award of multiple or punitive damages;

l.  Whether Defendants combined and acted in concert with one another in their alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties;

m.  Whether Defendants' alleged combination and actions in concert with one another in their alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties were done for the purpose of causing, and in fact caused, class members to be injured; and

n.  Whether Defendants' alleged combination and actions in concert with one another in their alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties were knowing, willful, wanton, intentional, deliberate and malicious or otherwise such that Plaintiffs and members of the proposed Class are entitled to an award of multiple or punitive damages.

29. The claims of the representative Plaintiffs are typical of the claims of the Class. The same events and conduct that give rise to the claims and legal theories of Plaintiffs also give rise to the same claims and legal theories of the Class. The Plaintiffs' claims are typical of the claims of the other members of the Class in that litigation of Plaintiffs' claims will advance the interest of absent Class members.

30. The representative Plaintiffs will fairly and adequately represent the interests of the Class. There are no disabling conflicts of interests between the representative Plaintiffs and the Class.

10

31. The named representative Plaintiffs are part of the Class, possess the same interests, and suffer the same injuries as the Class members, making their interests coextensive with those of the Class. The interests of the representative Plaintiffs and the Class are identical so that the motive and inducement to protect and preserve these interests are the same for each.

32. The Class is represented by experienced counsel well qualified to handle this case. This lawsuit will be capably and vigorously pursued by the representative Plaintiffs and their counsel. In this case, a class action is superior to other methods for the fair and efficient adjudication of the controversy.

## IV.   BACKGROUND AND FACTUAL ALLEGATIONS

33. In addition to the allegations set forth herein, Plaintiffs incorporate by reference herein the factual allegations set out in certain "demand letters" sent to Defendants pursuant to Mass. Gen. Laws c. 93A, § 9, and attached hereto as **Exhibits A - F**.

34. Ford, Ford Canada and various component part manufacturers, to wit: Magna, Donnelly, Dortec and Intier, hereinafter collectively "the manufacturing defendants," have committed unfair and deceptive acts and practices in the conduct of their trade and commerce.

35. Ford, Ford Canada and the manufacturing defendants have committed unfair and deceptive acts and practices and have deceived the National Highway Transportation Safety Administration (NHTSA), purchasers of vehicles manufactured between November 1995 and the end of April, 2000, to wit:

11

Ford F150 (various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years 1997 through 2000, Ford Expedition Model Years 1997 through 2000, and Ford F150 Super Crew Model Year 2000.

36. The wrongful conduct was designed to conceal a defect in the outside door handle systems and certain component parts of the outside door handle systems utilized in the above vehicles.

37. The defect in the outside door handle systems were such that the outside door handle systems are not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, "Door Locks and Door Retention Components" or Canadian Federal Motor Vehicles Safety Standard (CMVSS) 206 at any time for Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

38. Federal law requires Ford, the manufacturing defendants and their employees to report and investigate potential safety defects. Under the Motor Vehicle Safety Act (the "Safety Act"), 49 U.S.C. §30101 et seq., and the Transportation Recall Enhancement, Accountability, and Documentation Act (the "Tread Act"), 49 U.S.C. § 30170, Ford is required to recall and repair motor vehicle defects related to safety or which cause the vehicle to be non-compliant with the FMVSS. Under the Tread Act, if defects are discovered, NHTSA, as well as all known purchasers of the defective vehicles must be notified and a recall must be implemented.

39. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in

12

interstate commerce of any vehicle that does not comply with the standards
promulgated in accordance with the Act. 49 U.S.C. § 30112(a).

40. The Safety Act requires a manufacturer of motor vehicles to issue a
certification to the distributor or dealer that the "vehicle or equipment
complies with applicable motor vehicle safety standards." 49 U.S.C. § 30115.

41. The Safety Act further provides that manufacturers of motor vehicles "may
not issue the certificate if, in exercising reasonable care, the person has reason
to know the certificate is false or misleading in a material respect." 49 U.S.C.
§ 30115.

42. If a manufacturer learns that a vehicle contains a defect and that defect is
related to safety or the vehicle does not comply with proper application of the
FMVSS, the manufacturer must inform the Secretary of Transportation. 49
U.S.C. § 30118(c)(1) & (2).

