UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Joseph Iannacchino,<br>Victor Marchese, and<br>Soledad Berrios,<br>Individually and as Representatives<br>  of a Proposed Class,<br><br>                Plaintiffs,<br><br>v.<br><br>Ford Motor Company,<br>Ford Motor Company of Canada, Ltd.,<br>Magna Donnelly Corporation, Individually<br>  and d/b/a Donnelly Corp. and as successor<br>  by merger to Donnelly Corp.,<br>Intier Automotive Seating of America, Inc.,<br>  Individually and d/b/a/ Dortec Industries,<br>and<br>Intier Automotive Closures of America, Inc.,<br>  Individually and d/b/a Dortec Industries,<br><br>                Defendants. | Civil Action No. 05-CV-11141-RCL |

**DEFENDANTS INTIER AUTOMOTIVE CLOSURES OF AMERICA, INC. AND
INTIER AUTOMOTIVE SEATING OF AMERICA, INC.'S MEMORANDUM OF
LAW IN SUPPORT OF THEIR RULE 12(b)(2) MOTION TO DISMISS**

Defendants Intier Automotive Closures of America, Inc. ("Intier Closures") and

Intier Automotive Seating of America, Inc. ("Intier Seating") submit this Memorandum of Law

in Support of their Rule 12(b)(2) Motion to Dismiss.

## Introduction

In this case involving alleged defects in automotive door latches present in Ford

vehicles in Massachusetts, Plaintiffs attempt to assert personal jurisdiction over two

defendants—Intier Closures and Intier Seating—that neither manufactured the door latches at

issue nor injected them into the stream of commerce that carries them to Massachusetts. Nor do

these defendants conduct any other business in Massachusetts, much less engage in a persistent and systematic course of conduct in the Commonwealth. Under Plaintiffs' theory of personal jurisdiction, these Defendants could be subject to personal jurisdiction wherever a Ford vehicle is to be found. That cannot be right. The proposition that defendants with neither systematic contacts to Massachusetts in general nor specific contacts relating to the allegations in this case can be subject to personal jurisdiction in this forum simply offends traditional notions of fair play. Accordingly, both the Massachusetts long-arm statute and the U.S. Constitution forbid the exercise of such jurisdiction.

## I.
## Summary of Motion to Dismiss

Intier Closures and Intier Seating are not subject to personal jurisdiction in Massachusetts unless Plaintiffs satisfy their burdens of showing both that (1) Massachusetts's long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of that jurisdiction would not violate due process. Plaintiffs attempt to satisfy both prongs of this test by alleging that Intier Closures and Intier Seating manufactured (outside of Massachusetts) certain component parts to an automotive door latch, these door latch component parts were sold (outside of Massachusetts) to Ford, that Ford incorporated these door latch component parts into certain of its vehicles, that Ford either directly or indirectly sold those vehicles in Massachusetts, and that the door latches in certain Ford vehicles in Massachusetts fail to comply with the Federal Motor Vehicle Safety Standard ("FMVSS") 206. Plaintiffs are both factually and legally incorrect.

First, Intier Closures and Intier Seating have never manufactured, distributed, or sold any component of the door latches upon which Plaintiffs base their claims. In fact, Intier

Closures and Intier Seating do not manufacture, sell, or distribute any door latch component parts. As a result, Plaintiffs are factually wrong.

Secondly, Intier Closures and Intier Seating are both non-resident corporations that have no contact whatsoever with Massachusetts that would subject them to personal jurisdiction in this forum. Therefore, even if Intier Closures and Intier Seating did manufacture door latch component parts outside of Massachusetts and sold door latch component parts to Ford outside of Massachusetts, that conduct would fail as a matter of law to satisfy the minimum contacts with Massachusetts that are necessary to assert personal jurisdiction over Intier Closures and Intier Seating in this forum.

As a result, Plaintiffs are unable to meet their burden on either prong of the two-part personal jurisdiction test. Accordingly, Intier Closures and Intier Seating ask the Court to dismiss them from this lawsuit.

