# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joseph Iannacchino, ) | |
| Victor Marchese, and ) | |
| Soledad Berrios, ) | CIVIL ACTION NO: |
| Individually and as ) | 1:05-cv-11141-RCL |
|    Representatives of a Proposed Class, ) | |
|        Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Ford Motor Company, ) | |
| Ford Motor Company of Canada, Ltd., ) | |
| Magna Donnelly Corporation, Individually ) | |
|   And d/b/a Donnelly Corp. as and successor ) | |
|   By merger to Donnelly Corp., ) | |
| Intier Automotive Seating of America, Inc., ) | |
|   Individually and d/b/a Dortec Industries, ) | |
| And ) | |
| Intier Automotive Closures of America, Inc.,) | |
|   Individually and d/b/a Dortec Industries, ) | |
| ) | |
|        Defendants. ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS INTIER AUTOMOTIVE CLOSURES OF AMERICA, INC.'S AND INTIER AUTOMOTIVE SEATING OF AMERICA INC.'S RULE 12(b)(2) MOTION TO DISMISS AND REQUEST FOR ORAL ARGUMENT

Now come the Plaintiffs who hereby Oppose Defendants Intier Automotive Closures of

America, Inc.'s and Intier Automotive Seating of America, Inc.'s Rule 12(b)(2) Motion to Dismiss.[1]

### I.    Introduction

Defendants Intier Automotive Closures and Intier Automotive Seating, hereinafter jointly

"Intier," have moved to dismiss the Plaintiffs' claims under Fed. R. Civ. P 12(b)(2), asserting that

---

[1] Before it addresses the issues in this Opposition -- namely whether it may exercise personal jurisdiction over Intier Automotive Closures and Intier Automotive Seating -- this Court must determine whether it has subject matter jurisdiction over these claims. This case was filed in Massachusetts state court and was removed to this Court. Plaintiffs, for reasons to be stated in Plaintiffs' Motion to Remand to be filed on July 1, intend to contend that this removal was improper and, as such, subject matter jurisdiction over this case does not exist. Accordingly, resolution of the subject matter jurisdiction question is a necessarily antecedent to resolution of the personal jurisdiction issue. Indeed, given their position on remand, Plaintiffs submit that this Court will not even have to wrestle with the personal jurisdiction issue.

this Court does not have personal jurisdiction over Intier. Intier claims they neither manufactured the defective door latches integrated into the Ford vehicles sold in Massachusetts, nor injected them into the stream of commerce. Defendants Memorandum of Law in Support of their Rule 12(b)(2) Motion to Dismiss, hereinafter "Def. Mem.," at pp. 1-2. In addition, Intier asserts that it did not conduct any business in Massachusetts nor engage in any systematic course of conduct. *Id.* These contentions are factually inaccurate and should be rejected.

This class action centers on causes of action arising under Mass. Gen. Laws c. 93A §§ 2, 9 and on breaches of various express and implied warranties. The acts that constitute these causes of action encompass the activities of Defendants in designing, manufacturing, installing, supplying, selling, and distributing defective outside door handle systems in model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition or model year 2000 Ford F150 Super Crew vehicles owned by Plaintiffs and members of the proposed Class in the Commonwealth of Massachusetts.

Intier is subject to personal jurisdiction as (1) the Massachusetts long arm statute authorizes the exercise of jurisdiction and (2) the exercise of such jurisdiction comports with due process. Plaintiffs assert that Intier manufactured and distributed certain components of the door latch systems and was responsible as the system integrator for Ford Motor Company for the D21 door latch assembly systems that do not comply with Federal Motor Vehicle Safety Standard ("FMVSS") 206. Upon information and belief, certain components that are installed in the D21 door latch assembly were bought from a supplier, Stoneridge, a Massachusetts corporation, and subsequently assembled by Intier into the D21 door latch assembly. These parts were then placed into the stream of commerce by Intier, and were then incorporated into Ford vehicles. Ford vehicles containing the defective door latches were then sold in Massachusetts to the named

Plaintiffs and members of the proposed class. In addition, Intier has engaged in other business conduct in Massachusetts including advertising its business and services. Importantly, Intier's Lead Director, Louis Lataif, is a resident of the forum where he undertakes the business of Intier's Board of Directors.

As discussed further below, as global manufacturers of automotive closure components that are incorporated in automobiles, Intier has sufficient minimum contacts with Massachusetts to assert general personal jurisdiction. Likewise, these contacts are sufficient to assert specific personal jurisdiction. In the alternative, if the court finds sufficient grounds to dismiss the complaint under Fed. R. Civ. P 12(b)(2), the Plaintiffs request that the court use its discretion to allow limited discovery on the issue of personal jurisdiction.