43. If the Secretary of Transportation determines the vehicle is defective or
noncompliant with the FMVSS, it will require the manufacturer to notify the
owners, purchasers and dealers of the defect and require it to remedy the
defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

44. It is believed based on current information that the outside door handle
systems their component parts were designed, manufactured and installed by
Ford, Ford Canada, Magna, Donnelly, Dortec and/or Intier.

45. These companies were aware that the outside door handle systems had to
comply with the FMVSS and specifically with FMVSS 206 for door latch
retention and integrity.

46. Magna, Donnelly, Dortec and Intier knew or should have known that their respective designs and equipment they manufactured and/or installed, did not comply with FMVSS 206 and did not meet Ford's own internal standards.

47. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the outside door handle systems that were to be used in the Ford Vehicles.

48. On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250 Truck. At the same time, Ford and Ford Canada commenced production of the Expeditions and 4-door Supercrew Cab. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their component parts were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

49. By October, 1995, Ford and Ford Canada knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206.

50. For example, but without limitation, in or about October 1995, Ford conducted crash testing of a prototype of the vehicles. During the testing, it

14

was observed that upon impact, the impacted side door would open, and after
crash testing revealed that *both* impacted and non-impacted doors opened. As
of that date, Ford and Ford Canada knew or should have known that the door
latch assembly was unsafe and would expose their customers and their
passengers to catastrophic injuries, including death, in the event of certain
types of motor vehicle collisions.

51. Notwithstanding the above knowledge, Ford and Ford Canada continued to
manufacture and market the vehicles for the next five years.

52. Ford and Ford Canada have repeatedly received credible information
confirming the non-compliance and safety hazards associated with the
defective outside door handle systems over the last nine years from a variety
of sources, including but not limited to, consumers, Transport Canada, and the
manufacturing defendants.

53. The receipt of this information concerning the defective outside door handle
systems obligated Ford and Ford Canada to report and warn the National
Highway Transport Safety Association and consumers of the defective outside
door handle systems and to replace those door latches with FMVSS and
CMVSS 206 compliant door handle systems.

54. In or about August 1997, Transport Canada commenced testing on the Ford F-
150 for fuel system integrity. During the testing, the passenger side door
opened when the driver side door sustained an impact. Transport Canada
notified Ford that the side door opened when there was an impact on the
opposite door. In or about September 1997, Transport Canada invited Ford

15

and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

55. Following notice of the unintended door opening by Transport Canada, Ford had its Critical Concern Review Group (hereinafter "CCRG") formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well.

56. Ford and Ford Canada took no action to replace the non-compliant outside door handle systems in any of the affected vehicles, nor did it take any steps to warn consumers of the defective outside door handle systems.

57. In and around August and October 1997, Ford, Ford Canada and the manufacturing defendants further investigated the defects in the affected vehicles. Donnelly, Dortec and the other manufacturing defendants were aware that component parts in the outside door handle systems did not comply with CMVSS or FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

58. In or about February 2000 an Ad Hoc Committee at Ford began an additional investigation into the defect. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the outside door handle systems of the vehicles. At this point in time, in excess of approximately 6,000,000 defective outside door handle systems were in vehicles that were on the road in Canada and the United States.

16

59. On or about March 6, 2000, a Ford engineering report acknowledged that the door handles did not comply with Federal guidelines, FMVSS 206. The report was based on testing and analysis conducted by Ford and the component part manufacturers—Donnelly, Dortec, Magna and Intier. The report concluded a field campaign to perform replacement should be instituted.

60. Upon receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a field campaign by hiding the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

61. In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of the vehicles. The memo concluded that a safety-related field campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000.

62. In this revision of the prior memo, Ford deleted all reference to potential accidents or injuries attributable to this defect, deleted references to the Expeditions, deleted all reference to "non-compliance," and reduced the number of affected vehicles from an estimated 3,000,000 down to an

17

estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety campaign was necessary and began its own campaign process.

63. During this time, Ford evaluated the cost to it of issuing a field campaign to perform replacement.

64. On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety campaign was deleted from this memorandum. Ford cancelled the campaign on March 30, 2000.

65. Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its outside door handle systems, initiated a field campaign program and then cancelled the campaign. During that time, Ford and the manufacturing defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance.

66. The initial product specifications for the outside door handle systems prepared by Ford stated that the latch systems must be tested for strength, the integral part in FMVSS 206, utilizing the SAE J839 methodology. The SAE J839 methodology is the preferred method utilized to establish FMVSS 206 compliance.

18

67. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used the component part manufacturers to establish compliance for outside door handle systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work. However, the outside door handle systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase only because they had used the wrong number in their calculations of the strength of a spring in the outside door handle systems.

68. Ford and the component part manufacturers had established prior to March 3rd that the outside door handle systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the outside door handle system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to justify cancellation of the campaign.

69. With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the campaign to replace the door handle systems with FMVSS 206 complaint handles. A Ford engineer utilized a 30 year-old methodology to establish the "straw" argument that the outside door handle systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work.

70. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate.

71. Ford and the component part manufacturers never contacted NHTSA because they knew that the outside door handle systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the outside door handle systems.

72. Ford, Ford Canada and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

73. On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the vehicles. This memo discussed the field fix for Ford to replace the outside door handle systems with those that complied with FMVSS 206.

74. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2).

75. To date, consumers have not been notified and a field campaign has not been issued.

## FIRST CAUSE OF ACTION

### (Violation of Mass. Gen. Laws c. 93A, §§2, 9
### Unfair Methods of Competition and Unfair or Deceptive Acts and Practices)

76. Plaintiffs hereby adopt the allegations of paragraphs 1-75 and incorporate the same herein by reference.

77. Defendants and/or their predecessors are/were engaged in trade or commerce.

78. Defendants individually and collectively committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A, §§ 2, 9, and particularly, but without limitation:

   a. Unfairly and deceptively permitting a known defective outside door handle system to be manufactured and installed into the vehicles which in turn endangered the lives and health of Plaintiffs and members of the proposed Class;

   b. Unfairly and deceptively disregarding information solely for the purpose of not having to issue a field campaign;

   c. Having actually knowledge that the outside door handle system components did not comply with CMVSS and FMVSS 206 and yet failing to disclose this information for the sole purpose of limiting their financial liability despite the fact that the defendants knew that the defect could result in serious injury and/or death;

   d. Unfairly and deceptively applying a national safety mark to the vehicles despite the fact that the vehicles did not comply with CMVSS and FMVSS 206, and fell well below internal guidelines;

   e. Unfairly and deceptively applying a national safety mark to the vehicles despite the fact that the defendants knew that the defect could result in serious injury and/or death;

   f. Unfairly and deceptively relying upon an antiquated and nonstandard method for testing the safety of the outside door handle system, despite

21

the fact that defendants knew that this method was not approved and
did not comply with their own internal standards; and

g.  Violating Attorney General Regulations, including 940 CMR §
5.03(5), 940 CMR § 3.05(1) and 940 CMR § 3.08(2).

79. Defendants knew or should have known that these acts or practices were in
violation of sections 2 and 9 of the Massachusetts Consumer Protection Act,
Mass. Gen. Laws c. 93A.

80. Defendants used or employed these acts or practices in willful or knowing
violation of sections 2 and 9 of the Massachusetts Consumer Protection Act,
Mass. Gen. Laws c. 93A.

81. As a result of the unfair and deceptive conduct of Defendants, individually
and collectively, the named Plaintiffs and the Class they seek to represent
were injured in that they (1) own vehicles that are unsafe, (2) own vehicles
that are worth less than their value were they to comply with all safety
standards and (3) will incur the cost of repairing the vehicles to make them
safe.

82. Plaintiffs and members of the proposed Class are entitled to compensatory
damages from Defendants, and each of them, for the economic and non-
economic damages identified herein; and Defendants, and each of them, are
liable to the Plaintiffs and members of the proposed Class for multiple or
punitive damages predicated on the allegations set forth herein.