## II.
## Factual Background

In this putative class action, Plaintiffs claim they own certain Ford vehicles that contain door latches that allegedly do not comply with FMVSS 206. (Compl. ¶¶ 37-47.) Plaintiffs do not allege that these door latches have manifested any defect that has caused a personal injury to any person. As a result, Plaintiffs ask the Court to award them, *inter alia*, relief in the form of requiring Defendants to pay for modifying the door latches already in the hands of consumers. (Compl. ¶¶ 90.)

Plaintiffs allege that Intier Closures and Intier Seating manufactured certain components of the door latches in the Ford vehicles. (Compl. ¶ 13-14.) Based on this allegation, Plaintiffs claim that Intier Closures and Intier Seating are proper defendants subject to personal jurisdiction in this forum. Plaintiffs are wrong on both counts.

As a threshold matter, Intier Closures does not manufacture, distribute, or sell any door latch components, including those in the Ford vehicles. (Declaration of Robert Tait, herinafter "Tait Aff.," at ¶ 3.) It is solely an engineering firm. (*Id.* ¶ 4.) Moreover, it is a Delaware corporation with its principal place of business in Michigan and it does not conduct any business in Massachusetts, is not licensed or qualified to conduct business in Massachusetts, and has not authorized any person or entity to conduct business in Massachusetts on its behalf. (*Id.* ¶¶ 2, 4.) Similarly, Intier Seating does not manufacture, distribute, or sell any door latch components, including those in the Ford vehicles. (Declaration of Glen M. Copeland, herinafter "Copeland Aff.," at ¶ 3.) Intier Seating is also a Delaware corporation with its principal place of business in Michigan and does not conduct any business in Massachusetts, is not licensed or qualified to conduct business in Massachusetts, and has not authorized any person or entity to conduct business in Massachusetts on its behalf. (*Id.* ¶¶ 2, 4.)

Accordingly, neither Intier Closures nor Intier Seating engage in activities connecting them to Massachusetts. Intier Closures and Intier Seating:

- Do not own, operate, lease, or control any real or personal property in Massachusetts;

- Do not have an office in Massachusetts;

- Do not have a telephone listing or address in Massachusetts;

- Have no employees, agents, or representatives in Massachusetts;

- Do not recruit employees in Massachusetts;

- Do not manufacture any product in Massachusetts;

- Do not sell or deliver products or goods to Massachusetts and do not participate in or control any decision to sell or deliver products to Massachusetts;

- Do not have or control any distribution system that brings any goods into Massachusetts;

- Have not marketed goods through a distributor who has agreed to serve as either Defendant's sales agent in Massachusetts;

- Are not licensed or qualified to do business in Massachusetts;

- Do not conduct business in Massachusetts;

- Do not advertise or solicit business in Massachusetts;

- Have not authorized any person or entity to do business in Massachusetts on their behalf;

- Have not established any channels for customer service, or for providing regular advice to customers, in Massachusetts;

- Have not authorized any individual or corporation to accept service of process in Massachusetts on its behalf;

- Do not conduct any activities in Massachusetts from which they derive any revenue;

- Do not have a bank account in Massachusetts;

- Do not maintain any corporate books or records in Massachusetts;

- Do not incur any obligation to file tax returns or pay taxes, and does not file tax returns or pay taxes in Massachusetts; and

- Have not designated, and are not required to designate, an individual or corporation as their agent under Massachusetts law.

(Tait Aff. ¶ 4; Copeland Aff. ¶ 4.)[1]

Accordingly, Intier Closures and Intier Seating did not manufacture, sell, or distribute any component of the door latch in the Ford vehicles. Even if they did, the complete absence of contacts with Massachusetts prevents Plaintiffs' efforts to exercise jurisdiction over Intier Closures and Intier Seating in this forum.