## II.    **Factual Background**

Intier admits that they are Delaware corporations with principal places of business in Michigan. Def. Memo at p. 4. However, Intier also asserts that they "have never manufactured, distributed, or sold any component of the door latches upon which plaintiffs base their claims," and that both, "do not manufacture, sell, or distribute any door latch component parts." Def. Memo at p. 2-3. The Defendants have also produced affidavits, claiming that Intier Closures "is solely an engineering firm," and that "Intier Closures and Intier Seating are both non-resident corporations that have no contact whatsoever with Massachusetts that would subject them to personal jurisdiction in this forum." "Tait Aff." at ¶ 4. The Defendants then conclude that this court cannot exercise personal jurisdiction over them. However, the Defendants' baseless assertions and disingenuous affidavits fundamentally differ from previous documents filed in other litigation in this Court, and from public information.

3

Before this Court Intier "admit[ed] that it is an automotive supplier engaged in the design, manufacture and supply of automotive closure systems, components and parts." *See,* Answer to the Amended Complaint, Counterclaims, and Demand for Jury Trial in *Stoneridge Control Devices v. Intier Auto. Closures,* CV No. 02-CV-10803, in the United States District Court for the District of Massachusetts, attached hereto as Exhibit A at ¶ 9. Specifically, Intier "admit[ed] that is has assembled Stoneridge's ADLA products together with other parts to create a door latch and power lock assembly, and that it has sold and still sells assemblies to Ford." *Id.* at ¶ 13. Intier also indicated that it "is a 'corporation' and engages in 'trade or commerce' within the meaning of Mass Gen. Laws. c. 93A, § 1." *Id.* at ¶ 66. That is, in these filings, Intier admitted that it purchased constituent parts for its door latch assemblies from Massachusetts, constructed those assemblies in Michigan, and then sold those assemblies to Ford, who incorporated them in vehicles sold in Massachusetts.

Moreover, in the *Stoneridge* action, Intier Closures directly and purposefully availed itself of the laws of the forum by filing a counterclaim against Stoneridge under Mass. Gen. Laws c. 93A, also the basis of Plaintiffs' claims in this litigation. Exhibit A at p. 29. Intier's answer raised counterclaims for breach of contract, which clearly demonstrates that Intier has in fact contracted to (and actually has) transact business in Massachusetts. *Id.* Therefore, Intier clearly has contacts sufficient for this Court to find jurisdiction. Furthermore, when that litigation was terminated by a motion to dismiss, Intier signed a document indicating that "this court has jurisdiction over Stoneridge's claims for Violation of and Unlawful Use of Trade Secrets and Proprietary Information and Violation of Mass Gen. Laws Chapter 93A *and over the parties hereto.*" Agreed Motion To Dismiss Certain Stoneridge Claims attached hereto as Exhibit B at ¶ (1) (emphasis added). These

4

statements and the underlying conduct supports this Court's exercise of both specific and general personal jurisdiction over Intier.

Intier also has other continuous contacts with the forum. Upon information and belief, Intier regularly conducts business in Massachusetts by shipping aftermarket replacement parts to Ford Authorized Service Dealers in Massachusetts to replace and/or repair defective or malfunctioning door latch system hardware in vehicles brought in for service at dealers in Massachusetts. In addition, Intier advertises in several magazines, including *Automotive Engineering* and *Automotive Industries*. Attached hereto as Exhibits C and D, respectively. Both of these magazines are circulated and sold throughout Massachusetts. *See* Publication Circulation Statements for the above, attached hereto as Exhibits E and F, respectively.

Additionally, Louis Lataif, Intier Automotive's Lead Director since March 25, 2003, and board member since August 9, 2001, is a resident of Massachusetts who regularly conducts the business of Intier's Board of Directors from this forum.[2] As such, Intier should be deemed to have contacts with Massachusetts based on Mr. Lataif's conducting board business from the forum. Lastly, at all relevant times, Intier derived substantial economic benefit from the sale of its parts to Ford, which incorporated Intier's door latches into its finished vehicles and sold those vehicles in Massachusetts. As a result of the foregoing, and for reasons discussed more fully below, this Court should deny Intier's Motion to Dismiss.

---

[2]*See* excerpts from, Form 20-F, Annual Report for fiscal year ending December 31, 2003, filed with the US Securities and Exchange Commission, in which Mr. Lataif's residence is listed as Massachusetts. Exhibit G. *See also*, Intier's "Annual Information Form 2005," noting that one of the company's directors is "LOUIS E. LATAIF (A)(B), Massachusetts, U.S.A., Director since August 9, 2001 and Lead Director since March 25, 2003..." and that "Mr. Lataif, 66, has served as Dean of the School of Management of Boston University for the past fourteen years. Prior to that time, he was employed at Ford Motor Company for approximately 27 years in various senior operational and sales and marketing capacities...." Exhibit H.