## SECOND CAUSE OF ACTION

**(Conspiracy And Concert of Action to Violate Mass. Gen. Laws c. 93A, §§2, 9)**

83. Plaintiffs hereby adopt the allegations of paragraphs 1-82 and incorporate the same herein by reference.

84. The conduct set forth above constitutes a conspiracy and concert of action to violate the duties owed by Defendants to Plaintiffs and members of the proposed Class under Mass. Gen. Laws c. 93A, §§ 2, 9.

85. The allegations herein prove that the Defendants joined forces, exchanged information and resources and undertook unfair or deceptive acts or practices which proximately caused the harm to the Plaintiffs and members of the proposed Class, as set forth herein.

86. Defendants conspired to commit these unfair and deceptive acts or practices for the purpose of wrongfully limiting their financial liability, knowing such conduct would result in injury to Plaintiffs and members of the proposed Class who, as a result, (1) own vehicles that are unsafe, (2) own vehicles that are worth less than their value were they to comply with all safety standards and (3) will incur the cost of repairing the vehicles to make them safe.

87. Defendants conspired among and between themselves to intentionally misrepresent and suppress relevant information regarding their knowledge of the defects in the outside door handle systems and to minimize the full nature and extent of their financial liability, which resulted in injury to Plaintiffs and members of the proposed Class.

88. Defendants were aware of the potential dangers that could result from the defective outside door handle systems. The Defendants or their predecessors have actively conspired and acted in concert with each other to suppress the truth and knowledge concerning their liability for the defective outside door handle systems, and the potential for serious injury or death that could result from failure of the outside door handle systems.

89. The conduct of the Defendants was, has been, and is willful, knowing, and deliberate.

90. As a result of the unfair and deceptive conduct of the Defendants, individually and collectively, the named Plaintiffs and the Class they seek to represent were injured in that they (1) own vehicles that are unsafe, (2) own vehicles that are worth less than their value were they to comply with all safety standards and (3) will incur the cost of repairing the vehicles to make them safe.

91. The Plaintiffs and members of the proposed Class are entitled to compensatory damages from the Defendants, and each of them, for the economic and non-economic damages identified herein; and the Defendants, and each of them, are liable to the Plaintiffs and members of the proposed Class for multiple or punitive damages predicated on the allegations set forth herein.

24

## THIRD CAUSE OF ACTION

### (Breach of Express Warranty)

92. Plaintiffs hereby adopt the allegations of paragraphs 1- 91 and incorporate the same herein by reference.

93. Defendants expressly warranted that the vehicles, including the component parts in the outside door handle systems of those vehicles, were in compliance with CMVSS and FMVSS 206; a sticker affixed to the vehicles certifies and warrants this compliance.

94. Having knowledge of the defect in the outside door handle systems that resulted in non-compliance with CMVSS and FMVSS 206, defendants nonetheless certified and warranted that the vehicles complied with FMVSS 206 and affixed a sticker warranting compliance.

95. Defendants breached the express warranties made to Plaintiffs and members of the proposed class because the vehicles they own do not conform to the express warranties made by Defendants.

96. As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs and members of the proposed Class suffered and are entitled to recover damages.

## FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty)

97. Plaintiffs hereby adopt the allegations of paragraphs 1- 96 and incorporate the same herein by reference.

25

98. Defendants impliedly warranted that the vehicles, including the component parts in the outside door handle systems of those vehicles, were safe for their ordinary purpose and use and conformed to the promises of fact made on their label.

99. Having knowledge of the defect in the outside door handle systems that could result in the door opening unintentionally and that could result in serious injury or death, Defendants knew that the vehicles were not safe for their ordinary purpose and use and that they do not conform to the promises made on the label.

100. Defendants breached the implied warranties made to Plaintiffs and members of the proposed Class because the vehicles they own are not safe for their ordinary purpose and use and do not conform to the promises made on the label.