## III.
## Intier Closures and Intier Seating Are Not Subject to Personal Jurisdiction

A.      *Plaintiffs Bear the Burden of Satisfying Both Prongs of Massachusetts's Personal Jurisdiction Test.*

A claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry:   "(1) whether the plaintiff has demonstrated that the assertion of jurisdiction is

---

[1]    Intier Seating does manufacture seats. However, Intier Seating manufactures and sells the seats outside of Massachusetts. Moreover, the seats are not at issue in this lawsuit.

authorized by statute, and, if authorized, (2) whether such assertion comports with the restraints imposed by the Due Process Clause of the United States Constitution." *Comer v. Comer*, 295 F. Supp. 2d 201, 206 (D. Mass. 2003); *see also Moldflow Corp. v. C. Simcon, Inc.*, 296 F. Supp. 2d 34, 39 (D. Mass. 2003); *Noonan v. Winston Co.*, 902 F. Supp. 298, 305, 306 (D. Mass. 1995), *aff'd*, 135 F.3d 85 (1st Cir. 1998); *Stanton v. AM General Corp.*, 50 Mass.App.Ct. 116, 117 (2000); *Commonwealth v. SeKap S.A. Greek Cooperative Cigarette Mfg. Co.*, No. 0105892, 2004 WL 1588210, at *2 (Mass. Super. Apr. 13, 2004).[2] "Only when both questions are answered affirmatively can the court properly exercise jurisdiction." *Greineder v. Drs. Foster & Smith, Inc.*, No. 95931A, 1997 WL 1229244, at *2 (Mass. Super. Nov. 25, 1997) (citation omitted); *see also Boit v. Gar-Tec Prod., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). "Thus, a court cannot find jurisdiction 'which is constitutionally unacceptable, even though the fact pattern asserted in support of jurisdiction apparently satisfies the statute's literal requirements.'" *SeKap*, 2004 WL 1588210, at *2; *see also Callahan v. Harvest Board Int'l, Inc.*, 138 F. Supp. 2d 147, 158 (D. Mass. 2001).

"It is the plaintiff's burden to establish that the forum court has jurisdiction over the person of the sued defendant." *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 85 (1st Cir. 1997); *see also Fern*, 55 Mass.App.Ct. at 579. "[I]n order to stave off defeat, [Plaintiffs] must make the showing as to every fact required to satisfy both the forum's long-arm statute and the due process clause of the Constitution." *Rodriguez*, 115 F.3d at 84. In doing so, the Plaintiffs "must go beyond the pleadings and make affirmative proof." *Boit*, 967 F.3d at 675. The

---

[2] Some Massachusetts courts have suggested that the state's long-arm statute extends to the full limits of due process, eliminating the need for the first of the two-pronged inquiry. *See Fern v. Immergut*, 55 Mass.App.Ct. 577, 584 (2002). Other courts continue to examine both prongs. *See Comer*, 95 F. Supp. 2d at 206. The apparent disagreement is irrelevant, however, because the exertion of jurisdiction over Intier is improper under both prongs.

undeniable facts in this case demonstrate that Plaintiffs have not, and cannot, satisfy their burden on either of the two prongs necessary to assert personal jurisdiction over Intier Closures or Intier Seating.

**B.** ***Massachusetts's Long-Arm Statute Does NOT Authorize the Assertion of Jurisdiction Over Intier Closures and Intier Seating.***

        1.      **Intier Closures and Intier Seating Do Not Transact Business in Massachusetts.**