## III.    Argument

### A.    Intier Is Subject To Personal Jurisdiction In Massachusetts

In the interest of fairness, Intier should not now be allowed to deny that this Court has jurisdiction over it when it has previously consented to, and, more importantly, directly availed itself of, the jurisdiction of this Court in similar litigation. Furthermore, Intier has and purposefully availed itself of the benefits and protections of the laws of Massachusetts through a continuous course of dealing and business transactions within the Commonwealth. As a result of these transactions, Intier should be aware of the possibility that it could be hailed into court in Massachusetts. Therefore, this Court should find that it has jurisdiction over Intier and Intier's Motion to Dismiss based on a lack of personal jurisdiction should be denied.

### 1.    Intier Has Previously Consented To And Availed Itself Of Massachusetts' Laws.

The requirement of personal jurisdiction represents a personal right and therefore can be waived or for various reasons a defendant may be estopped from raising the issue. *Insurance Corp. of Ireland, LTD. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S.Ct. 2099, 2105 (1982). It is well settled that a "defendant may manifest consent to a court's in personam jurisdiction in any number of ways, from failure to seasonably interpose a jurisdictional defense ... to submission implied from conduct." *General Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991). Importantly, "a party's consent to a court's jurisdiction may take place prior to the suit's institution." *Id.* at 22.

While in *this* action Intier has asserted its objection to personal jurisdiction, in prior litigation in this very Court, dealing with the very same door latch components that were inserted in the Ford vehicles that form the basis of this action, Intier not only failed to contest personal jurisdiction, but in fact consented to jurisdiction and availed itself to the laws of this forum. By

6

unconditionally raising counterclaims for misrepresentation, unjust enrichment, breach of contract, and violation of Mass. Gen. Laws c. 93A, Intier purposefully and unequivocally availed itself of the laws of this forum. *See*, Exhibit A. Moreover, counsel for Intier signed a document indicating that the District of Massachusetts "has jurisdiction over Stoneridge's claims for Violation of and Unlawful Use of Trade Secrets and Proprietary Information and Violation of Mass. Gen. Laws Chapter 93A *and over the parties hereto*." Exhibit B, ¶ (1) (emphasis added).

Ordinarily, courts "should not treat counterclaims – at least compulsory counterclaims – as waivers of jurisdictional objections." *General Contracting*, 940 F.2d at 24. However, this principle is conditioned on the premise that "the counterclaim is put forward as a conditional position and will not be independently pressed if the primary action is dismissed for lack of personal jurisdiction." *Id.* at 25. Intier consented to, and further invoked, the jurisdiction of the District of Massachusetts related to the manufacturer of door latch materials in Massachusetts. However, Intier protests to the jurisdiction of this same Court where the present claims are based on the completed door latch assemblies in vehicles sold in Massachusetts. This position is inconsistent, and Intier should be estopped, in the interest of fairness, from now asserting a lack of jurisdiction. Giving effect to Intier's tortured interpretation of the Massachusetts long arm statute would allow Intier to assert claims under Massachusetts law when it saw fit, but would insulate it from any liability under those same laws. Such an interpretation would "produce an unjust asymmetry." *Id.*

## 2. Plaintiffs Have Satisfied Both Prongs of Massachusetts' Personal Jurisdiction Test.

In Massachusetts, to assert personal jurisdiction over a non-resident defendant, the court must inquire whether "(1) the plaintiff has demonstrated that the assertion of jurisdiction is authorized by statute, and, if authorized, (2) whether such jurisdiction comports with the restraints imposed by the Due Process Clause of the United States Constitution." *Comer v. Comer,* 295

F.Supp.2d 201, 206 (D.Mass. 2003).   Moreover, "[i]t is the plaintiff's burden to establish that the

forum court has jurisdiction over the person of the sued defendant." *Rodriguez v. Fullerton Tires

Corp.*, 115 F.3d 81, 85 (1st Cir. 1997).   To establish jurisdiction, the Plaintiffs "must go beyond the

pleadings and make affirmative proof." *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (C.A.1,

1992).   As will be explained below, Plaintiffs satisfy both the long arm statute and the due process

clause of the Constitution, such that the exercise of personal jurisdiction over Intier is appropriate

and sound.