101. As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs and members of the proposed Class suffered and are entitled to recover damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the proposed Class seek compensatory and multiple or punitive damages against all Defendants for participation in the violation of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties as

detailed herein.  Plaintiffs demand judgment against Defendants, jointly and severally, as

follows:

1.  Certification of the Class under Rule 23 of the Massachusetts Rules of
    Civil Procedure and Mass. Gen. Laws c. 93A, § 9(2) and appointment of
    Plaintiffs as representatives of the Class and their counsel as Class counsel;

2.  Compensatory damages for economic and non-economic damages
    identified herein;

3.  Multiple or punitive damages under Mass. Gen. Laws c. 93A, § 9;

4.  Prejudgment interest;

5.  Cost of investigation and suit;

6.  Reasonable attorney's fees; and

7.  Such other relief as the Court deems equitable and just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

DATED:  February 15, 2005

Respectfully submitted,
by Plaintiffs' attorneys,

David C. Strouss, Esq. BBO# 546253
Kristen Marquis Fritz, Esq. BBO# 650886
**THORNTON & NAUMES**
100 Summer Street - 30th Floor
Boston, MA 02110
(617) 720-1333

AND

Frederick Jekel, Esq.
William Narwold, Esq.
Suzanne Lafleur Klok, Esq.
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Joseph Iannacchino,                              )
Victor Marchese, and                             )
Soledad Berrios,                                 )
Individually and as                              )
Representatives of a Proposed Class,             )
          Plaintiffs,                            )
                                                 ) Civil Action No. 1:05-cv-11141-RCL
v.                                               )
                                                 )
Ford Motor Company,                              )
Ford Motor Company of Canada, Ltd.,              )
Magna Donnelly Corporation, Individually         )
And d/b/a Donnelly Corp. and as successor        )
By merger to Donnelly Corp.,                     )
Intier Automotive Seating of America, Inc.,      )
Individually and d/b/a Dortec Industries,        )
And                                              )
Intier Automotive Closures of America, Inc.,     )
Individually and d/b/a Dortec Industries,        )
          Defendants.                            )

## NOTICE OF FILING CERTIFIED COPY OF ALL RECORDS AND PROCEEDINGS AND CERTIFIED COPY OF DOCKET ENTRIES IN STATE COURT ACTION

Defendants, Ford Motor Company and Ford Motor Company of Canada, Ltd,

pursuant to Local Rule 81.1 hereby file certified copies of all records and proceedings and

a certified copy of the docket entries from the Massachusetts state court action between the

captioned parties (Middlesex Superior Court, Civil Action No. 05-0538) which has been

removed to this court.

Dated: June 7, 2005

Respectfully Submitted,

FORD MOTOR COMPANY,
FORD MOTOR COMPANY OF
CANADA, LTD.,

By their Attorneys:

_____
Joseph S. Sano (BBO # 545706)
Walter B. Prince, Esq. (BBO#: 406640)
Daniel S. Tarlow, Esq. (BBO# 552920)
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8100

## OF COUNSEL:

John H. Beisner
John F. Niblock
Mel Andrew Schwing
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., Suite 1000
Washington, D.C. 20006-4001
(202) 383-5300 – Telephone
(202) 383-5414 – Fax

## CERTIFICATE OF SERVICE

I, Joseph S. Sano, hereby certify that on June 7, 2005, I served the within document by causing copies to be mailed by first class mail postage prepaid to counsel of record as follows:

Plaintiffs' Counsel:
David C. Strouss, Esq.
Kristin Marquis Fritz, Esq.
THORNTON & NAUMES
100 Summer Street – 30th Floor
Boston, MA 02110

Plaintiffs' Counsel:
Frederick Jekel, Esq.
William Narwold, Esq.
Suzanne Lafleur Klok, Esq.
MOTLEY RICE LLP
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464

Intier Automotive Counsel:
John B. Strasburger, Esq.
Jason W. Billeck, Esq.
Weil, Gotshal & Manges LLP
700 Louisiana
Suite 1600
Houston, Texas 77002

Intier Automotive Counsel - Local
James Messenger, Esq.
Weil, Gotshal & Manges LLP
100 Federal Street
Boston, MA 02110
617-772-8300

Magna Donnelly Corp.'s Counsel:
Terri Steinhaus Reiskin, Esq.
Hogan & Hartson
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004-1109

Of Counsel - Ford Motor Company:
John H. Beisner
John F. Niblock
Mel Andrew Schwing
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., Suite 1000
Washington, D.C. 20006-4001

Joseph S. Sano