First, Plaintiffs attempt to use section 3(a) of Massachusetts's long-arm statute to find statutory authorization for asserting jurisdiction over Intier Closures and Intier Seating by incorrectly alleging that they "transacted business in this state." (Compl. ¶ 19.) *See* MASS. GEN. LAWS ch. 223A, § 3(a). Under section 3(a), jurisdiction exists "if the defendant either directly or through an agent transacted any business in the Commonwealth, and if the alleged cause of action arose from such transaction of business." MASS. GEN. LAWS ch. 223A, § 3(a); *see also Barthel v. One Cmty., Inc.*, 233 F. Supp. 2d 125, 127-128 (D. Mass. 2002); *Fern*, 55 Mass. App. Ct. at 581-82. To establish that a claim "arises from" the transaction of business, courts look at whether "'the claim was made possible by, or lies in the wake of, the transaction of business in the forum State.'" *Boston v. Smith & Wesson Corp.*, No. 99-02590, 2000 WL 34018326, at *9 (Mass. Super. Ct. Nov. 21, 2000) (citations omitted); *see also SeKap*, 2004 WL 1588210, at *2. "This test ensures that personal jurisdiction extends only to individuals who have deliberately, rather than fortuitously had contacts with the forum state." *Barthel*, 233 F. Supp. 2d at 128.

In *SeKap*, the defendant was a non-resident cigarette manufacturer that sold its cigarettes to a Greek distributor. *SeKap*, 2004 WL 1588210, at *1. The defendant had no control or interest in the destination of the cigarettes. *Id.* The plaintiff alleged that the defendant "transacted business" in Massachusetts because 2.6 million of the cigarettes manufactured by the defendant were purchased by consumers in Massachusetts. *Id.*

Although the cigarettes ultimately ended up in Massachusetts, the court found that there was no evidence that the defendant sold the cigarettes directly to a Massachusetts distributor. *Id.* at *2. The court also noted that, even if the defendant did sell the cigarettes directly to a Massachusetts distributor, this too would be insufficient to establish that the defendant purposely availed itself of the privilege of transacting business in the Commonwealth. *Id.* Accordingly, the court held that the defendant did not transact business in Massachusetts. *Id.*; *see also Droukas v. Divers Training Academy*, 375 Mass. 149, 153 (1978) (holding that defendant's contacts were insufficient to establish a business transaction in Massachusetts when the defendant's principal place of business was in Florida, it maintained no office in Massachusetts, it did not own any property in Massachusetts, neither it nor its agents conducted business within Massachusetts, and the only contacts with Massachusetts were the placement of an advertisement in a Massachusetts publication, a telephone call from the plaintiff in Massachusetts and the sending of correspondence to Massachusetts).

Like the defendant in *SeKap*, Intier Closures and Intier Seating have not purposely availed themselves of the privilege of transacting business in Massachusetts. Intier Closures and Intier Seating are not registered to do business in Massachusetts, have no office, telephone listing, mailing address, bank account, or employees in Massachusetts, do not own, rent, or use property in Massachusetts, do not solicit business nor advertise in Massachusetts, do not manufacture or sell products in Massachusetts, and do not distribute or deliver products in Massachusetts. (Tait Aff. ¶ 4; Copeland Aff. ¶ 4.) Accordingly, section 3(a) of Massachusetts's long-arm statute does not authorize the assertion of jurisdiction over Intier Closures or Intier Seating. *See SeKap*, 2004 WL 1588210, at *2.

**2.    Intier Closures and Intier Seating Did Not Cause a Tortious Injury by an Act or Omission in Massachusetts.**

Plaintiffs also claim that 3(c) of Massachusetts's long-arm statute authorizes jurisdiction over Intier Closures or Intier Seating. (Compl. ¶ 19.) *See* MASS. GEN. LAWS ch. 223A, § 3(c).    Section (3)(c) of the long-arm statute requires Plaintiffs to show that Intier Closures and Intier Seating performed an act or omission *in* Massachusetts. *See Noonan,* 902 F. Supp. at 306 ("[S]ection 3(c) requires a well-pleaded allegation that a defendant did some act *in* the Commonwealth that caused the plaintiff harm." (emphasis in original)); *Welford v. Nobrega,* 411 Mass. 798, 805-806 (1992) (holding that an action against an out-of-state bank did not meet the requirements of the long-arm statute because "[t]here is nothing in the record to show any acts or omissions by the bank allegedly having taken place in Massachusetts").