**3.      The Massachusetts Long-Arm Statute Authorizes the Assertion of Jurisdiction
        Over Intier.**

**a.      Intier Transacts Business In Massachusetts.**

First, jurisdiction is appropriate under the Massachusetts long-arm statute, Mass. Gen.

Laws ch. 223A, § 3(a).  Section 3(a) provides that "a court may exercise personal jurisdiction over a

person, who acts directly or by an agent, as to a cause of action in law or equity arising from the

person's transacting any business in this commonwealth."  Mass. Gen. Laws ch. 223A, § 3(a).

Under Massachusetts law, the "transacting business" test of the state's long-arm statute is designed to

identify deliberate, as distinguished from fortuitous, contacts with forum by nonresident party, with

view to determining whether possible need to invoke the benefits and protections of the forum's laws

was reasonably foreseeable. *Lyle Richards Int'l., Ltd. v. Ashworth, Inc.,* 132 F.3d 111 (1st Cir.

1997).   The "arising from" clause in state's long-arm statute, which permits jurisdiction over

persons arising from the transaction of business in state, is to be generously construed in favor of

asserting personal jurisdiction, by applying "but for" causation test which asks whether defendant's

contacts with state constitute first step in train of events that resulted in injury.  *Id.*  This means that

"a claim arises from a defendant's transaction of business in the forum State if the claim was made

possible by, or lies in the wake of, the transaction of business in the forum State." *National Med.*

8

*Care, Inc. dba v. Home Med. of Am., Inc,.* 2002 WL 31187683, \*3 (Mass.Super. 2002).

Furthermore, section 3(a) does not require that the business be transacted within the physical bounds of Massachusetts. *JMTR Enters., LLC v. Duchin,* 42 F.Supp.2d 87, 96 (D.Mass.1999). The mere transmission of facts or information into Massachusetts via telephone or mail would constitute evidence of a jurisdictional contact directed into the forum state for purposes of Massachusetts long-arm statute and due process clause. *Id.* That is, "even just a few acts on a defendant's part can often suffice to satisfy the long-arm statute's threshold for transacting business. *Workgroup Technology Corp. v. MGM Grand Hotel,* LLC 246 F.Supp.2d 102, 110 (D.Mass. 2003)

While Intier may not maintain an office or own property within Massachusetts, it has regularly conducted business in the Commonwealth by purchasing constituent parts of its door latch systems, parts of the overall components alleged to be defective and at issue in this litigation, from a Massachusetts corporation, Stoneridge Control Devices.  In addition, Intier's Director Louis Lataif resides and has an office in Massachusetts where he conducts the business of Intier's Board of Directors. Also, Intier advertises its business and services in magazines that are circulated and sold in Massachusetts. This satisfies the requirements of § 3(a).

In its Memorandum in Support of Motion to Dismiss, Intier asserts that "Intier Closures and Intier Seating do not manufacture, distribute, or sell door handle systems at all, and therefore, had no connection with presence of such latches in Massachusetts." Def. Memo at p. 9.  Contrary to its recent assertions in this very Court, Intier has previously "admit[ed] that it has assembled Stoneridge's ADLA products together with other parts to create a door latch and power lock assembly that it has sold and still sells to Ford." Exhibit A at ¶ 14.  This admission is doubly damning, as it not only reveals that Intier assembled and sold the door latches at issue in this litigation to Ford, which Intier has heretofore disingenuously denied, but also indicates that Intier

acquired component parts for these door latch assemblies via commercial transactions with
Stoneridge, a Massachusetts corporation. It is Plaintiffs' belief that the ADLA parts Intier purchased
from Stoneridge were then incorporated into the completed door latch assemblies which are at issue
in this litigation. As a result, the act of purchasing such door latch parts in Massachusetts, which
were subsequently incorporated into the offending Ford vehicles and shipped back to Massachusetts,
should be construed as an act or omission within the Commonwealth sufficient to form the basis of
this Court's jurisdiction over Intier.

Intier relies on *Commonwealth v. SeKap S.A. Greek Cooperative Cigarrette Mfg. Co.,* 2004
WL 1589210, (Mass. Super. Apr. 13, 2004) to establish that Intier did not transact business in
Massachusetts. However, its reliance on *SeKap* is misplaced. In *SeKap*, "the Commonwealth's only
allegation that SeKap transacted business in the Commonwealth [was] the fact that 2.6 million of
SeKap's cigarettes eventually were purchased by Massachusetts consumers." 2004 WL 1589210 at
\*2. Indeed, in that matter, there were "no other allegations of any other contacts with the
Commonwealth, and there [were] no allegations that SeKap 'purposefully availed itself of the
privilege of conducting business within the [Commonwealth], thus invoking the benefits and
protections of its laws." *Id.*