Plaintiffs have not alleged, nor is it the case, that Intier Closures or Intier Seating have any employees, agents, representatives, or property in Massachusetts or that they manufacture any products in Massachusetts. (Tait Aff. ¶ 4; Copeland Aff. ¶ 4.)    Thus, Intier Closures and Intier Seating did not and could not have performed an act or omission in Massachusetts.    The torts alleged by Plaintiffs' complaint relate to allegedly "defective outside door handle systems" on vehicles "in the Commonwealth of Massachusetts."    (Compl. ¶ 1.) Intier Closures and Intier Seating do not manufacture, distribute, or sell door handle systems at all and, therefore, had no connection with the presence of such latches in Massachusetts. (Copeland Aff. ¶ 3.)    Accordingly, there can be no dispute that section 3(c) of Massachusetts's long-arm statute does not authorize the assertion of jurisdiction over Intier Closures or Intier Seating.

3.    **Intier Closures and Intier Seating Did Not Regularly Do or Solicit Business, Engage in Any Other Persistent Course of Conduct, or Derive Substantial Revenue From Goods Used or Consumed or Services Rendered in Massachusetts.**

Finally, Plaintiffs claim that section 3(d) of Massachusetts's long-arm statute authorizes the exercise of jurisdiction over Intier Closures and Intier Seating. (Compl. ¶ 19.) The first element under section 3(d) requires Plaintiffs to show that Intier Closures's and Intier Seating's act or omission caused a tortious injury in Massachusetts. *See* MASS. GEN. LAWS ch. 223A, § 3(d). The second element under 3(d) requires Intier Closures and Intier Seating to have additional contacts with Massachusetts. Specifically, this second prong requires Plaintiffs to show that Intier Closures and Intier Seating either (1) "regularly [do] or solicit[] business" in Massachusetts, (2) "engage[] in any other persistent course of conduct" in Massachusetts, or (3) "derive[] substantial revenue from goods used or consumed or services rendered, in [Massachusetts]." *Id.* For the reasons set forth below, Plaintiffs cannot demonstrate that this prong of section 3(d) warrants the exercise of personal jurisdiction over Intier Closures or Intier Seating.

Intier Closures and Intier Seating do not have an office, address, telephone number, employees, agents, or other physical presence in Massachusetts (Tait Aff. ¶ 4; Copeland Aff. ¶ 4), and thus cannot conduct business in Massachusetts. Neither Defendant advertises, sells, delivers, or distributes goods or services in Massachusetts (*id.*) and thus cannot be said to solicit business in Massachusetts, to engage in any persistent course of conduct in Massachusetts, or to derive substantial revenue from goods used or consumed in Massachusetts. Even when a foreign defendant has *sold* goods that eventually find their way into Massachusetts, Massachusetts courts find such a defendant to be "too far removed from the transaction that ultimately brought its [goods] to Massachusetts to be considered to have transacted any business

in the Commonwealth." *SeKap*, 2004 WL 1588210, at *3 (holding that defendant did not

conduct business in Massachusetts or derive substantial revenue from sales in Massachusetts

when the defendant derived revenue only from sales of its cigarettes to its non-Massachusetts

distributor). *A fortiori*, because Intier Closures and Intier Seating did not even manufacture, sell,

or distribute the goods at issue in this case, Plaintiffs cannot satisfy the second prong of section

3(d). Therefore, section 3(d) does not authorize the exercise of jurisdiction.