Conversely, in the instant matter, there is ample evidence of both Intier's contacts with the
forum and its purposeful availment of the protection of the laws of Massachusetts. Intier Closures
supplied Ford with defective door latches, the constituent parts of which they purchased in
Massachusetts. Intier has engaged in placing the defective parts into the stream of commerce, such
that the door latches arrived in Massachusetts in a defective condition. In 1993 Intier and Kelsey-
Hayes began "discussing the possibility of Kelsey Hayes designing ADLA parts for Intier,"
specifically "D21 adjunct actuators." Exhibit A. In 1995, Stoneridge acquired Kelsey-Hayes. In

1996, Intier Closures entered into purchasing agreement to acquire ADLA door latch parts from
Stoneridge, a corporation with offices in Boston and Canton, Massachusetts. *Id.*, ¶ 25. Intier
admitted that it met with Stoneridge on July 17, 1997 and entered into an agreement "governing
ADLA sales from Stoneridge to Intier" *Id.* at ¶ 28. Intier also admitted that it sent an e-mail to
Pollack, Stoneridge's subsidiary, which stated that "Ford has awarded the U222/228 programs to
Dortec. The U222/228 systems include the D21 latch with adjunct actuator. Pollak has been
confirmed as the source of the Adjunct actuator for this program." *Id.* at ¶ 40. Throughout the
course of the contract Intier directed communications to and received communications from
Massachusetts, and received delivery of the parts from Massachusetts. To date, Plaintiffs believe
that over 48,000 Ford vehicles have been identified in Massachusetts which contain the defective
door latch assemblies. This is clear evidence of Intier's contacts with Massachusetts. However, this
is hardly the only indicia of conduct by Intier's that subjects it to this Court's personal jurisdiction.

**b.      Intier Caused Tortious Injury by An Act Or Omission in
         Massachusetts.**

Section 3(c) of the Massachusetts long-arm statute also authorizes personal jurisdiction
over Intier. That section allows jurisdiction where a defendant causes "tortious injury by an act or
omission in this commonwealth." Mass. Gen. Laws c.223A, § 3(c). Actions pursuant to ch. 93A are
neither wholly tortious nor wholly contractual in nature. *Standard Register Co. v. Bolton-Emerson,
Inc.*, 649 N.E.2d 791, 38 Mass.App.Ct. 545 (Mass. 1995). However, it is assumed that a chapter
93A claim would constitute a "tortious injury" under the long-arm statute." *Lyle Richards*, 132 F.3d
at 111. Intier acquired certain components of its door latch assemblies from Massachusetts, and
incorporated them into the door latch systems at issue herein. Intier then sold the assemblies to Ford
who incorporated them in vehicles that entered the stream of commerce and were sold to Plaintiffs
and members of the proposed class in Massachusetts. The acts of contracting to acquire parts in

Massachusetts, actually acquiring parts in Massachusetts, and subsequently assembling those parts into a defective door latch system sold in a vehicle in Massachusetts, is sufficient to assert that Intier caused tortious injury within Massachusetts. Even if this Court determines that the door latch parts Intier purchased in Massachusetts were not incorporated into the Ford vehicles that were sold in Massachusetts, Intier still committed a tortious act outside of the Commonwealth by placing the defective door latch assemblies into the stream of commerce which were subsequently bought by the proposed plaintiff class, thereby tortiously injuring them in Massachusetts, as discussed below.

   **c.**  **Intier Regularly Did And Solicited Business, Engaged In Other Persistent Courses Of Conduct, And Derived Substantial Revenue From Goods Used Or Consumed Or Services Rendered In Massachusetts.**

   Section 3(d) of Massachusetts's long-arm statute authorizes the exercise of jurisdiction over Intier as well. This section first requires that the plaintiffs show that Intier's act or omission caused tortious injury within Massachusetts. Mass. Gen. Laws. ch. 223A, § 3(d). This is discussed above. Second, the plaintiffs must show that Intier had additional contacts with the Commonwealth, namely that Intier either (1) regularly does or solicits business in Massachusetts, or (2) that Intier engaged in other persistent courses of conduct in Massachusetts, or (3) that Intier derived substantial revenue from goods uses or consumed or services rendered, in Massachusetts. *Id.*