**C.    *The Exercise of Personal Jurisdiction Over Intier Closures and Intier Seating in This Forum Would Violate Due Process.***

Even if Massachusetts's long-arm statute authorized the exercise of jurisdiction

over Intier Closures and Intier Seating, which it does not, the exercise of that jurisdiction would

be inconsistent with the basic due process requirements mandated by the United States

Constitution. Specifically, the "Due Process Clause of the Fourteenth Amendment permits a

state to exercise jurisdiction over a non-resident defendant only when the defendant has

sufficient minimum contacts with the forum. In analyzing minimum contacts, courts have

recognized that jurisdiction can be either specific or general." *Callahan*, 138 F. Supp. 2d at 158

(internal quotations and citations omitted). "General jurisdiction exists when the litigation is not

directly founded on the defendant's forum-based contacts, but the defendant has nevertheless

engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Id.*

Specific personal jurisdiction, by contrast, is narrower in scope and may only be relied upon

"where the cause of action arises directly out of, or relates, to the defendant's forum-based

contacts." *Noonan*, 902 F. Supp. at 302; *see also Callahan*, 138 F. Supp. 2d at 158; *Snyder v.

ADS Aviation Maint.*, No. 9700968, 2000 WL 145110, at *2 (Mass. Super. Jan. 10, 2000). Here,

Intier Closures and Intier Seating lack the sufficient minimum contacts with Massachusetts that

are required before it is subject to jurisdiction in this forum.

1.    **Intier Closures and Intier Seating Do NOT Have Continuous and Systematic Contacts with Massachusetts that Would Support the Exercise of General Jurisdiction in this Forum.**

A non-resident defendant is subject to general jurisdiction in a forum only upon a showing that the defendant's "contacts are 'sufficiently continuous and systematic' that the assertion of jurisdiction is 'reasonable and just.'" *United States v. Swiss Am. Bank, Ltd.*, 116 F. Supp. 2d 217, 221 (D. Mass. 2000), *aff'd*, 274 F.3d 610 (1st Cir. 2001); *see also Callahan*, 138 F. Supp. 2d at 158. "The standard for evaluating whether contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions." *Noonan v. Winston*, 135 F.3d 85, 93 (1st Cir. 1998) (internal quotations omitted); *see also Helicopteros Nacionales de Columbia, A.A. v. Hall*, 466 U.S. 408, 416 (1984).  For example, in *Helicopteros*, the plaintiffs sued a nonresident in Texas for the wrongful deaths of four persons in a helicopter crash. *Helicopteros*, 446 U.S. at 409-10.  The Supreme Court held that there was no basis for the Texas courts to exercise general jurisdiction over the nonresident defendant, even though:  (1) the nonresident, over a seven-year period, had purchased more than $4 million worth of helicopters and spare parts in Texas, including the helicopter that had crashed; (2) the nonresident had sent management, maintenance personnel, and pilots, including the pilot whose alleged negligence caused the helicopter crash, to Texas for training; and (3) the contract that was being performed when the accident occurred had been negotiated in Texas.

Intier Closures and Intier Seating have far fewer, if any, purposeful contacts with Massachusetts than those the Supreme Court found insufficient to authorize general jurisdiction over the defendant in *Helicopteros*.  As detailed above, neither Intier Closures nor Intier Seating engage in any activities in Massachusetts that might result in contacts sufficient for general personal jurisdiction to attach.  *See* p. 4 *supra* (detailing the absence of contacts with Massachusetts); *see also* Tait Aff. ¶ 4; Copeland Aff. ¶ 4.

Consistent with *Helicopteros*, Massachusetts courts routinely find a lack of personal jurisdiction over defendants that have considerably more contact with the forum than does Intier Closures or Intier Seating. *See United Elec., Radio & Machine Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992) (finding defendants' limited contacts with Massachusetts not enough to establish general jurisdiction because the defendants' sole connection to Massachusetts concerned one Massachusetts company); *Seymour v. Parke, Davis & Co.*, 423 F.2d 584 (1st Cir. 1970) (ruling that the defendants had insufficient contacts with Massachusetts to warrant general jurisdiction even though defendants employed salesmen who transacted business in Massachusetts, disseminated product information in Massachusetts, and took orders in Massachusetts); *Callahan*, 138 F. Supp. 2d at 158-59 (holding that the defendants' limited contacts did not give rise to general jurisdiction because the defendants did not solicit business from Massachusetts residents, did not own property in Massachusetts, and did not generate income from Massachusetts). Accordingly, Intier Closures and Intier Seating are not subject to general jurisdiction in this forum.