   Intier asserts that it does not "have an office, address, telephone number, employees, agents, or other physical presence in Massachusetts." Tait Aff. ¶ 4; Copeland Aff. ¶ 4. This statement, even if true, is not determinative of the long-arm analysis under § 3(d), and is also misleading. The Lead Director of Intier's board of directors is Mr. Louis Lataif, a long-time resident of Massachusetts, a clear indication that Intier has a visible presence in Massachusetts. *See infra*, footnote 1. Mr. Lataif would have regularly conducted the business of Intier's Board of Directors from his home and/or office in Massachusetts. Moreover, based on Intier's continuous course of

dealing with Stoneridge, a Massachusetts corporation, Intier has "solicit[ed] business in Massachusetts, ...engage[d] in ... [a] persistent course of conduct in Massachusetts ... [and] derive[d] substantial revenue from goods used or consumed in Massachusetts." Intier both acquired goods from Massachusetts and placed goods into the stream of commerce in Massachusetts during the years 1997-2002, if not longer. Furthermore, upon information and belief, Intier, as aftermarket replacement part seller, provided replacement parts to Ford Service Division installations in Massachusetts guaranteed under Ford's warranties to consumers. These activities were substantial and continuous, and from them Intier regularly derived revenue within Massachusetts.

In addition, Intier currently "advertises, sells, delivers, or distributes goods or services in Massachusetts." Intier advertises its business and services in several magazines, including *Automotive Engineering* and *Automotive Industries*. Attached hereto as Exhibits C and D, respectively. Both of these magazines are circulated and sold throughout Massachusetts. *See* Publication Circulation Statements for the above, attached hereto as Exhibits E and F, respectively. Accordingly, Intier has reaped the benefits of transacting business in Massachusetts, in conjunction with its tortious conduct occurring outside Massachusetts. Therefore, Intier is subject to the personal jurisdiction of this Court.

## 4. Exercise Of Personal Jurisdiction Over Intier Would Not Violate Due Process.

Because Massachusetts' long-arm statute authorizes the exercise of jurisdiction over Intier, the next issue is whether the exercise of that jurisdiction comports with due process requirements imposed by the Fourteenth Amendment to the United States Constitution. *Comer*, 295 F.Supp.2d at 206. The due process clause "permits a state to exercise jurisdiction over a non-resident defendant only when the defendant has sufficient minimum contacts with the forum." *Callahan v. Harvest Bd. Int'l Inc.*, 138 F.Supp.2d 147, 158 (D.Mass 2002). "In analyzing minimum contacts, courts have

13

recognized that jurisdiction can be specific or general." *Id.* Under this test, jurisdiction is proper if the defendant has minimum contacts with the forum state, such that the lawsuit would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The defendant must also have purposefully availed itself of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1953).

Massachusetts recognizes both specific personal jurisdiction, where the cause of action arises out a defendant's activities in the commonwealth, and general personal jurisdiction, where the cause of action does not concern the defendant's activity in the commonwealth, but the defendant engages in a persistent course of conduct or derives substantial revenue from the commonwealth. *Brown Rudnick Berlack Israels LLP v. Brooks,* 311 F.Supp.2d 131(D.Mass.2004). Intier has sufficient contacts and has engaged in persistent conduct sufficient to assert both general and specific jurisdiction over it in Massachusetts, and the exercise of such jurisdiction would comport with due process.

### a.    Intier Has Continuous And Systematic Contacts With Massachusetts To Support The Exercise Of General Jurisdiction In This Forum.

In a motion to dismiss for lack of personal jurisdiction, the court must consider "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim ... [and] then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Workgroup Technology Corp. v. MGM Grand Hotel, LLC,* 246 F.Supp.2d 102, 108 (D.Mass. 2003). In *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 446 U.S. 408, 414, the Supreme Court noted that "even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam

14

jurisdiction when there are sufficient contacts between the State and the foreign corporation." The Court in *Helicopteros* proffered an non-exclusive list of factors to be considered in determining if a state may exercise personal jurisdiction over a non-resident corporation, including: being authorized to do business in the state, having an agent for service of process within the state, conducting business within the state, selling a product that reaches the state, soliciting business in the state, signing a contract in the state, having an employee based in the state, recruiting an employee in the state, owning real or personal property in the state, maintaining an office or establishment in the state, maintaining records in the state, having shareholders in the state. *Id.* at 41. Based on Intier's previous admissions in other litigation, and other available information, Intier has conducted business within Massachusetts via its dealings with Stoneridge, through its advertising in Massachusetts and sale of products that reached Massachusetts through its dealing with Ford, and has a representative of its Board of Directors in the Commonwealth in the form of its Lead Director Louis F. Lataif. Accordingly, Intier has strong, bilateral contacts with Massachusetts such that general personal jurisdiction should be exercised, as discussed below.