> 2.    **Intier Closures and Intier Seating Do NOT Have Sufficient Minimum Contacts with Massachusetts that Would Support the Exercise of Specific Jurisdiction in this Forum.**

"In determining whether sufficient minimum contacts exist for specific jurisdiction, the court must ask: (1) whether the claim at issue arises out of or is related to the defendants' conduct within the forum state; (2) whether the defendants' contacts with the forum state represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of the state's laws and making the defendants' involuntary presence before the state's courts foreseeable; and (3) whether it is fair and reasonable to compel the defendants to defend themselves in Massachusetts. An affirmative finding on each of the three elements of the test is required to support a finding of jurisdiction."

*Callahan*, 138 F.3d at 159 (citations omitted); *Greineder*, 1997 WL 1229244, at *3. Plaintiffs apparently attempt to satisfy each of the specific jurisdiction elements by employing the stream of commerce theory of specific jurisdiction.

The First Circuit has adopted the "stream of commerce *plus*" theory, as it has become known, from Justice O'Connor's plurality opinion in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987). *Turpin v. Seiki Co.*, 56 F. Supp. 2d 121, 126 (D. Mass. 1999) ("The First Circuit has expressly adopted the *Asahi* plurality's view as the governing law.") (citing *Rodriguez*, 115 F.3d at 85). In *Asahi*, Justice O'Connor, writing for the Supreme Court plurality, explained the limits on the stream of commerce theory of jurisdiction: "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market . . .. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112 (1987) (plurality op.).

Accordingly, the First Circuit and Massachusetts state courts have agreed that the mere placement of a product into the stream of commerce with "knowledge that a product would be sold in [Massachusetts]" is insufficient to establish that a defendant "purposefully availed" itself of doing business in Massachusetts. *Rodriguez*, 115 F.3d at 85. In *Rodriguez*, the First Circuit held that a court in Puerto Rico could not exercise jurisdiction over a California tire rim manufacturer whose tire rims were sold to another manufacturer in California and incorporated into a "sand track tire" which was eventually sold by the other manufacturer in Puerto Rico. *Id.* at 84-85. The court reasoned that the tire rim manufacturer's mere placement of a rim into the

stream of interstate commerce, by selling it to the other manufacturer, was not sufficient to satisfy the minimum contacts requirement. *Id.* at 85. Moreover:

> [e]ven assuming that [the tire rim manufacturer] had specific knowledge that the stream of commerce would move its tire rims into Puerto Rico—and there is neither evidence nor allegation to that effect—this awareness alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts.

*Id.*; *see also Boit*, 967 F.2d at 683 ("Accordingly, because 'mere awareness' that a product may end up in the forum state does not constitute 'purposeful availment,' the district court could not have constitutionally exercised personal jurisdiction over [the defendant]."); *Sullivan v. Leaseway Trans. Corp.*, Civ. A. No. 86-1389-N, 1987 WL 30966, at *7 (D. Mass. Dec. 30, 1987); *Island Oasis Frozen Cocktail Co. Inc. v. Florida Bulk Sales, Inc.*, No. CA 03-1696, 2004 WL 557300, at *1-2 (Mass. Super. Mar. 10, 2004); *Ross*, 2003 WL 21781556, at *5 ("[E]ven though [defendant] had specific knowledge the stream of commerce would move its pans into Massachusetts, this alone is not enough" to establish purposeful availment.); *Greineder*, 1997 WL 1229244, at *3-4.