In 1996 Intier entered into negotiations with Stoneridge in Massachusetts to acquire parts for its door latching systems, the product components at issue in this litigation. Exhibit A, ¶¶ 21-25. Then, as mentioned infra, on July 17, 1997, Intier entered into a Long Term Sales Agreement with Stoneridge under which Stoneridge would provide Intier with component parts for its door latch assemblies, which were later sold to Ford. *Id.* at ¶ 28. This ongoing relationship lasted through 2002, when Stoneridge sued Intier. Intier's conduct in that suit also provides support for the exercise of general jurisdiction over it, as it availed itself of the laws of Massachusetts and the jurisdiction of this Court by filing a counterclaim, and did not reserve the right to contest jurisdiction. Exhibit A at p. 29. At all relevant times, Intier has engaged in placing the defective parts into the stream of

15

commerce, such that the door latches arrived in Massachusetts in defective condition. Moreover,

Intier advertises its business and services in several publications that are circulated in Massachusetts.

*See*, Exhibits C through F. Given the weight of these various contacts, it would not violate due

process to assert general jurisdiction over Intier in Massachusetts. Intier can hardly be surprised to

be hailed into court in this forum, given the continuous and substantial nature of its contacts, and its

previous litigation in the forum. Therefore, this Court should exercise general jurisdiction over

Intier.

### b. Intier Has Sufficient Minimum Contacts With Massachusetts To Support The Exercise Of Specific Jurisdiction In This Forum.

In the unlikely event that it is determined that Intier's contacts do not suffice for general

personal jurisdiction, those same contacts should nonetheless be more than sufficient to assert

specific personal jurisdiction over the defendants. In the absence of general jurisdiction, the power

of a federal court sitting in Massachusetts depends upon the existence of specific jurisdiction. In

order to establish personal jurisdiction by way of specific jurisdiction, it must be shown that the

Massachusetts long-arm statute grants jurisdiction and, if it does, that the existence of jurisdiction

under the statute is consistent with the United States Constitution. *Brown Rudnick*, 311 F.Supp.2d

131. The First Circuit has developed a three-part test for deciding whether exercising specific

jurisdiction over a defendant comports with due process:

> First, the claim underlying the litigation must directly arise out of, or relate to, the
> defendant's forum-state activities. Second, the defendant's in-state contacts must represent a
> purposeful availment of the privilege of conducting activities in the forum state, thereby
> invoking the benefits and protections of that state's laws and making the defendant's
> involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction
> must, in light of the Gestalt factors, be reasonable.

*Milford Power Ltd. P'Ship. v. New England Power Co.*, 918 F.Supp. 471, 480 (D.Mass. 1996)

This claim arises out of Intier's purchasing door latch parts from Massachusetts, incorporating those same parts into defective door latch assemblies and placing those latch assemblies into the stream of commerce where they arrived in Massachusetts in Ford vehicles. Accordingly, the plaintiffs satisfy these jurisdictional elements via the application of the stream of commerce theory of specific jurisdiction.

The First Circuit is the only circuit to adopt Justice O'Connor's plurality opinion from *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102 (1987), wherein she said that "the placement of a product into the stream of commerce, *without more,* is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market .... But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi,* 480 U.S. at 112 (emphasis added). The clear implication from the foregoing is that where, as here, the defendant's conduct consists of *more* than merely placing a product into the stream of commerce, it may well be subject to specific personal jurisdiction in Massachusetts.

The Defendants contend that "Intier ... did not manufacture, distribute, or sell the door latches, and therefore did not place them into the stream of commerce at all." Def. Memo, p.15. It bears repeating that these claims are flatly contradicted by documents filed with this Court that unequivocally indicate that Intier did indeed "admit[ed] that it is an automotive supplier engaged in the design, manufacture and supply of automotive closure systems, components and parts." Exhibit B, ¶ 9. Specifically, Intier "admit[ed] that is has assembled Stoneridge's ADLA products together with other parts to create a door latch and power lock assembly, and that it has sold and still sells assemblies to Ford." *Id.* at ¶ 13.

17

Intier has availed itself of the protection of laws of the forum in numerous ways sufficient to satisfy the 'stream of commerce' plus the "something more" theory of specific jurisdiction adopted by the First Circuit. Intier has advertised its business and services in Massachusetts, has a member of its Board of Directors based in Massachusetts and has engaged in business transactions in Massachusetts. Intier entered into contracts with Stoneridge to provide Intier with the components that were shipped from Massachusetts to Intier's factories, assembled into door latches, sold to Ford, incorporated in Ford vehicles that were then sold to consumers in Massachusetts. Intier was assuredly aware that by providing door latch components to Ford, its parts were going to end up back in Massachusetts. Conducting business in Massachusetts in the form of acquiring parts that would later be incorporated in the Ford vehicles and returned to Massachusetts is evidence of "additional conduct of the defendant ... indicat[ive of] an intent or purpose to serve the market in the forum State." *Asahi*, 480 U.S. at 112. Moreover, as mentioned above, when Intier was sued under the contract it entered into with Stoneridge, it also availed itself of the forum's laws by filing counterclaims against Stoneridge. Exhibit A. Lastly, Intier clearly intended to serve the market in Massachusetts as it advertises its business and services in various publications sold and circulated in the Commonwealth. *See*, Exhibits C through F. Hence, Intier has availed itself of the laws of the forum beyond merely placing the defective products into the stream of commerce and, as such, this Court should exercise specific jurisdiction over Intier.