As discussed above, Intier Closures and Intier Seating did not manufacture, distribute, or sell the door latches and, therefore, did not place them into the stream of commerce at all, let alone purposefully. (Tait Aff. ¶ 3; Copeland Aff. ¶ 3.) As a result, Plaintiffs' stream of commerce theory of jurisdiction fails factually. Even if Plaintiffs could somehow establish that Intier Closures or Intier Seating placed allegedly defective door latch components into the "stream of commerce," which they cannot, Plaintiffs' stream of commerce theory fails as a matter of law because placing a product into the stream of commerce with knowledge that the product would be sold in Massachusetts is constitutionally insufficient to subject them to personal jurisdiction in this forum. *See Rodriguez*, 115 F.3d at 85; *Boit*, 967 F.2d at 682;

*Sullivan,* 1987 WL 30966, at \*7.; *Island Oasis Frozen Cocktail,* 2004 WL 557300, at \*1-2; *Ross,* 2003 WL 21781556, at \*5; *Greineder,* 1997 WL 1229244, at \*3-4.

Therefore, the stream of commerce theory does not authorize the exercise of specific jurisdiction over Intier Closures and Intier Seating in this matter. Moreover, the assertion of jurisdiction over Intier Closures and Intier Seating offends "traditional notions of fair play and substantial justice." *Asahi,* 480 U.S. at 113 (citations omitted). It would be burdensome to require Intier Closures and Intier Seating to defend themselves in Massachusetts. None of the entities or their witnesses are located in Massachusetts and will be required to travel to Massachusetts to defend themselves. For all these reasons, Intier Closures and Intier Seating are not subject to specific personal jurisdiction.

## IV.
## Conclusion

Because Massachusetts's long-arm statute does not authorize the exercise of personal jurisdiction over Intier Closures or Intier Seating in this forum, and because the exercise of jurisdiction over them in this forum would be unconstitutional, Intier Closures and Intier Seating respectfully ask the Court to enter findings that they lack sufficient contacts with Massachusetts to subject them to personal jurisdiction in this forum, to dismiss Intier Closures and Intier Seating from this lawsuit with prejudice in all respects, and to grant and award all other and further relief, both in law and in equity, as the Court may deem just and proper.

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: _James Messenger/alk_

James L. Messenger BBO #547236
100 Federal Street
Boston, Massachusetts  02110
Telephone:  (617) 772-8300
Facsimile:  (617) 772-8333

OF COUNSEL:
John B. Strasburger
Jason W. Billeck
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Attorneys for Intier Automotive Closures of America Inc.
and Intier Automotive Seating of America Inc.

## CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 7.1(A)(2)

On June 13, 2005, Andrew Swartz, counsel for Intier, contacted Plaintiffs' counsel in a good faith attempt to narrow or resolve the issue regarding Intier Closures and Intier Seating's Motion to Dismiss. The parties were unable to resolve or narrow the issues relating to this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendants Intier Automotive Closures of America, Inc. and Intier Automotive Seating of America, Inc.'s Memorandum of Law in Support of Its Rule 12(b)(2) was served upon the parties on June 13, 2005 by First Class Mail and Federal Express, addressed to the following:

David C. Strouss
Kristin Marquis Fritz
THORNTON & NAUMES
100 Summer Street—30th Floor
Boston, MA 02110
*Attorneys for Plaintiffs*

Frederick Jekel
William Narwold
Suzanne Lafleur Klok
MOTLEY RICE LLP
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
*Attorneys for Plaintiffs*

Joseph S. Sano
Walter B. Prince
Daniel S. Tarlow
PRINCE, LOBEL, GLOVSKY & TYE, LLP
585 Commercial Street
Boston, MA 02109
*Attorneys for Ford Motor Company,*
*Ford Motor Company of Canada, Ltd.*

John H. Beisner
John F. Niblock
Mel Andrew Schwing
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., Suite 1000
Washington, D.C. 20006-4001
*Attorneys for Ford Motor Company,*
*Ford Motor Company of Canada, Ltd*

Terri Steinhaus Reiskin
HOGAN & HARTSON
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
*Attorneys for Magna Donnelly Corporation*

Danielle Simon