Lastly, it would hardly offend the "traditional notions of fair play and substantial justice" to require Intier to defend a suit in Massachusetts. *Asahi*, 480 U.S. at 113. It would be no more burdensome on Intier to require them to litigate this matter than it was in the *Stoneridge* case which was only resolved three months ago. In addition, it is patently false to assert that none of the relevant witnesses may be found in Massachusetts because Stoneridge, as a manufacturer of

component parts incorporated into the defective door latch assemblies at issue in this case, is based in Massachusetts. As always, Massachusetts continues to have a great interest in obtaining relief for its citizens arising from the manufacture and sale of defective products. Finally, Intier has indeed been subjected to claims and has subjected others to claims in this very forum. Therefore, due process will not be violated by this Court's exercise of specific personal jurisdiction over Intier.

## B. In The Alternative, Jurisdictional Discovery Is Appropriate.

If the court finds Plaintiffs failed to make made a sufficient showing to exercise jurisdiction over Intier, Plaintiffs request that the court allow limited jurisdictional discovery to ascertain more about Intier's business and other contacts with Massachusetts. Massachusetts courts have "held consistently to the rule that a plaintiff may take jurisdictional discovery if its claim is 'colorable.'" *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.,* 116 F.3d 962, 964 (1st Cir.1997). This standard for obtaining discovery "requires some showing that discovery is needed or likely to be useful." *U.S. v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, *637 (1st Cir. 2001). Nonetheless, such a showing is "significantly lower than the prima facie showing of jurisdiction, which requires the plaintiff 'to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution.'" *Id.* Accordingly, a "diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." *Sunview Condo. Ass'n v. Flexel Int'l., Ltd.,* 116 F.3d 962 (1st Cir. 1997). Jurisdictional discovery is appropriate "where the plaintiff had been diligent and was somewhat unfamiliar with his adversary's business practices," *Boit,* 967 F.2d at 681, and "where complex factual matters are in question," *Whittaker Corp.,* 482 F.2d at 1086. Given the obfuscation by Intier of its dealings with and in Massachusetts, if the court finds insufficient evidence to support the

19

exercise of personal jurisdiction over Intier at this time, allowing the Plaintiffs to conduct limited

jurisdictional discovery is assuredly appropriate.

## IV.    **Conclusion**

The Massachusetts long-arm statute authorizes the exercise of personal jurisdiction of Intier

in this forum, and the exercise of such jurisdiction would be constitutionally permissible based on

Intier's business and professional contacts within the state, its purposeful availment of the forum's

courts, and its placing products into the stream of commerce. As such, Plaintiffs respectfully request

that the Court deny Intier's 12(b)(2) Motion to Dismiss for lack of personal jurisdiction.

WHEREFORE, for the foregoing the Plaintiffs respectfully request that this Honorable

Court deny Intier's Motion to Dismiss.

DATED: June 27, 2005

Respectfully submitted,
by Plaintiffs' attorneys,

David C. Strouss, Esq. BBO# 546253
Kristen Marquis Fritz, Esq.  BBO# 650886
**THORNTON & NAUMES**
100 Summer Street - 30th Floor
Boston, MA 02110
(617) 720-1333

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2005, Plaintiffs' Opposition To Defendants Intier Automotive Closures Of America, Inc. And Intier Automotive Seating Of America Inc.'s Rule 12(B)(2) Motion To Dismiss And Request For Oral Argument were served upon the following counsel of by first class mail and by electronic filing.

Ford Motor Company and
Ford Motor Company of Canada, Ltd.
Joseph S. Sano
Walter B. Prince
Daniel S. Tarlow
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109

Intier Automotive
John B. Strassberger
James Messenger
Danielle Simon
WEIL, GOTSHAL & MANGES LLP
100 Federal Street
Boston, MA 02110

Magna Donnelly Corporation
Peter M. Durney
Patricia A. Hartnett
CORNELL & GOLLUB
75 Federal Street
Boston, MA 02110

Kristen Marquis Fritz

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CLERK'S NOTICE


This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.