## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joseph Iannacchino,<br>Victor Marchese, and<br>Soledad Berrios,<br>Individually and as<br>     Representatives of a Proposed Class,<br><br>     Plaintiffs,<br><br>v.<br><br><br>Ford Motor Company,<br>Ford Motor Company of Canada, Ltd.,<br>Magna Donnelly Corporation, Individually<br>  And d/b/a Donnelly Corp. and as successor<br>  By merger to Donnelly Corp.,<br>Intier Automotive Seating of America, Inc.,<br>  Individually and d/b/a Dortec Industries,<br>And<br>Intier Automotive Closures of America, Inc.,<br>  Individually and d/b/a Dortec Industries,<br><br>     Defendants. | CIVIL ACTION NO:<br><u>1:05-cv-11141-RCL</u> |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR REMAND AND REQUEST FOR ORAL ARGUMENT

### I.    Introduction

On June 1, 2005, Ford Motor Company and Ford Motor Company of Canada, Ltd. (the "Removing Defendants") filed a Notice of Removal in the above captioned matter then pending in Middlesex County Superior Court.

In the Notice of Removal, the Removing Defendants alleged that the Plaintiffs had asserted claims against the Removing Defendants arising under federal law. In addition, the Removing Defendants claim that this Court has diversity jurisdiction over the parties. As stated below, this court does not have jurisdiction because Plaintiffs'

complaint does not present a federal question and the amount in controversy requirement of diversity jurisdiction does not exist. Therefore, this Court should remand this case to Middlesex Superior Court.

## II.    Argument

It has been stated that federal removal statutes are not to be used as a mechanism to foreclose state courts from reviewing purely state causes of action. The Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 247, 90 S.Ct. 1583, 1590, 26 L.Ed.2d 199 (1970). In this regard, it is important for this Court to respect traditional notions of federalism and judicial comity. Indeed, Congress did not intend the removal statute "to effect a wholesale dislocation in the allocation of judicial business between state and federal courts." Id. at 247, 90 S.Ct. at 1590, 26 L.Ed.2d 199 (citing City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966)). Removal statutes, moreover, should be strictly construed with all doubts construed against removal. Brawn v. Coleman, 167 F.Supp.2d 145 (D.Mass. 2001); see also Therrien v. Hamilton, 881 F.Supp. 76, 78 (D.Mass.1995); Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); Roche v. American Red Cross, 680 F.Supp. 449, 451 (D.Mass. 1988).

### A.    Federal Question Jurisdiction Does Not Exist Because Plaintiffs' Complaints Do Not Present A Federal Question.

The Removing Defendants removed this state action pursuant to 28 U.S.C. § 1441, 28 U.S.C. § 1331 and § 1332. Under section 1331, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. The Removing Defendants, as the parties invoking federal jurisdiction, bear the burden of affirmatively and clearly establishing the existence of federal subject matter jurisdiction. Brawn, 167 F.Supp.2d 145; see also Shamrock Oil

2

& Gas Corp., *supra;* McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

In the present instance, Plaintiffs' claims arise under state statutory and common law. See, e.g., Complaint of Joseph Iannacchino et al, v. Ford Motor Company, et al., Civil Action No. 05-0538 in the Superior Court of Suffolk County, Massachusetts, hereinafter "Compl.," attached hereto as Exhibit A.  Plaintiffs' Complaint does not state a Federal cause of action, and in fact, expressly disclaims any federal claims or remedies.  Id. at ¶ 22.  In addition, ordinary state and common law allegations are not converted into a federal claim under the National Traffic and Motor Vehicle Safety Act by the mere presence of a federal issue. Whether a claim "arises under" federal law "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).  Thus, "the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law," even where a federal claim is also available. Id.

In order for a state-law claim to raise substantial questions of federal law, the focus is whether the claim "necessarily turn[s] on some construction of federal law, or if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." Korb v. Raytheon Co., 707 F.Supp. 63, 69 (D.Mass.1989).  "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986); Johnston v. Ford Motor Co., Case No. CV 04-J-2748-S, slip op. (N.D. Ala. Sept. 23, 2004). Order of Remand attached hereto as Exhibit B.  As a general rule, "a case arises under

3

federal law only if it is federal law that creates the cause of action." Bally v. National Collegiate Athletic Ass'n, 707 F.Supp. 57, 59 (D.Mass 1988). In this case, Plaintiffs' causes of action sound solely in state common and statutory law.

1. **In Door Latch Cases, The Removing Defendants' Arguments In Support Of Federal Question Jurisdiction Have Been Rejected By Ever Court That Has Considered Them.**

Recently, the same arguments asserted by Ford relating to federal jurisdiction were roundly rejected by a district court within the 11th circuit. Specifically, in Johnston v. Ford Motor Co., United States District Judge Inge P. Johnson remanded plaintiffs' class action suit brought in Alabama under the same set of facts and circumstances giving rise to the instant cause. Johnston v. Ford Motor Co., Case No. CV 04-J-2748-S, slip op. (N.D. Ala. Sept. 23, 2004). See Exhibit B at 3. In Johnston, plaintiffs brought a breach of express warranty claim against Ford alleging that Ford's door latch assemblies in the same vehicles fail to comply with Federal Motor Vehicles Safety Standard 206 which was promulgated pursuant to the National Traffic and Motor Vehicle Safety Act ("Safety Act"). See Johnston Notice of Removal at ¶¶3, 4, 5, attached hereto as Exhibit C. Further, Ford argued that "the predicate issue underlying Plaintiffs' state law claim involves a substantial federal question... ." Exhibit C at ¶6. In remanding plaintiffs' case to state court in Johnston, the Northern District of Alabama stated:

> [T]he facts of this case fit within those in *Merrill Dow* in which the Supreme Court held that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Merrill Dow*, 478 U.S. at 817. Accordingly, this court finds that there is no federal question jurisdiction in this case.

Exhibit B at 3.

In addition, the Removing Defendants' arguments were rejected by the United States District Court for the Northern District of Florida. Specifically, in <u>Hinote v. Ford Motor Co.</u>, United States District Judge M. Casey Rodgers remanded plaintiffs class action suit brought in Florida under the same set of facts and circumstances giving rise to the instant cause. Order of Remand, <u>Hinote v. Ford Motor Co.</u>, Case No. 3:04cv338/MCR/MD, (N.D. Fl. Sept. 23, 2004), attached hereto as Exhibit D. In <u>Hinote</u>, plaintiffs brought breach of warranty and consumer protection claims against Ford alleging that Ford's door latch assemblies in the same vehicles fail to comply with Federal Motor Vehicles Safety Standard 206 which was promulgated pursuant to the National Traffic and Motor Vehicle Safety Act ("Safety Act"). <u>See</u> <u>Hinote</u> Notice of Removal at ¶¶3, 4, 5, attached hereto as Exhibit E.

In remanding plaintiffs' case to state court in <u>Hinote</u>, Judge Rodgers stated:

"…[I]n the instant case Plaintiffs' claims do not present questions involving the interaction between federal statutes or any other questions – including those with respect to construing or applying FMVSS 206 – which may properly be characterized as 'substantial' enough to create subject matter jurisdiction….Defendants also assert that the Court should exercise jurisdiction over this case in light of the existence of a 'substantial interest' in the uniform application of FMVSS 206….Moreover, the Court notes that in <u>Merrell Dow</u> the Supreme Court rejected the seemingly similar argument that federal removal jurisdiction was justified because of 'a powerful federal interest in seeing that the FDCA is given uniform interpretations.' In any event, having found no substantial federal question based on the fact that Plaintiffs' claims may implicate interpreting FMVSS 206, the Court likewise finds no substantial federal interest in the uniform application of this standard such that removal jurisdiction is conferred. In order for Defendants to prevail under either the substantial federal question doctrine or the complete preemption doctrine they must show that the MVSA created the rights Plaintiffs seek to vindicate, as well as created a private cause of action to enforce such rights. Defendants have failed, however, to demonstrate that Congress clearly intended for removal jurisdiction to be available under this statute with respect to the common law claims and state statutory claim asserted by Plaintiffs. Contrary to Defendants' assertions, Plaintiffs do not in effect demand a court-ordered recall of vehicles with defective latches; rather, the complaint seeks relief in the form of money damages so that Plaintiffs may pay for their own vehicle inspections and repairs. Defendants simply have not shown that Congress has preempted this area of law so

thoroughly that Plaintiffs' claims necessarily are federal in character and thus the doctrine of complete preemption applies. Accordingly, for the foregoing reasons the Court finds that Defendants have not established a right to removal in the instant case, either on the ground of a substantial, disputed federal question or the ground of complete preemption." (Internal citations omitted).

Exhibit D at pp. 5-7.

Finally, Removing Defendants' arguments in this regard were rejected by United States Magistrate Judge P. Trevor Sharp in the United States District Court for the Middle District of North Carolina. Order and Recommendation of United States Magistrate Judge, Richard D. Day et al. v. Ford Motor Company, et al., Case No. 1:04CV00990 (M.D.N.C. February 9, 2005), attached hereto as Exhibit F. The Day case asserts violation of North Carolina's Unfair and Deceptive Trade Practices Act and alleges that the same vehicles at issue in this action "were and are defective, unreasonably dangerous, and posed and pose a significant health and safety risk to the public and consumers because of defective door latches that prevent doors from remaining latched on impact." Id. at p. 4. As grounds for removal in the Day case, Defendants asserted that both federal question and diversity jurisdiction existed because "an alleged violation of a Federal Motor Vehicle Safety Standard is an essential element of Plaintiffs' sole cause of action, the proof of which involves the resolution of a substantial, disputed question of federal law..." Id. at p. 2.

In his Order and Recommendation, Magistrate Judge Sharp cited heavily from the Johnston Order of Remand, discussed above, and found that "[t]he reasoning in Johnston is fully applicable under the facts of the case at bar." Id. at p. 11. Magistrate Judge Sharp then concluded that "[n]o federal issued are raised by [Plaintiffs'] allegations, yet they may serve to fully support and make out Plaintiffs' state-law UDTPA claim. Under these circumstances, it cannot be fairly said that the Amended Complaint 'turns on a

6

substantial, disputed question of federal law.'" Id. at p. 12. He then found that Defendants have not met their burden of showing federal jurisdiction and recommended that the action be remanded to the North Carolina state courts. Id.

In the instant case, Ford alleges that this Court has jurisdiction based on Ford's suggestion that Plaintiffs' Complaint invokes the National Highway Traffic Safety Administration Act (hereinafter, the "Safety Act"). Notice of Removal at ¶6. Significantly, Plaintiffs' Complaint on its face does it seek any claims arising under the Safety Act. Rather, Plaintiffs' Complaint seeks compensation for the identification and replacement of the defective door latch assemblies along with notice to the Class of the potential for serious injury or death that could result from failure of the outside door latch assemblies. See, Exhibit A. That is, Plaintiffs have only sought those remedies available under state law as averred in their well-plead Complaint. As stated by Judge Johnson in Johnston v. Ford, and as recognized by multiple courts cited herein "[t]he fact that plaintiffs' state law claims may implicate certain provisions of the Motor Vehicle Safety Act ("MVSA") is not sufficient to create federal question jurisdiction." Exhibit B at p. 2; see also, Merrell Dow Pharmaceutical, Inc., 478 U.S. at 813 106 S.Ct at 3234 ("the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction. This is especially true in light of the fact that the MCSA does not create a private right of action").

The Safety Act provides no private right of action nor does the same allow Plaintiffs to seek other damages. In fact, the statute does not include any provision affording consumers such as Plaintiffs with a cause of action for damages or injunctive relief. To the contrary, the Safety Act provides only for an administrative remedy for review of complaints about a recall. See, 49 U.S.C. §30162 (permitting an interested

7

person to file a petition with the Secretary requesting commencement of a proceeding to

prescribe a standard or find a defect and order a remedy) and §30163 (allowing United

States Attorney General to file a civil action to enjoin violations). These subsections

demonstrate that Congress considered who should have a right to sue and did not allow

for a private cause of action under the statute, thereby requiring Plaintiffs to pursue

alternative remedies. See, Cabana v. Forcier, 148 F.Supp.2d 110 (D.Mass.2001)

(Pleading a violation of federal statute as element of state law cause of action is

insufficient to confer federal question jurisdiction, when statute does not provide for

private cause of action.). As a result, under Merrill Dow, the presence of federal issues in

Plaintiffs' Complaint does not confer federal question jurisdiction. Because Plaintiffs'

Complaint presents no federal question, this Court lacks subject matter jurisdiction and

should immediately remand this case pursuant to 28 U.S.C. § 1447(c).

### 2. The "Federal Ingredient" Doctrine Is Inapplicable To The Instant Case

Removing Defendants assert that the "federal ingredient doctrine" is applicable.

Notice of Removal at ¶ 11. Removing Defendants rely on this "unclear" and

"controversial" doctrine sometimes which allows an action to be brought in federal court

where the resolution of state claims depends on resolution of a federal question. Metheny

v. Becker, 352 F.3d 458, 460 (1st Cir. 2003); accord Almond v. Capital Props. Inc., 212

F.3d 20, 23 (1st Cir. 2000). Although this doctrine remains in use in the First Circuit, the

court has said, "our precedent tells us that the doctrine is not to be applied expansively."

Metheny, 352 F.3d at 461; accord Almond, 212 F.3d at 23 ("Perhaps the best one can say

is that this basis endures in principle but should be applied with caution and various

qualifications."). While the Supreme Court has occasionally used this doctrine in the

abstract, that Court has "cast doubt on it, rarely applied it in practice, and left the very

8

scope of the concept unclear." Almond, 212 F.3d at 23 (citing Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921)).  However, Plaintiffs' First Amended Complaint brings five counts against Removing Defendants, all of which sound in Massachusetts state law.  Federal Regulations issued by the National Highway Traffic Safety Administration (NHTSA), and the standards set out by the Motor Vehicle Safety Act (MVSA) were implicated in the Plaintiffs' complaint, but the inclusion of these standards does not create a question which "necessarily requires resolution of a substantial question of law."  Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983).  The "federal ingredient" doctrine is thus not applicable.

In Metheny, the court declined the defendant's suggestion that the state law claims which formed the basis for the complaint involved a substantial question of federal law where federal standards under the Federal Telecommunications Act (the "FTA") were at issue. 352 F.3d at 459-60.  Resolution of the state claim involved an analysis of whether an evidentiary standard supplied by federal law had been sufficiently met.  Id. at 461.  The court felt that if such a strict "federal ingredient" standard applied as that asserted by the defendant, then it would be difficult for any issue of federal law implicated in state court not to support federal question jurisdiction.  Id.  The Court then held that a substantial question of federal law was not present in the case before it because resolution of the claim did not "necessarily" require resolution of the federal issue.  Id.

Without specifically discussing the issue as the "federal ingredient" doctrine, the Supreme Court in Merrell Dow decided whether the incorporation of a federal standard in a state-law private action makes the action one arising under the Constitution, laws, or

treaties of the United States." 478 U.S. at 805, 106 S.Ct. at 3230 (internal citations omitted). Specifically, the Supreme Court reviewed a federal law for which Congress did not intend a private right of action, as is here for the Motor Vehicle Safety Act. See, e.g., Campbell, et al. v. General Motors Corp., et al., 19 F.Supp.2d 1260, 1272-75 (N.D. Ala. 1998) ("The foregoing discussion also makes it clear that the Safety Act confers no private cause of action to enforce its notification requirements"); Ayers v. General Motors Corp., 234 F.3d 514, 522-24 (11th Cir. 2000). The Supreme Court found that by not providing a private right of action congress had implicitly declared that violation of the statute would not confer federal question jurisdiction. Merrell Dow, 478 U.S. at 812. Thus, the Supreme Court held that where a state cause of action involves a violation of a federal statute not intended to have a private cause of action, the presence of the federal issue does not confer federal question jurisdiction. Id. at 817.

Application of the holdings in Metheny and Merrell Dow to the facts of this case suggests that the "federal ingredient" doctrine is not applicable. The regulations promulgated by NHTSA, and the standards under the MVSA do not in of themselves afford a private right of action. See, e.g., Ayers, 234 F.3d at 522-24; Campbell, 19 F.Supp.2d at 1272-75. To find that the mere presence of federal issues in the First Amended Complaint (where all causes of action arise under Massachusetts law) confers federal question jurisdiction would be to stretch the limits of jurisdiction and in doing so reach a result contrary to the intent of Congress. It would be an overexpansion of the "federal ingredient" doctrine to say that the incorporation of such standards "necessarily requires resolution of a substantial question of federal law." Therefore, because Plaintiffs' Complaint presents no federal question, this Court lacks subject matter jurisdiction and should immediately remand this case.

**B.    Diversity Jurisdiction Does Not Exist Because The Amount In Controversy Requirement Is Not Met.**

Removing Defendants assert that this Court has jurisdiction pursuant to 28 U.S.C. § 1332. Section 1332(a) provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs…" Diversity jurisdiction does not exist in this case because the amount in controversy as to the individual claims of each Plaintiff and each member of the proposed Class does not exceed $75,000.00.  Exhibits A to E to Plaintiffs' First Amended Complaint.  Claims for compensatory damages brought by individual plaintiffs cannot be aggregated to establish the required amount in controversy. See Snyder v. Harris, 394 U.S. 332, 336, 89 S.Ct. 1053, 1057, 22 L.Ed.2d 319 (1969) (upholding "[t]he doctrine that separate and distinct claims could not be aggregated"); see also Zahn v. International Paper Co., 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973); Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001); Gattegno v. Sprint Corp., 297 F.Supp.2d 372 (D.Mass 2003); St. Paul's Indemnity Corp. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); see generally Wright & Miller, 14A Federal Practice and Procedure §3702 ("[p]laintiff is the master of his or her own claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy").  As such, the amount in controversy requirement is not met and this Court does not have jurisdiction over Plaintiffs' claims.

**1.    The Class Action Fairness Act Of 2005 Does Not Apply Because This Action Was Commenced Prior To Its Enactment.**

Removing Defendants assert that Plaintiffs' Complaint falls under the Class Action Fairness Act of 2005, hereinafter the "Act."  Removing Defendants cite the following language regarding the applicability of the act: "it 'appl[ies] to any civil action

**commenced** on or after the date of enactment of this Act,' i.e., February 16, 2005."[1]
Notice of Removal at ¶ 13 (emphasis added). The Rules of Civil Procedure provide that
a civil action is commenced by filing a complaint with the clerk. Fed. R. Civ. P. Rule 3
and Mass. R. Civ. P. 3. Plaintiffs filed their complaint in this action on February 15,
2005, which was before Congress passed the Act, before President Bush signed the Act,
and before the Act's effective date. Therefore, the Act is not applicable to Plaintiffs'
claims. In addition, as discussed below, the claims in Plaintiffs' First Amended
Complaint relate back to the filing date of the original complaint.

The relevant federal statute governing the relation back of amended pleadings is
Fed. R. Civ. P. 15(c), which provides:

> "An amendment of a pleading relates back to the date of the original pleading
> when (1) relation back is permitted by the law that provides the statute of
> limitations applicable to the action, or (2) the claim or defense asserted in the
> amended pleading arose out of the conduct, transaction, or occurrence set forth or
> attempted to be set forth in the original pleading…"

Under Massachusetts law, the comparative rule, Mass. R. Civ. P. 15 (c), is similar in
construct and principle, although it has generally been construed as being more liberal in
regards to relation back than its federal counterpart. Wadsworth v. Boston Gas Co.
352 Mass. 86, 223 (1917) ("In general, the law in this Commonwealth with respect to
amendments is more liberal than elsewhere"); see also One Beacon Insurance Co v.
Electrolux, 223 F.R.D. 21 (D. Mass. 2004); Bengar v. Clark Equipment Co., 401 Mass.
554 (1988). Mass. R. Civ. P. 15(c) reads as follows:

> "Whenever the claim or defense asserted in the amended pleading arose out of the
> conduct, transaction, or occurrence set forth or attempted to be set forth in the
> original pleading, the amendment… relates back to the original pleading."

---

[1] Importantly, while Congress passed the Act on February 16th, it was not signed by President Bush until
February 18th, and thus is not effective until February 18th. Plaintiffs' Complaint was filed on February
15th.

The applicable standard for determining whether an amended complaint will relate back is thus whether the amendment "arose out of the conduct, transaction, or occurrence" set forth in the original pleading. Fed. R. Civ. P. 15(c); Mass. R. Civ. P. 15(c). Plaintiffs' First Amended Complaint adds a cause of action and a single paragraph of supporting facts, which arose from the same conduct which the Removing Defendants were notified of in the original Complaint, and from which all of causes of action in the original Complaint arose. That is, all of the allegations in the Amended Complaint arose out of Removing Defendants' conduct surrounding the manufacture and sale of vehicles (or their component parts) with defective outside door handle systems, Removing Defendants' awareness of such defects and the danger presented to Plaintiffs and members of the proposed class as a result.

### 2. Massachusetts Law Of Relation Back Applies.

Massachusetts law on relation back will to apply to this case as all the claims are governed by Massachusetts law. Where a suit is governed under state law, federal courts will apply the state rule governing relation back over the federal rule. Ward v. Hercules, 75 F.R.D. 455, 457 (D. Mass 1977); see also One Beacon Insurance Co. v. Electrolux, 223 F.R.D. 21, 24 (D. Mass. 2004). "The rule in the First Circuit is that, consistent with Hana v. Plumer, 380 U.S. 460 (1965), relation back of amendments is controlled by the Massachusetts rule rather than Fed.R.Civ.P. 15(c) when the claims arise under Massachusetts law." Ward, 75 F.R.D. at 457 (citing Marshall v. Mulrenin, 508 F.3d 39, 44-45 (1st Cir. 1974)). In Ward, where the case was a products liability-tort suit which was based on Massachusetts law, the Massachusetts rule, which "is considerably more liberal than Federal Rule 15 (c)," was found to apply in federal court. 75 F.R.D. at 456.

13

All causes of action against the Removing Defendants, including alleged violations of Mass. Gen. Laws c. 93A §§ 2 and 9, breach of express warranty, breach of implied warranty, and unjust enrichment, are governed by the laws of Massachusetts. Thus the liberal rules of Massachusetts regarding relation back will also apply. Applying the liberal Massachusetts rule, it is clear that Plaintiffs' First Amended Complaint relates back. This is discussed further below.

>    3.    **The Fist Amended Complaint Relates Back To The Commencement Of The Action Under Both Massachusetts And Federal Law.**

The focus of the relation back inquiry under Massachusetts and under federal law is on whether the amended complaint relies on conduct which was identified in the original complaint and not, as Removing Defendants assert, on whether the amended complaint represents a new cause of action. See Zee-Bar, Inc. v. Kaplan, 162 F.R.D. 422, 426 (D.N.H. 1993); Zagurki v. American Tobacco Co., 44 F.R.D. 440, 442 (D.Conn.1967) ("The theoretical inquiry whether the amendment falls within the original 'cause of action' framework has been largely abandoned. Instead, the question is whether the defendant ought to have known from the original complaint the facts which the plaintiff is now adding"); Cimino v. Milford Keg, Inc., 385 Mass. 323, 333, 431 N.E.2d 920, 927 (1982). The court will look to whether the defendant was "given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense" to determine whether relation back is appropriate. O'Loughlin v. Nation Railroad Passenger Corporation, 928 F.2d 24, 26 (1st Cir. 1991) (quoting 6A Wright, Miller & Kane, Federal Practice and Procedure, § 1497 (2d ed. 1990)); see also, Baldwin County Welcome Center v. Brown, 466 U.S. 147, 150, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984) ("The rationale of Rule 15(c) is that a party who has been notified of litigation

concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide").

In Corkin v. Tide Water Associated Oil Co., the Court held that "[i]f a new legal theory is presented by the amendment, it will still relate back where the amended pleading clearly arises from the same transaction or conduct as the original pleading." 20 F.R.D. 402, 404 (D. Mass. 1957). In Corkin, the plaintiff amended his complaint to set forth a cause of action in tort, whereas the original complaint was for breach of contract. 20 F.R.D. at 404. Despite it being a theory not mentioned in the original complaint, the court allowed the new tort count to relate back on the basis that the false representations alleged in the tort claim arose from the same transaction from which the contract issue arose. Id. Both of the allegations stemmed from a letter written by the defendant to the plaintiff, and the defendant was made aware that the letter would be the subject of the litigation by the context of the original pleading. Id. The court interpreted the case as a situation where a wholly separate count arose out the same transaction as the count in the original pleading, and thus the new cause of action related back to the time of commencement of the action. Id. In addition, in Cimino, the Massachusetts Supreme Judicial Court allowed an amendment adding a new cause of action for emotional distress to relate back where the new cause of action arose out of the same underlying transaction as the original complaint. 358 Mass. at 333. The count for emotional distress was not included in the original complaint, but it was based on the conduct about which defendant was notified the litigation would involve in the original complaint. Id.

In a similar vein, the First Amended Complaint in the present case sets forth an additional cause of action which arose entirely from the same conduct alleged in the original Complaint. Likewise, the single added paragraph of facts is entirely related to

15

the conduct which is the subject of the original Complaint. All four of the counts in

original complaint arose out of Removing Defendants' conduct in manufacturing and

selling vehicles (or their component parts) with defective door latch assemblies, and

Removing Defendants' knowledge of such defects. The facts averring this conduct were

laid out in the original complaint to clearly notify the Removing Defendants of the

subject matter of the lawsuit. The count for unjust enrichment arose from Removing

Defendants' decision to cancel a recall of the vehicles to save millions of dollars while

jeopardizing the safety of Plaintiffs and members of the proposed Class. The paragraph

supplementing the facts in the original Complaint arose entirely from the Removing

Defendants' conduct surrounding the door latch assemblies discussed in the original

Complaint. Furthermore, since the original complaint so clearly established that the

aforementioned conduct was the subject of the lawsuit, Removing Defendants cannot

claim that they were not put on notice as to the possibility that further counts could stem

from this conduct. Removing Defendants are in no way prejudiced by the relation back

of an additional count and single supplemental fact paragraph which so closely arose out

of the same conduct as that plead in the original Complaint.

In their Notice of Removal, Removing Defendants cite to New Bank of New

England v. Tritek Communications, Inc., which rejected relation back because it found

that the amended complaint presented a new claim which was based on a different injury,

and sought different relief from that of the original complaint. 143 F.R.D. 13, 18 (D.

Mass. 1992). However, the Court in New Bank discussed the long held rule that for

jurisdictional purposes the court should look to the commencement of the action. Id. at 16

("A partial amendment of the complaint that may affect jurisdictional requirements

generally will not operate to nullify diversity jurisdiction, given the rule of looking to the

facts at the commencement of the case to determine jurisdiction"); see, e.g., Freeport-McMoran, Inc., v. KN Energy, Inc., 498 U.S. 426, 428, 111 S.Ct. 858, 859-60, 112 L.Ed.2d 951 (1991); Media Duplication Services, Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1236 (1st Cir 1991)(In cases where amendments to the original pleadings have the potential to affect the subject matter jurisdiction of the court, the facts at the time the action is commenced govern the determination of jurisdiction.). Removing Defendants also cite the O'Loughlin case. In that case, the plaintiff amended his complaint to change not just the date of injury, but rather changed the entire incident which led to his injury. Under those circumstances, the Court found that the amendment asserted a claim which arose out of a different occurrence or conduct than that averred in the original complaint. 928 F.2d at 26-7.

Unlike the above cases, the cause of action in the First Amended Complaint arose out of the conduct outlined in the original complaint. The cause of action for unjust enrichment is based almost entirely on the conduct outlined in the original complaint with the exception of the single factual allegation that was added. It would be a stretch to suggest that the First Amended Complaint "can in no sense be deemed an extension of the [original] complaint." New Bank, 143 F.R.D. at 18. Nor does the First Amended Complaint set out a completely new source of the injury. See O'Loughlin, 928 F.2d 24. The original Complaint in this case presented facts and multiple causes of action arising from Removing Defendants' conduct surrounding the manufacture and sale of defective door latch assemblies (and their component parts), and Removing Defendants' knowledge of such defects. The First Amended Complaint similarly presents facts and alleges unjust enrichment which arose out of this very same conduct which formed the basis of the original Complaint.

It is therefore clear that Plaintiffs' First Amended Complaint relates back to the commencement of the original complaint under either Federal or Massachusetts law. As a result, the causes of action in Plaintiffs' First Amended Complaint can be said to have been commenced on February 15th and, therefore, the Class Action Fairness Act of 2005 does not apply to Plaintiffs claims. Because the Act does not apply, this court does not have diversity jurisdiction as the amount in controversy requirement is not met. Prior to enactment of the Act, the jurisdictional amount was $75,000, 28 U.S.C. § 1332(a), and at that time, the amount-in-controversy could not be met by aggregating the claims of class members, See Snyder, 394 U.S. at 336, 89 S.Ct. at 1057, 22 L.Ed.2d 319; Zahn, 414 U.S. at 301, 94 S.Ct. at 512, 38 L.Ed.2d 511; see also Spielman, 251 F.3d at 7; Gattegno, 297 F.Supp.2d at 377. Plaintiffs' have alleged that each class member suffered damages in the amount of approximately $1,200, Exhibits A to E to Plaintiffs' First Amended Complaint, and have expressly alleged that "the amount in controversy for any individual plaintiff or class member does not exceed $74,999." Exhibit A at ¶ 22. This value does not reach the amount in controversy requirement of § 1332.[2] Therefore, this court does not have jurisdiction over this action and it should be remanded to the Middlesex Superior Court.

## III.    Conclusion

In sum, this Court does not have jurisdiction because Plaintiffs' complaint does not present a federal question nor is the "federal ingredient" doctrine applicable. In addition, the amount in controversy requirement of diversity jurisdiction does not exist

---

2 Plaintiffs are aware that the Supreme Court recently held that in a class action where at least one of the plaintiffs' damages exceed $75,000 the Court can obtain supplemental jurisdiction over the other putative class members under 28 U.S.C. § 1367. Exxon Mobil Corp. v. Allapattah Services, Inc., Nos. 04-70, 04-79, 2005 WL 1469477, at * 14 (U.S. June 23, 2005). The exercise of supplemental jurisdiction is dependent, however on the court first having original jurisdiction over the claims. Because this Court does not have original jurisdiction in this case, the Exxon opinion is inapplicable. Further, Exxon does not apply because none of the plaintiffs' individual damages exceeds $74,999. Exhibit A at ¶ 22.

because Plaintiffs' First Amended Complaint was filed before the Class Action Fairness

Act was enacted, the claims relate back to the filing date of the original Complaint and

individual Plaintiffs' claims are therefore not aggregated to reach the jurisdictional

amount. Therefore, this Court lacks subject matter jurisdiction over the claims in

Plaintiffs' First Amended Complaint.

WHEREFORE, for all the foregoing reasons, this Court should remand this action

to the Superior Court of Middlesex County pursuant to 28 U.S.C. § 1447(c).

DATED: June 30, 2005

Respectfully submitted,
by plaintiffs' attorneys,

David C. Strouss, Esq. BBO # 546253
Kristen Marquis Fritz, Esq. BBO# 650886
**THORNTON & NAUMES, LLP**
100 Summer Street - 30th Fl
Boston, MA 02110
(617) 720-1333

19

EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                        SUPERIOR COURT
                                                      TRIAL DEPARTMENT

| | |
|---|---|
| Joseph Iannacchino, )<br>Victor Marchese, and )<br>Soledad Berrios, )<br>Individually and as )<br>    Representatives of a Proposed Class, )<br>         )<br>        Plaintiffs, )<br>         )<br>v.           )<br>         )<br>         )<br>         )<br>         )<br>Ford Motor Company, )<br>Ford Motor Company of Canada, Ltd., )<br>Magna Donnelly Corporation, Individually )<br>  And d/b/a Donnelly Corp. and as successor )<br>  By merger to Donnelly Corp., )<br>Intier Automotive Seating of America, Inc., )<br>  Individually and d/b/a Dortec Industries, )<br>And )<br>Intier Automotive Closures of America, Inc.,)<br>  Individually and d/b/a Dortec Industries, )<br>         )<br>        Defendants. )<br>         ) | CIVIL ACTION NO: <u>05-0538</u><br><br><br><br><br><u>**FIRST AMENDED<br>COMPLAINT<br>AND DEMAND<br>FOR JURY TRIAL**</u> |

## I.    <u>INTRODUCTION</u>

1.  This class action centers on causes of action arising under Mass. Gen. Laws c.

    93A §§ 2, 9 and on breaches of various express and implied warranties.  The acts

    that constitute these causes of action encompass the activities of Defendants in

    designing, manufacturing, installing, supplying, selling, and distributing defective

    outside door handle systems in model year 1997 to 2000 Ford F-150, Ford F250

    (light duty), Ford Expedition or model year 2000 Ford F150 Super Crew vehicles

(hereinafter "the vehicles"), owned by Plaintiffs and members of the proposed Class in the Commonwealth of Massachusetts.

2. The claims arise out of Massachusetts' sovereign right to protect Massachusetts consumers as defined by Mass. Gen. Laws c. 93A. This action seeks only to hold the Defendants liable to individuals who own vehicles with defective outside door handle systems.

3. At all times relevant herein, Defendants have willfully, knowingly, and/or recklessly committed unfair or deceptive acts or practices in Massachusetts for the express unlawful purpose of wrongfully hiding the defects and their knowledge of those defects in violation of Mass. Gen. Laws c. 93A, §§ 2, 9.

4. The claims arise out of various warranties, express and implied, made by Defendants to Plaintiffs and members of the proposed Class regarding the safety and compliance of the vehicles and their component parts, as discussed herein.

5. Plaintiffs did not know, and by the exercise of reasonable diligence could not have known, (1) of all the conduct constituting violation of c. 93A and breaching various express and implied warranties, (2) that they had been injured by this unlawful conduct, and (3) the entities responsible for the unlawful conduct.

6. The facts set forth herein based upon information and belief and are only representative of facts recently revealed to Plaintiffs and their counsel.

## II.   PARTIES

### A.   Representative Plaintiffs

7. Plaintiff Joseph Iannacchino is a resident of the Commonwealth of Massachusetts. Plaintiff Iannacchino owns a 1997 Ford F-150 and has been

injured by the wrongful and illegal conduct of Defendants as explained later in this complaint.

8.  Plaintiff Victor Marchese is a resident of the Commonwealth of Massachusetts. Plaintiff Marchese owns a 1997 Ford F-250 and has been injured by the wrongful and illegal conduct of Defendants as explained later in this complaint.

9.  Plaintiff Soledad Berrios is a resident of the Commonwealth of Massachusetts. Plaintiff Berrios owns a 1997 Ford Expedition and has been injured by the wrongful and illegal conduct of Defendants as explained later in this complaint.

**B. Defendants**

10. Defendant Ford Motor Company is a Delaware Corporation with its principal place of business in Michigan.  Ford Motor Company, hereinafter "Ford," is a manufacturer of automobiles and other vehicles, including those owned by the Plaintiffs.

11. Defendant Ford Motor Company of Canada Limited is a Canadian corporation. Ford Motor Company of Canada Limited, hereinafter "Ford Canada," is a manufacturer of automobiles and other vehicles, including those owned by the Plaintiffs.

12. Defendant, Magna Donnelly Corporation, Individually, hereinafter "Magna," and d/b/a Donnelly Corporation and as successor by merger to Donnelly Corporation, hereinafter "Donnelly," is a corporation created under the laws of Michigan.  Donnelly Corporation was incorporated under the laws of Michigan on June 12, 1936.  On February 19, 2003, Magna Donnelly Corporation registered to transact business in Michigan under the assumed name of Donnelly

3

Corporation. Magna Donnelly Corporation is a manufacturer of vehicle
component parts, including those parts in vehicles owned by the Plaintiffs.

13. Defendant, Intier Automotive Closures of America, Inc. Individually and d/b/a
Dortec Industries is a Delaware corporation that is registered to do business in
Michigan. Intier Automotive Closures of America, Inc., hereinafter "Dortec," is
a manufacturer of vehicle component parts, including those parts in vehicles
owned by the Plaintiffs.

14. Defendant, Intier Automotive Seating of America, Inc. Individually and d/b/a
Dortec Industries, is a Delaware corporation that is registered to do business in
Michigan. Intier Automotive Seating of America, Inc., hereinafter "Dortec," is a
manufacturer of vehicle component parts, including those parts in vehicles owned
by the Plaintiffs.

15. Reference in this complaint to "the manufacturing defendants" includes the
Defendants as manufacturers of vehicles and their component parts and members
of that industry. Reference to "component part manufacturers" also includes the
Defendants Magna Donnelly Corp., Intier Automotive Closures of America, Inc.
and Intier Automotive Seating of America Inc. as well as other members of that
industry.

## II.    JURISDICTION AND VENUE

16. This is a class action brought on behalf of Massachusetts residents who own
model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition or
2000 Ford F150 Super Crew vehicles that contain defective outside door handle

4

systems and who, therefore, were affected in Massachusetts by Defendants' conduct.

17. Representative Plaintiffs are residents of the Commonwealth of Massachusetts own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition or 2000 Ford F150 Super Crew vehicles that contain defective outside door handle systems **and** who were injured by Defendants' conduct in Massachusetts.

18. Upon information and belief, at all relevant times complained of herein, Defendants, individually or through their co-conspirators or their agents, were doing business in the Commonwealth of Massachusetts.

19. Inasmuch as Defendants have (a) transacted business in this state, (b) caused injury, as detailed herein, by an act or omission in this state, (c) caused injury in this state, as detailed herein, by an act or omission outside this state and, moreover, regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in this state, and (d) violated Mass. Gen. Laws c. 93A and breached various express and implied warranties, thereby injuring Massachusetts owners of certain Ford vehicles and/or materially participated or assisted in the above, jurisdiction may be exercised over all Defendants pursuant to Mass. Gen. Laws c. 223A, § 3(a). Further, all Defendants, individually and through their agents, otherwise engaged in business activities in Massachusetts on a continuous and systematic basis.

20. Venue is appropriate in the Superior Court of Middlesex County, Massachusetts as Defendants and/or their agents or representatives have committed unfair or deceptive acts or practices in this county.

21. At all times mentioned herein, the Defendants acted through their duly authorized agents, servants, and employees who were at all times relevant herein acting within the course of their employment and within the scope of their employment for the furtherance of the business of each of the Defendant corporations.

22. Plaintiffs and the class they seek to represent ask for no direct relief under any federal law or regulation, assert no federal claims, and withdraw any asserted claim if it is preempted by federal law. Any remedy under federal law, regulation, rule, or other federal authority is expressly disclaimed at this time. no federal diversity jurisdiction exists because the amount in controversy for any individual plaintiff or class member does not exceed $74,999.00.

IV.    **CLASS ACTION ALLEGATIONS**

23. Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated for the purpose of asserting claims alleged herein on a common basis, pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure and under Mass. Gen. Laws c. 93A, § 9(2). The proposed Class is defined as:

> Owners of model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition or model year 2000 Ford F150 Super Crew vehicles that contain defective outside door handle systems and who are residents of Massachusetts. Excluded from the class are all claims for personal injury by Plaintiffs or class members. Also excluded from the class are defendants, any entity in which defendants have a controlling interest and defendants' legal representatives heirs and successors.

6

24. The named representative Plaintiffs are members of the class they seek to represent; that is, those residents of Massachusetts who own model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition or model year 2000 Ford F150 Super Crew vehicles that were manufactured by Ford Motor Company or Ford Motor Company of Canada and which contain defective outside door handle systems and who were injured by Defendants' conduct in Massachusetts.

25. All of the outside door handles and their component parts do not comply with FMVSS or CMVSS nor do they meet Ford's own internal standards, regardless of the make or model or year of the vehicle.

26. This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure and Mass. Gen. Laws c. 93A, § 9(2). This action satisfies the procedural requirements set forth by Rule 23 and c. 93A, § 9(2).

27. The use or employment of unfair or deceptive acts or practices by the Defendants, acting individually and in concert, have caused similar injury to members of the Class who are similarly situated and who have been damaged and/or injured by and through the allegations contained herein. The Class of plaintiffs is so numerous that joinder of all members is impracticable.

28. There are substantial questions of law and fact common to the class. These common questions include, but are not limited to, the following:

    a. Whether the outside door handle systems or certain component parts in the outside door handle systems in the vehicles are defective;

    b. Whether Defendants knew, or became aware, that the outside door handle systems or certain component parts in the vehicles were not properly

designed or manufactured, yet they continued to manufacture, distribute, advertise, and market the vehicles without correcting the problems;

c. Whether Defendants knew or should have known that the presence of these defective outside door handle systems in the vehicles had the potential to result in significant injury or death to vehicle occupants;

d. Whether Defendants engaged in unfair and deceptive acts or practices when they represented that the vehicles complied with safety standards, when in fact, and to Defendants' knowledge, they did not;

e. Whether the vehicles are unreasonably dangers and not fit and safe for their ordinary and intended use;

f. Whether Defendants' express and implied warranties and representations that the vehicles complied with all safety standards and regulations, while Defendants knew or should have known that the outside door handle systems were subject to failure during normal use and that if such a failure occurred, the vehicle occupants would be placed in great danger of being injured or killed, constituted a violation of Mass. Gen. Laws c. 93A, §§ 2, 9 which prohibits "...unfair or deceptive acts or practices in the conduct of any trade or commerce..."

g. Whether Defendants' failure to inform Plaintiffs, members of the proposed Class and others that their vehicles contained defective outside door handle systems, Defendants' silence concerning the likely known problems with the outside door handle systems, and the fact that these outside door handle systems were not merchantable or fit for their intended purposes constitute violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breached express and implied warranties made to Plaintiffs and members of the proposed Class.

h. Whether the conduct described herein breached the various express and implied warranties made to Plaintiffs and members of the proposed Class.

i. Whether Defendants have violated various regulations promulgated by the Massachusetts Attorney General, the violation of which are a per se violation of Mass. Gen. Laws c. 93A, to wit:

    1. 940 CMR 5.03 (5), which provides: "It is an unfair or deceptive act or practice for a manufacturer to fail to give prompt written notice of any defect in motor vehicles manufactured by it to its distributors, zone offices, dealers and other representatives, as well as to the purchasers or owners of such vehicles who are known to the manufacturer. Such written notice shall contain the following information:

(a) A clear description of such defect and the identity of the model or class of vehicles in which such defect occurs;
(b) An evaluation of the risk of accident, impairment of operation or performance or impairment of the value reasonably related to such defect;
(c) A statement of the measures to be taken to obtain remedy of such defect; and
(d) Whether the cost of such remedy or any part thereof will be borne by the manufacturer."

2. 940 CMR 3.05(1), which provides: "No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect. This prohibition includes, but is not limited to, representations or claims relating to the construction, durability, reliability, manner or time of performance, safety, strength, condition, or life expectancy of such product, or financing relating to such product, or the utility of such product or any part thereof, or the ease with which such product may be operated, repaired, or maintained or the benefit to be derived from the use thereof."

3. 940 CMR 3.08(2), which provides: "It shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty. The utilization of a deceptive warranty is unlawful.

j. Whether Class members have been injured by defendants' alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties;

k. Whether Defendants' alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 were knowing, willful, wanton, intentional, deliberate and malicious or otherwise such that plaintiffs are entitled to an award of multiple or punitive damages;

l. Whether Defendants combined and acted in concert with one another in their alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties;

m. Whether Defendants' alleged combination and actions in concert with one another in their alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties were done for the purpose of causing, and in fact caused, class members to be injured; and

n.  Whether Defendants' alleged combination and actions in concert with one another in their alleged violations of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties were knowing, willful, wanton, intentional, deliberate and malicious or otherwise such that Plaintiffs and members of the proposed Class are entitled to an award of multiple or punitive damages.

29. The claims of the representative Plaintiffs are typical of the claims of the Class. The same events and conduct that give rise to the claims and legal theories of Plaintiffs also give rise to the same claims and legal theories of the Class. The Plaintiffs' claims are typical of the claims of the other members of the Class in that litigation of Plaintiffs' claims will advance the interest of absent Class members.

30. The representative Plaintiffs will fairly and adequately represent the interests of the Class. There are no disabling conflicts of interests between the representative Plaintiffs and the Class.

31. The named representative Plaintiffs are part of the Class, possess the same interests, and suffer the same injuries as the Class members, making their interests coextensive with those of the Class. The interests of the representative Plaintiffs and the Class are identical so that the motive and inducement to protect and preserve these interests are the same for each.

32. The Class is represented by experienced counsel well qualified to handle this case. This lawsuit will be capably and vigorously pursued by the representative Plaintiffs and their counsel. In this case, a class action is superior to other methods for the fair and efficient adjudication of the controversy.

## IV.    BACKGROUND AND FACTUAL ALLEGATIONS

33. In addition to the allegations set forth herein, Plaintiffs incorporate by reference herein the factual allegations set out in certain "demand letters" sent to Defendants pursuant to Mass. Gen. Laws c. 93A, § 9, and attached hereto as **Exhibits A - F.**

34. Ford, Ford Canada and various component part manufacturers, to wit: Magna, Donnelly, Dortec and Intier, hereinafter collectively "the manufacturing defendants," have committed unfair and deceptive acts and practices in the conduct of their trade and commerce.

35. Ford, Ford Canada and the manufacturing defendants have committed unfair and deceptive acts and practices and have deceived the National Highway Transportation Safety Administration (NHTSA), purchasers of vehicles manufactured between November 1995 and the end of April, 2000, to wit: Ford F150 (various models) Model Years 1997 through 2000, Ford F250 (light duty) Model Years 1997 through 2000, Ford Expedition Model Years 1997 through 2000, and Ford F150 Super Crew Model Year 2000.

36. The wrongful conduct was designed to conceal a defect in the outside door handle systems and certain component parts of the outside door handle systems utilized in the above vehicles.

37. The defect in the outside door handle systems were such that the outside door handle systems are not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, "Door Locks and Door Retention Components" or Canadian

11

Federal Motor Vehicles Safety Standard (CMVSS) 206 at any time for Model Year 1997-2000 vehicles which were manufactured before April/May, 2000.

38. Federal law requires Ford, the manufacturing defendants and their employees to report and investigate potential safety defects.  Under the Motor Vehicle Safety Act (the "Safety Act"), 49 U.S.C. §30101 et seq., and the Transportation Recall Enhancement, Accountability, and Documentation Act (the "Tread Act"), 49 U.S.C. § 30170, Ford is required to recall and repair motor vehicle defects related to safety or which cause the vehicle to be non-compliant with the FMVSS.  If defects are discovered, NHTSA, as well as all known purchasers of the defective vehicles must be notified and a recall must be implemented.

39. Under the Safety Act, the Secretary of Transportation "shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(a). The Safety Act prohibits, with certain limited exceptions, the manufacture for sale or the delivery in interstate commerce of any vehicle that does not comply with the standards promulgated in accordance with the Act. 49 U.S.C. § 30112(a).

40. The Safety Act requires a manufacturer of motor vehicles to issue a certification to the distributor or dealer that the "vehicle or equipment complies with applicable motor vehicle safety standards."  49 U.S.C. § 30115.

41. The Safety Act further provides that manufacturers of motor vehicles "may not issue the certificate if, in exercising reasonable care, the person has reason to know the certificate is false or misleading in a material respect." 49 U.S.C. § 30115.

42. If a manufacturer learns that a vehicle contains a defect and that defect is related to safety or the vehicle does not comply with proper application of the FMVSS, the manufacturer must inform the Secretary of Transportation. 49 U.S.C. § 30118(c)(1) & (2).

43. If the Secretary of Transportation determines the vehicle is defective or noncompliant with the FMVSS, it will require the manufacturer to notify the owners, purchasers and dealers of the defect and require it to remedy the defect or noncompliance. 49 U.S.C. § 30118(b)(2)(A) & (B).

44. It is believed based on current information that the outside door handle systems their component parts were designed, manufactured and installed by Ford, Ford Canada, Magna, Donnelly, Dortec and/or Intier.

45. These companies were aware that the outside door handle systems had to comply with the FMVSS and specifically with FMVSS 206 for door latch retention and integrity.

46. Magna, Donnelly, Dortec and Intier knew or should have known that their respective designs and equipment they manufactured and/or installed, did not comply with FMVSS 206 and did not meet Ford's own internal standards.

47. Despite this, these entities failed to advise either NHTSA or the Plaintiffs of the defect in the outside door handle systems that were to be used in the Ford Vehicles.

48. On or about November 4, 1995, Ford and Ford Canada commenced production of the "JOB 1," a new light duty truck known as the Ford F-150 Truck. The vehicle would include all cab variations of the F-150, including Ford's light duty F-250

13

Truck. At the same time, Ford and Ford Canada commenced production of the Expeditions and 4-door Supercrew Cab. Subsequent to November 4, 1995, Ford and Ford Canada began to market, sell and distribute the aforementioned vehicles to consumers including but not limited to the United States and Canada. Ford and Ford Canada represented that the vehicles and their component parts were properly designed, were safe and complied with the FMVSS—all of the above-mentioned vehicles carry a certification label indicating that the vehicle conforms to all motor vehicles safety standards in effect when the vehicle was manufactured.

49. By October, 1995, Ford and Ford Canada knew or should have known that the door latch assembly was improperly designed and manufactured, and did not meet FMVSS 206.

50. For example, but without limitation, in or about October 1995, Ford conducted crash testing of a prototype of the vehicles. During the testing, it was observed that upon impact, the impacted side door would open, and after crash testing revealed that *both* impacted and non-impacted doors opened. As of that date, Ford and Ford Canada knew or should have known that the door latch assembly was unsafe and would expose their customers and their passengers to catastrophic injuries, including death, in the event of certain types of motor vehicle collisions.

51. Notwithstanding the above knowledge, Ford and Ford Canada continued to manufacture and market the vehicles for the next five years.

52. Ford and Ford Canada have repeatedly received credible information confirming the non-compliance and safety hazards associated with the defective outside door

14

handle systems over the last nine years from a variety of sources, including but not limited to, consumers, Transport Canada, and the manufacturing defendants.

53. The receipt of this information concerning the defective outside door handle systems obligated Ford and Ford Canada to report and warn the National Highway Transport Safety Association and consumers of the defective outside door handle systems and to replace those door latches with FMVSS and CMVSS 206 compliant door handle systems.

54. In or about August 1997, Transport Canada commenced testing on the Ford F-150 for fuel system integrity. During the testing, the passenger side door opened when the driver side door sustained an impact. Transport Canada notified Ford that the side door opened when there was an impact on the opposite door. In or about September 1997, Transport Canada invited Ford and Ford Canada to inspect the tested vehicle. Ford did inspect the tested vehicle and, at that time, removed the door handle mechanisms and took them with them.

55. Following notice of the unintended door opening by Transport Canada, Ford had its Critical Concern Review Group (hereinafter "CCRG") formally investigate the issue of the doors opening upon impact. The manufacturing defendants were involved in this investigation as well.

56. Ford and Ford Canada took no action to replace the non-compliant outside door handle systems in any of the affected vehicles, nor did it take any steps to warn consumers of the defective outside door handle systems.

57. In and around August and October 1997, Ford, Ford Canada and the manufacturing defendants further investigated the defects in the affected vehicles.

15

Donnelly, Dortec and the other manufacturing defendants were aware that component parts in the outside door handle systems did not comply with CMVSS or FMVSS 206, nor did they comply with Ford's worldwide internal guidelines.

58. In or about February 2000 an Ad Hoc Committee at Ford began an additional investigation into the defect. By this time, Ford and Ford Canada had further actual knowledge of the known safety related defects and had identified non-compliant component parts in the outside door handle systems of the vehicles. At this point in time, in excess of approximately 6,000,000 defective outside door handle systems were in vehicles that were on the road in Canada and the United States.

59. On or about March 6, 2000, a Ford engineering report acknowledged that the door handles did not comply with Federal guidelines, FMVSS 206. The report was based on testing and analysis conducted by Ford and the component part manufacturers—Donnelly, Dortec, Magna and Intier. The report concluded a recall campaign should be instituted.

60. Upon receipt of that report, the CCRG, the field review committee and Ford's office of general counsel further investigated these defects and made a business decision to avoid a recall by hiding the known safety-related defects from NHTSA, Transport Canada, Ford's consumers and the public, in an effort to limit Ford's financial liability.

61. In or about March 2000, Ford's senior executives prepared and presented a memorandum which described and identified a significant safety-related defect in the door handle hardware of the vehicles. The memo concluded that a safety-

related recall campaign should be instituted to fix these vehicles. Several weeks after the draft March 6, 2000 memo was released, Ford, in an effort to limit liability and hide the true nature of the consequences of the involved safety related defect, generated a second version of the memorandum dated March 21, 2000.

62. In this revision of the prior memo, Ford deleted all reference to potential accidents or injuries attributable to this defect, deleted references to the Expeditions, deleted all reference to "non-compliance," and reduced the number of affected vehicles from an estimated 3,000,000 down to an estimated 1,500,000 vehicles. At this time, however, Ford still concluded that a safety recall was necessary and began its own campaign process.

63. During this time, Ford evaluated the cost to it of issuing a recall.

64. On March 30, 2000 Ford attempted to obviate all reference to the known safety defects by generating a third version of the memorandum. In the version on this date, the language in both of the prior memos had been completely rewritten and all references to compliance with FMVSS had been deleted. The discussion of how the defect in the manufacturing process occurred had been removed and any reference to the number of involved vehicles and the need to do a NHTSA safety recall campaign was deleted from this memorandum. Ford cancelled the recall on March 30, 2000.

65. Between March 6, 2000 and March 30, 2000, Ford made the determination that a safety defect existed in its outside door handle systems, initiated a recall program and then cancelled the recall. During that time, Ford and the manufacturing

17

defendants engaged in a manipulation of internal data and NHTSA regulations to establish a fraudulent argument for FMVSS regulatory compliance.

66. The initial product specifications for the outside door handle systems prepared by Ford stated that the latch systems must be tested for strength, the integral part in FMVSS 206, utilizing the SAE J839 methodology. The SAE J839 methodology is the preferred method utilized to establish FMVSS 206 compliance.

67. Prior to March of 2000, the component part manufacturers were aware of Ford's internal strength testing requirement because Ford had used the component part manufacturers to establish compliance for outside door handle systems for the affected vehicles. The component part manufacturers always utilized the SAE J839 in performing the compliance work. However, the outside door handle systems had "passed" the SAE J839 tests done by the component part manufacturers during the compliance phase only because they had used the wrong number in their calculations of the strength of a spring in the outside door handle systems.

68. Ford and the component part manufacturers had established prior to March 3rd that the outside door handle systems did not conform and meet the SAE J839 test. Had NHTSA done an audit of the outside door handle system, it would have used the SAE J839 methodology. Ford and the component part manufacturers knew this and therefore had to justify cancellation of the campaign.

69. With this background Ford knew that it would have to include a regulatory compliance component in its justification for canceling the campaign to replace the door handle systems with FMVSS 206 complaint handles. A Ford engineer

18

utilized a 30 year-old methodology to establish the "straw" argument that the outside door handle systems were compliant with FMVSS 206. The method used by Ford in 2000 has never been used by Ford, prior to or since, and has never been referenced in an internal specification or instruction to component part manufacturers that performed the compliance work.

70. Ford and the component part manufacturers never informed NHTSA of their decision to utilize the 30 year-old test or inquired whether the methodology was appropriate.

71. Ford and the component part manufacturers never contacted NHTSA because they knew that the outside door handle systems did not pass the SAE J839 test, and thus did not comply with FMVSS 206, which could have caused NHTSA to perform an investigation into the outside door handle systems.

72. Ford, Ford Canada and the manufacturing defendants manipulated the data, internal specifications, federal rules, and violated commonly accepted practices in order to avoid the purchaser notification and recall requirements that non-compliance triggered.

73. On or about October 16, 2000, Ford prepared a closure memo regarding the safety-related defects of the vehicles. This memo discussed the field fix for Ford to replace the outside door handle systems with those that complied with FMVSS 206. In that Memo, the Ford team, estimating the cost of the field fix, recommended not to fix the outside door handles in the affected vehicles.

74. At that time, Ford decided not to notify NHTSA, despite their obligation to do so under the Safety Act, 49 U.S.C. § 30118(c)(1) & (2).

19

75. To date, consumers have not been notified and a recall has not been issued.

## FIRST CAUSE OF ACTION

**(Violation of Mass. Gen. Laws c. 93A, §§2, 9
Unfair Methods of Competition and Unfair or Deceptive Acts and Practices)**

76. Plaintiffs hereby adopt the allegations of paragraphs 1-75 and incorporate the
same herein by reference.

77. Defendants and/or their predecessors are/were engaged in trade or commerce.

78. Defendants individually and collectively committed unfair and deceptive acts and
practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen.
Laws c. 93A, §§ 2, 9, and particularly, but without limitation:

   a. Unfairly and deceptively permitting a known defective outside door
   handle system to be manufactured and installed into the vehicles which in
   turn endangered the lives and health of Plaintiffs and members of the
   proposed Class;

   b. Unfairly and deceptively disregarding information solely for the purpose
   of not having to issue a recall;

   c. Having actually knowledge that the outside door handle system
   components did not comply with CMVSS and FMVSS 206 and yet failing
   to disclose this information for the sole purpose of limiting their financial
   liability despite the fact that the defendants knew that the defect could
   result in serious injury and/or death;

   d. Unfairly and deceptively applying a national safety mark to the vehicles
   despite the fact that the vehicles did not comply with CMVSS and
   FMVSS 206, and fell well below internal guidelines;

e.  Unfairly and deceptively applying a national safety mark to the vehicles despite the fact that the defendants knew that the defect could result in serious injury and/or death;

f.  Unfairly and deceptively relying upon an antiquated and nonstandard method for testing the safety of the outside door handle system, despite the fact that defendants knew that this method was not approved and did not comply with their own internal standards;

g.  Unfairly and deceptively deciding not to recall the vehicles; and

h.  Violating Attorney General Regulations, including 940 CMR § 5.03(5), 940 CMR § 3.05(1) and 940 CMR § 3.08(2).

79. Defendants knew or should have known that these acts or practices were in violation of sections 2 and 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

80. Defendants used or employed these acts or practices in willful or knowing violation of sections 2 and 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

81. As a result of the unfair and deceptive conduct of Defendants, individually and collectively, the named Plaintiffs and the Class they seek to represent were injured in that they (1) own vehicles that are unsafe, (2) own vehicles that are worth less than their value were they to comply with all safety standards and (3) will incur the cost of repairing the vehicles to make them safe.

82. Plaintiffs and members of the proposed Class are entitled to compensatory damages from Defendants, and each of them, for the economic and non-economic

damages identified herein; and Defendants, and each of them, are liable to the

Plaintiffs and members of the proposed Class for multiple or punitive damages

predicated on the allegations set forth herein.

## SECOND CAUSE OF ACTION

### (Conspiracy And Concert of Action to Violate Mass. Gen. Laws c. 93A, §§2, 9)

83. Plaintiffs hereby adopt the allegations of paragraphs 1-82 and incorporate the

same herein by reference.

84. The conduct set forth above constitutes a conspiracy and concert of action to

violate the duties owed by Defendants to Plaintiffs and members of the proposed

Class under Mass. Gen. Laws c. 93A, §§ 2, 9.

85. The allegations herein prove that the Defendants joined forces, exchanged

information and resources and undertook unfair or deceptive acts or practices

which proximately caused the harm to the Plaintiffs and members of the proposed

Class, as set forth herein.

86. Defendants conspired to commit these unfair and deceptive acts or practices for

the purpose of wrongfully limiting their financial liability, knowing such conduct

would result in injury to Plaintiffs and members of the proposed Class who, as a

result, (1) own vehicles that are unsafe, (2) own vehicles that are worth less than

their value were they to comply with all safety standards and (3) will incur the

cost of repairing the vehicles to make them safe.

87. Defendants conspired among and between themselves to intentionally

misrepresent and suppress relevant information regarding their knowledge of the

defects in the outside door handle systems and to minimize the full nature and

22

extent of their financial liability, which resulted in injury to Plaintiffs and members of the proposed Class.

88. Defendants were aware of the potential dangers that could result from the defective outside door handle systems. The Defendants or their predecessors have actively conspired and acted in concert with each other to suppress the truth and knowledge concerning their liability for the defective outside door handle systems, and the potential for serious injury or death that could result from failure of the outside door handle systems.

89. The conduct of the Defendants was, has been, and is willful, knowing, and deliberate.

90. As a result of the unfair and deceptive conduct of the Defendants, individually and collectively, the named Plaintiffs and the Class they seek to represent were injured in that they (1) own vehicles that are unsafe, (2) own vehicles that are worth less than their value were they to comply with all safety standards and (3) will incur the cost of repairing the vehicles to make them safe.

91. The Plaintiffs and members of the proposed Class are entitled to compensatory damages from the Defendants, and each of them, for the economic and non-economic damages identified herein; and the Defendants, and each of them, are liable to the Plaintiffs and members of the proposed Class for multiple or punitive damages predicated on the allegations set forth herein.

## THIRD CAUSE OF ACTION

### (Breach of Express Warranty)

92. Plaintiffs hereby adopt the allegations of paragraphs 1- 91 and incorporate the same herein by reference.

93. Defendants expressly warranted that the vehicles, including the component parts in the outside door handle systems of those vehicles, were in compliance with CMVSS and FMVSS 206; a sticker affixed to the vehicles certifies and warrants this compliance.

94. Having knowledge of the defect in the outside door handle systems that resulted in non-compliance with CMVSS and FMVSS 206, defendants nonetheless certified and warranted that the vehicles complied with FMVSS 206 and affixed a sticker warranting compliance.

95. Defendants breached the express warranties made to Plaintiffs and members of the proposed class because the vehicles they own do not conform to the express warranties made by Defendants.

96. As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs and members of the proposed Class suffered and are entitled to recover damages.

## FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty)

97. Plaintiffs hereby adopt the allegations of paragraphs 1- 96 and incorporate the same herein by reference.

98. Defendants impliedly warranted that the vehicles, including the component parts in the outside door handle systems of those vehicles, were safe for their ordinary purpose and use and conformed to the promises of fact made on their label.

99. Having knowledge of the defect in the outside door handle systems that could result in the door opening unintentionally and that could result in serious injury or death, Defendants knew that the vehicles were not safe for their ordinary purpose and use and that they do not conform to the promises made on the label.

100.    Defendants breached the implied warranties made to Plaintiffs and members of the proposed Class because the vehicles they own are not safe for their ordinary purpose and use and do not conform to the promises made on the label.

101.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs and members of the proposed Class suffered and are entitled to recover damages.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

102.    Plaintiffs hereby adopt the allegations of paragraphs 1 - 101 and incorporate the same herein by reference.

103.    Defendants, through their wrongful conduct as described herein, have reaped substantial profits from the sale of the vehicles in Massachusetts.

104.    After analyzing the potential costs, Defendants refused to issue a recall and/or fund the cost of a field fix for the defects.  By not recalling and/or

25

repairing the defects in the outside door handle systems of the vehicles, the Defendants were unjustly enriched.

105.    As a result, Plaintiffs and members of the proposed Class (1) will be required to pay for replacement parts and labor and (2) own vehicles that are worth less than their value were they to comply with all safety standards.

106.    In the meanwhile, Defendants have profited and will continue to profit at Plaintiffs expense.

107.    In equity and good conscience, it would be unjust for Defendants to enrich themselves at the expense of Plaintiffs and members of the proposed Class.

108.    Plaintiffs and members of the proposed Class are entitled to damages from Defendants, and each of them, for the economic and non-economic damages identified herein, including disgorgement of profits made as a result of the injuries to Plaintiffs and members of the proposed Class; and Defendants, and each of them, are liable to the Plaintiffs and members of the proposed Class for multiple or punitive damages predicated on the allegations set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the proposed Class seek compensatory and multiple or punitive damages against all Defendants for participation in the violation of Mass. Gen. Laws c. 93A, §§ 2, 9 and breach of express and implied warranties as detailed herein.  Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

1.    Certification of the Class under Rule 23 of the Massachusetts Rules of Civil Procedure and Mass. Gen. Laws c. 93A, § 9(2) and appointment of Plaintiffs as representatives of the Class and their counsel as Class counsel;

26

2.  Compensatory damages for economic and non-economic damages identified herein;

3.   Multiple or punitive damages under Mass. Gen. Laws c. 93A, § 9;

4.  Disgorgement of profits;

5.  Prejudgment interest;

6.  Cost of investigation and suit;

7.  Reasonable attorney's fees; and

8.  Such other relief as the Court deems equitable and just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

DATED: _April 29 2005_

David C. Strouss, Esq. BBO# 546253
Kristen Marquis Fritz, Esq. BBO# 650886
**THORNTON & NAUMES**
100 Summer Street - 30th Floor
Boston, MA 02110
(617) 720-1333


AND

Frederick Jekel, Esq.
William Narwold, Esq.
Suzanne Lafleur Klok, Esq.
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA SEP 23 AM 10: 19
SOUTHERN DIVISION
J S.
H E

ROBERT JOHNSTON, et al.,

    Plaintiffs,

vs.                                            CV 04-J-2748-S

FORD MOTOR COMPANY,

    Defendant.                              ENTERED

                                  SEP 2 3 2004

## ORDER OF REMAND

    This matter is before the court on the defendant's notice of removal (doc. 1). The defendant, Ford Motor Company, removed this action from the Circuit Court of Jefferson County, Alabama pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441 asserting that "federal question jurisdiction exists over this action because [p]laintiffs' sole cause of action requires the Court to interpret a U.S. Federal Motor Vehicles Safety Standard and therefore implicates the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30118, *et seq.*" Notice of Removal at 1-2.

    Removal jurisdiction is governed by the well-pleaded complaint rule, which "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Moreover, removal jurisdiction is construed narrowly, and any doubts about jurisdiction are resolved in favor of the non-

1

3

removing party and as a general rule, "a case arises under federal law only if it is federal law that creates the cause of action." *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir.1996).

In this case, the plaintiffs have brought a state law breach of express warranty claim against defendant and have alleged the defendant made express warranties that the vehicles in question complied with the U.S. Federal Motor Vehicle Safety Standards (Complaint Count 1). However, the plaintiffs in this case do not assert any claim under federal law. [1]

The fact that the plaintiffs' state law claims may implicate certain provisions of the Motor Vehicle Safety Act ("MVSA") is not sufficient to create federal question jurisdiction. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813 (1983)("the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.") This is especially true in light of the fact that the MVSA does not create a private right of action. *See Nisbett v. Bridgestone Corp.*, 203 F.Supp.2d 1032, 1036 (S.D. Ind.2002) *See also, Campbell v. General Motors Corp.*, 19 F.Supp.2d 1260 (N.D. Ala.1998)(holding that the MVSA provides absolutely no private right of action

---

[1] In fact, the plaintiffs' complaint affirmatively disavows any federal claim and expressly states that the plaintiffs intent to raise and pursue only claims arising under state law (Complaint's Preliminary Statement).

2

for consumers). [2]

Furthermore, the facts of this case fit with those in *Merrill Dow* in which the Supreme Court held that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.' " *Merrill Dow*, 478 U.S. at 817. Accordingly, this court finds that there is no federal question jurisdiction in this case.

Having found that there is no federal question jurisdiction, this court finds that this court lacks subject matter jurisdiction to hear this case.

It is therefore **ORDERED** that this case be and hereby is **REMANDED** to the Circuit Court of Jefferson County, Alabama.

**DONE** and **ORDERED** this _____ 2 3 _____ day of September, 2004

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

---

[2] In *Campbell v. General Motors Corp.*, 19 F.Supp.2d 1260, 1274, another court in this district held that the National Highway Transportation Safety Administration controls the exclusive remedies under the MVSA. *see* 49 U.S. §§ 30121, 30163-65. The *Campbell* court continued that the National Highway Transportation Safety Administration is the "only entity that can order a recall or retrofit." *Id.* According to *Campbell*, "[n]othing in the Act gives this court jurisdiction over private parties to a civil suit, or over the subject matter of vehicle safety claims...[i]t is therefore clear that Congress never intended these types of disputes to be removable to federal court." *Id.*

3

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | |
|---|---|
| ROBERT JOHNSTON and PEGGY JOHNSTON, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. _____ |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441, Defendant Ford Motor Company ("Ford") hereby removes the state court action entitled *Robert Johnston and Peggy Johnston v. Ford Motor Co.*, Case No. OJ04-1076, filed in the Circuit Court of Jefferson County, Alabama on August 19, 2004. Ford was served with the Complaint in this action on August 19, 2004. Thus, this Notice of Removal is being timely filed within thirty days of service, as required by 28 U.S.C. § 1446(b). Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Ford is filed with this notice at Tab A. In support of removal, Ford states as follows:

### GROUNDS FOR REMOVAL

1.      There is federal jurisdiction over this removed action pursuant to 28 U.S.C. §1441 because this action could originally have been filed in this Court pursuant to 28 U.S.C. §1331. Federal question jurisdiction exists over this action because Plaintiffs' sole cause of action

requires the Court to interpret a U.S. Federal Motor Vehicles Safety Standard and therefore implicates the National Traffic and Motor Vehicle Safety Act, 49 U.S.C § 30118, *et seq.*

## FEDERAL QUESTION JURISDICTION

2.      The Complaint alleges that Ford "affixed" to various vehicles "the following express warranty: 'This vehicle conforms to all applicable federal motor vehicle safety standards in effect on the date of manufacture shown above.'" (Complaint ("Compl.") ¶ 14; *accord id.* ¶ 25.)

3.      In the Complaint's sole cause of action, Plaintiffs claim that Ford breached this express warranty, because certain Ford vehicles "do not conform to all U.S. Federal Motor Vehicle Safety Standards." (*Id.* ¶ 26; *accord id.* ¶ 15.)

4.      Specifically, Plaintiffs complain that the door latch assembly of these vehicles fails to comply with Federal Motor Vehicles Safety Standard 206. (*See id.* ¶¶ 16, 18.)

5.      Thus, for Plaintiffs to succeed on their breach-of-express-warranty claim, they must show that Ford violated Federal Motor Vehicles Safety Standard 206, 49 C.F.R. § 571.206, which was promulgated by the National Highway Traffic Safety Administration ("NHTSA") pursuant to the National Traffic and Motor Vehicle Safety Act. *See* 49 U.S.C. § 30111(a) (NHTSA has authority to "prescribe motor safety vehicle standards").

6.      Because the predicate issue underlying Plaintiffs' state law claim involves a substantial federal question – *i.e.,* interpretation of a federal motor vehicle safety standard – Plaintiffs' breach-of-express-warranty claim necessarily arises under federal law. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983) ("We have often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law"); *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 518-20 (11th

2

Cir. 2000) (federal question jurisdiction existed over a claim under the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, because the claim was premised on an automaker's alleged breach of a duty to disclose under the National Traffic and Motor Vehicle Safety Act); *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (federal jurisdiction existed over a breach-of-contract claim, because "resolution of the dispute require[d] the interpretation and application of the [federal Clean Air] Act to the contractual arrangement of the parties").

7.    In short, because Plaintiffs' sole cause of action arises under federal law, this Court has jurisdiction over this action under 28 U.S.C. §1331.

8.    Concurrent with the filing of this Notice of Removal, Ford is giving written notice of this Notice of Removal to the Circuit Court of Jefferson County, Alabama.

3

Dated:  September 20, 2004

Respectfully submitted,

_____
Gregory L. Schuck

OF COUNSEL:

**HUIE FERNAMBUCQ & STEWART, LLP**
Three Protective Center
2801 Highway 280 South
Suite 200
Birmingham, AL  35223
Telephone:   (205) 251-1193
Facsimile:   (205) 251-1256

John H. Beisner
John F. Niblock
Mel Andrew Schwing
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W., Suite 1000
Washington, D.C.  20006-4001
(202) 383-5300 – Telephone
(202) 383-5414 – Fax

ATTORNEYS    FOR    DEFENDANT    FORD
MOTOR COMPANY

4

## CERTIFICATE OF SERVICE

I hereby certify that a true, correct and complete copy of the foregoing **NOTICE OF**

**REMOVAL** has been served upon:

Timothy C. Davis
HENINGER, BURGE, VARGO, & DAVIS, LLP
2146 Highland Avenue
Birmingham, Alabama 35205

By placing a copy of in the U. S. Mail on **September 20, 2004.**

_____<br>Of Counsel

5

**EXHIBIT D**

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION


THOMAS HINOTE,
ANGELO MOULTRIE,
NICKOLAS WALKER, and
DONALD SMITH,
        Plaintiffs,

v.                                                      3:04cv338/MCR/MD

FORD MOTOR COMPANY,
FORD MOTOR COMPANY OF CANADA LIMITED,
MAGNA INTERNATIONAL INCORPORATED,
MAGNA DONNELLY CORPORATION,
DONNELLY CORPORATION, and
MAGNA DONNELLY INTERNATIONAL, INC.,
        Defendants.
_____/

### ORDER OF REMAND

      Defendant Ford Motor Company, joined by Defendants Magna Donnelly Corporation, Donnelly Corporation, and Magna Donnelly International (collectively, "Defendants") have filed a notice of removal in which they assert federal question jurisdiction.[1]  Presently before the Court is the motion to remand filed by Plaintiffs Thomas Hinote, Angelo Moultrie, Nickolas Walker, and Donald Smith ("Plaintiffs") (doc. 9), to which Defendants have responded (docs. 12, 13).[2]  For the reasons that follow, Plaintiffs' motion is granted and this case is remanded to the Circuit Court of Escambia County, Florida.

---

[1]  The notice of removal indicates that two Defendants, Ford Motor Company of Canada Limited and Magna International Incorporated ("MII"), have not been served.

[2]  Magna Donnelly Corporation, Donnelly Corporation, and Magna Donnelly International Incorporated have adopted the response to the motion to remand filed by Ford.  Although MII has not been served, it joins in adopting Ford's response.

**BACKGROUND**

Plaintiffs, individually and on behalf of the class members whom they seek to represent, allege in their complaint that Defendants have designed, manufactured, sold, and/or distributed certain vehicles with defective door latches. (Doc. 1, Exh. 2). Plaintiffs assert three causes of action: violation of Florida's Deceptive and Unfair Trade Practices Act (Count One); breach of express warranty (Count Two); and breach of implied warranty (Count Three). (Id.). Among other relief, Plaintiffs seek damages in the form of a court-supervised fund or program to finance vehicle inspections and to repair or replace any defective door latches. In their instant motion Plaintiffs contend that this case should be remanded pursuant to 28 U.S.C. § 1447(c) because Defendants filed their notice of removal outside the period of thirty days prescribed by 28 U.S.C. § 1446(b) and also because the case presents no federal question under 28 U.S.C. § 1331, thus depriving this Court of subject matter jurisdiction. Plaintiffs also seek an award of costs and attorneys' fees for Defendants' alleged improper removal of this case.

Defendants respond that federal question jurisdiction lies in this case for two reasons: (1) not only are Plaintiffs' claims predicated on a substantial question of federal law, i.e., whether the vehicles at issue complied with Federal Motor Vehicle Safety Standard ("FMVSS") 206, but also the resolution of this question implicates "a substantial federal interest"; and (2) the relief Plaintiffs seek is completely preempted by the National Traffic and Motor Vehicle Safety Act ("MVSA"), 49 U.S.C. § 30118, et seq. Defendants further assert that the notice of removal should not be deemed untimely filed because the court was inaccessible within the meaning of Fed.R.Civ.P. 6(a) due to conditions associated with Hurricanes Jeanne and Ivan. Moreover, even if the notice were deemed to have been filed one day late, the untimely filing should be excused due to the exceptional circumstances created by the storms and the lack of prejudice which has accrued to Plaintiffs. Defendants also submit that Plaintiffs' request for costs and fees should be rejected as specious.

Case No. 3:04cv338/MCR/MD

## DISCUSSION

The Court shall first address the timeliness issue, albeit briefly in light of its conclusion that remand is otherwise required for lack of jurisdiction.[3]   The parties do not dispute that the notice of removal was due to be filed no later than September 30, 2004. See 28 U.S.C. § 1446(b). Hurricane Ivan struck the Pensacola area on September 16, 2004, with devastating results.  Among other emergent conditions, residents faced severe transportation, power, and communications problems  – and did so for many weeks after September 16.  Such conditions forced the closure of the Pensacola court house until September 27.   Nevertheless, electronic filing remained available during the period of closure; in addition, the doors of the court house were open to the public on September 30. Thus the court was not inaccessible to Defendants prior to the deadline for filing their notice such that the "weather exception" of Fed.R.Civ.P. 6(a) should apply.  Nevertheless, in light of the extraordinarily difficult conditions in the Pensacola area in the aftermath of Hurricane Ivan from mid to late September 2004, as well as the lack of prejudice to Plaintiffs from the one-day late filing of Defendants' notice of removal, the Court finds that such untimely filing should be excused due to "exceptional circumstances." See Doe v. Kerwood, D.O., 969 F.2d 165, 169 (5th Cir. 1992) (stating that in determining timeliness of notice of removal "it is within the equitable power of the court to consider [ ] exceptional circumstances on a case-by-case basis.").[4]

---

[3] For the same reason, the Court need not address the fact that two of the Defendants have not been served, other than to note the following.  While it is well settled that in cases involving multiple defendants all of the defendants must consent to the removal of a case to federal court, see Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1049 (11th Cir. 2001), the failure to have been served at the time the notice of removal was filed falls into one of the recognized exceptions to the unanimity requirement. See Russell Corp. v. American Home Assurance Co., 264 F.3d 1040, 1043 (11th Cir. 2001).

[4] To the extent the Defendants' notice was delivered to the court house one day late in part or wholly due to the loss or lack of a mailing label, the Court nevertheless finds that exceptional circumstances exist such that the untimely filing should be excused in this instance.

Case No. 3:04cv338/MCR/MD

Next, the Court considers Defendants' arguments that subject matter jurisdiction lies due to the existence of a substantial federal question or complete preemption.

Any civil case filed in state court may be removed to federal court by the defendant if the case could have been brought originally in federal court. See 28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). A removing defendant has the burden of establishing both federal jurisdiction and compliance with the procedures for removal, as a matter of fact and law. See Leonard v. Enterprise Rent A Car, 279 F.3d 967, 972 (11th Cir. 2002). Removal jurisdiction based on a federal question is governed by the well-pleaded complaint rule, under which rule a case does not arise under federal law unless a federal question is presented on the face of the plaintiff's complaint. See Caterpillar, 482 U.S. at 392. Nevertheless, the doctrine of "complete preemption" provides a narrow exception to the general well-pleaded complaint rule.[5] Id.; see also BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 854 (11th Cir. 1999). This doctrine applies when the preemptive force of a federal statute is so "extraordinary" that it constructively "converts an ordinary common-law complaint into one stating a federal claim for purposes of the well pleaded complaint rule." Caterpillar, 482 U.S. at 392. To find complete preemption a court must determine whether in the particular statute "Congress has clearly manifested an intent to make causes of action . . . removable to federal court." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); see also BLAB T.V., 182 F.3d at 857 (complete preemption analysis focuses upon evaluating Congress' intent, which is the touchstone of federal court removal jurisdiction).

---

[5] Complete preemption is a "narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims. It looks beyond the complaint to determine if the suit is, in reality, purely a creature of federal law, even if state law would provide a cause of action in the absence of the federal law, . . . thus creating the federal question jurisdiction requisite to removal to federal courts." Geddes v. Am. Airlines, Inc., 321 F.3d 1349, 1352-53 (11th Cir. 2003) (internal punctuation and citations omitted), cert. denied, 540 U.S. 946, 124 S.Ct. 386, 157 L.Ed.2d 276 (2003).

Case No. 3:04cv338/MCR/MD

In <u>Merrell Dow Pharmaceuticals, Inc., v. Thompson</u>, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the Supreme Court addressed the issue of whether violations of the Federal Food, Drug, and Cosmetic Act ("FDCA") presented a "substantial federal question."[6] The Court emphasized that there was no federal cause of action for violations of the FDCA in what it described as the "well settled framework for evaluating whether a federal cause of action lies." <u>Id.</u> at 811. The Court further noted that Congress' omission of a private right of action in the statute was "tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." <u>Id.</u> at 814. Where Congress has not provided a private federal remedy for violation of a statute, it would "flout" or at least "undermine" congressional intent for the courts to provide such a remedy. <u>Id.</u> at 812. Thus, in order for a state-law claim to raise a substantial federal question, federal law must be an essential element of the claim, and the federal right involved "must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another." <u>Dunlap v. G & L Holding Group Inc.</u>, 381 F.3d 1285, 1290 (11th Cir. 2004) (quoting <u>Mobil Oil Corp. v. Coastal Petroleum Co.</u>, 671 F.2d 419, 422 (11th Cir. 1982)). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." <u>Id.</u> (quoting <u>Merrell Dow</u>, 478 U.S. at 813).

In support of their argument that a substantial federal question exists in the instant matter, Defendants rely heavily on <u>Ayres v. General Motors Corp.</u>, 234 F.3d 514 (11th Cir. 2000). In that case the plaintiffs brought state-law RICO claims which raised the issue whether violation of the MVSA constituted a violation of federal mail and wire fraud statutes. The Eleventh Circuit concluded that because resolution of this issue was a

---

[6] The plaintiffs in <u>Merrell Dow</u> had brought suit in state court against the manufacturer of the drug Bendectin, alleging that the manufacturer's violation of the FDCA constituted negligence. Damages were sought on common-law theories of negligence, breach of warranty, strict liability, fraud, gross negligence and alleged "misbranding" of the drug. <u>Id.</u> at 804.

necessary element of the plaintiffs' state-law claims, a substantial question of federal law existed such that removal jurisdiction was proper. In contrast, in the instant case Plaintiffs' claims do not present questions involving the interaction between federal statutes or any other questions – including those with respect to construing or applying FMVSS 206 – which may properly be characterized as "substantial" enough to create subject matter jurisdiction. See Dunlap, 381 F.3d at 1291-92 (stating that "[t]he fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction – the implicated federal issue must be substantial") (emphasis in original). See also Jairath v. Dyer, 154 F.3d 1280, 1283 (11th Cir. 1998) (finding that, although proof of violation of the Americans with Disabilities Act was a necessary element of plaintiff's state-law discrimination claim, the issue raised an insufficiently substantial federal question); and City of Huntsville v. City of Madison, 24 F.3d 169, 174 (11th Cir. 1994) (concluding that interpretation of the Tennessee Valley Authority Act as a necessary element of the plaintiffs' state-law cause of action was not enough to permit federal question jurisdiction). See also Nisbett v. Bridgestone Corp., 203 F.Supp.2d 1032 (S.D. Ind. 2002) (indicating that even if plaintiffs' state-law claims implicated certain provisions of the MVSA, this was not sufficient to create federal question jurisdiction, especially in light of the fact that statute does not create a private right of action); and Johnson v. Ford Motor Co., CV-04-J-2748-S (N.D.Ala. Sept. 23, 2004).

Defendants also assert that the Court should exercise jurisdiction over this case in light of the existence of a "substantial interest" in the uniform application of FMVSS 206. Defendants point primarily to Ormet Corp v. Ohio Power Co., 98 F.3d 799 (4th Cir. 1996), for this proposition but they do not cite any binding Eleventh Circuit precedent in support of it.[7] Moreover, the Court notes that in Merrell Dow the Supreme Court rejected the

---

[7] The Court notes that the First Circuit recently declined to reach the same result as the Ormet Court did in a case involving a similar issue under the Clean Water Act. The First Circuit concluded that the federal issue was not substantial enough to confer removal jurisdiction. See Templeton Bd. of Sewer Comm'rs v. Am.

seemingly similar argument that federal removal jurisdiction was justified because of "a powerful federal interest in seeing that the FDCA is given uniform interpretations." <u>Merrell Dow</u>, 478 U.S. at 815-16. In any event, having found no substantial federal question based on the fact that Plaintiffs' claims may implicate interpreting FMVSS 206, the Court likewise finds no substantial federal interest in the uniform application of this standard such that removal jurisdiction is conferred.

In order for Defendants to prevail under either the substantial federal question doctrine or the complete preemption doctrine they must show that the MVSA created the rights Plaintiffs seek to vindicate, as well as created a private cause of action to enforce such rights. Defendants have failed, however, to demonstrate that Congress clearly intended for removal jurisdiction to be available under this statute with respect to the common law claims and state statutory claim asserted by Plaintiffs. Contrary to Defendants' assertions, Plaintiffs do not in effect demand a court-ordered recall of vehicles with defective latches; rather, the complaint seeks relief in the form of money damages so that Plaintiffs may pay for their own vehicle inspections and repairs. Defendants simply have not shown that Congress has preempted this area of law so thoroughly that Plaintiffs' claims necessarily are federal in character and thus the doctrine of complete preemption applies. <u>See</u> <u>Caterpillar</u>, 482 U.S. at 392; <u>see also</u> <u>Merrell Dow</u>, 478 U.S. at 814 (holding federal jurisdiction over state claims based on federal law is never proper where the federal statute involved provides no private cause of action); <u>Campbell v. General Motors Corp.</u>, 19 F.Supp.2d 1260 (N.D.Ala. 1998) (holding that the MVSA provides no private right of action); and <u>Carden v. Bridgestone/Firestone, Inc.</u>, 2000 WL 33520302,*4 (stating that "[n]othing in the [MVSA] gives the Court jurisdiction over the claims raised in this action" and that "the congressional intent reflected in the [MVSA] negates any possibility of complete preemption").

---

<u>Tissue Mills of Mass.</u>, Inc., 352 F.3d 33, 39-41 (1st Cir. 2003).

Case No. 3:04cv338/MCR/MD

Accordingly, for the foregoing reasons the Court finds that Defendants have not established a right to removal in the instant case, either on the ground of a substantial, disputed federal question or the ground of complete preemption.

Remaining is the matter of attorneys' fees and costs. Pursuant to section 1447(c), upon ordering remand this Court may, in its discretion, award attorney fees to the party opposing removal for fees incurred as a result of the removal. See Diebel v. S.B. Trucking Co., 262 F.Supp.2d 1319, 1333 (M.D.Fla. 2003). Plaintiffs are not required to prove bad faith removal under §1447(c) in order to be awarded attorney's fees; nevertheless, the trial court need not grant an award of attorneys' fees whenever an effort to remove fails. See Miranti v. Lee, 3 F.3d 925, 928 (5th Cir. 1993). In the instant case, the Court finds that Defendants' decision to attempt removal was an objectively reasonable one as there is some basis in the law for their arguments and there is no binding Eleventh Circuit law to the contrary. Diebel, 262 F.Supp.2d at 1333 (declining to award fees where defendant's petition was not without some basis in law). Therefore, the Court denies Plaintiffs' request for attorneys' fees.

Accordingly, it is ORDERED:

1.    Plaintiffs' motion to remand (doc. 9) is GRANTED, to the extent that the above entitled action is hereby REMANDED to the Circuit Court for Escambia County, Florida. The motion is DENIED, to the extent Plaintiffs seek an award of attorneys' fees and costs.

2.    The Clerk is directed to send a certified copy of this order to the Clerk of the Circuit Court for Escambia County, Florida.

**DONE and ORDERED** on this 9th day of February, 2005.

s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

Case No. 3:04cv338/MCR/MD

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF FLORIDA

THOMAS HINOTE, ANGELO MOULTRIE,
NICKOLAS WALKER, and DONALD SMITH,

      Plaintiffs,

      v.

FORD MOTOR COMPANY, FORD MOTOR
COMPANY OF CANADA LIMITED, MAGNA
INTERNATIONAL INCORPORATED,
MAGNA DONNELLY CORPORATION,
DONNELLY CORPORATION, and MAGNA
DONNELLY INTERNATIONAL, INC.,

      Defendant.

Civil Action No. 3:04cv338/MCR/MD

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

04 OCT -1 AM 11: 07

FILED

### NOTICE OF REMOVAL

      Pursuant to 28 U.S.C. § 1441, Defendant Ford Motor Company ("Ford") hereby removes

the state court action entitled *Thomas Hinote et al. v. Ford Motor Co.*, Case No. 2004 CA 1658,

filed in the Circuit Court of Escambia County, Alabama on August 27, 2004. Ford was served

with the Complaint in this action on August 31, 2004. Thus, this Notice of Removal is being

timely filed within thirty days of service, as required by 28 U.S.C. § 1446(b). Pursuant to 28

U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Ford is filed with this

notice at Tab A.[1] In support of removal, Ford states as follows:

### GROUNDS FOR REMOVAL

---

[1] Due to Hurricane Ivan, the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida has been closed from September 14, 2004 through October 1, 2004. Ford, served with this lawsuit on August 31, 2004, has been thusfar prevented from obtaining the actual state court case file. However, This closure has prevented Ford from obtaining the actual state court case file. However, Ford attaches herewith a copy of all papers, process, pleadings and papers served upon Ford and by Ford.

ORL#616044.1


R# 111097
$ 150

1.    Federal jurisdiction exists over this removed action pursuant to 28 U.S.C. § 1441 because this action could originally have been filed in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Federal question jurisdiction exists over this action not only because an alleged violation of a Federal Motor Vehicle Safety Standard is an essential element of Plaintiffs' causes of action, the proof of which involves the resolution of a substantial, disputed question of federal law, *see* National Traffic and Motor Vehicle Safety Act ("the National Safety Act"), 49 U.S.C § 30118, *et seq.*, but also because Plaintiffs' request for a court-supervised recall is completely preempted by the National Safety Act.

2.    28 U.S.C. §1441(b) only requires that served Defendants join in the Removal. Defendants Magna Donnelly Corporation, Donnelly Corporation and Magna Donnelly International, Inc. all of which were served with the Summons and Complaint on August 31, 2004, and has given its consent to remand, expressly reserving its affirmative defenses, jurisdictional or otherwise. (attached hereto at Tab B). Ford informed and believes that none of the remaining Defendants have been served.

### FEDERAL QUESTION JURISDICTION

### SUBSTANTIAL FEDERAL QUESTION

3.    The gravamen of Plaintiffs' Class Action Complaint ("Complaint") is the allegation that a door latch system and door handle mechanism used in various Ford vehicles does not comply with an applicable Federal Motor Vehicle Safety Standard ("FMVSS"), namely FMVSS 206. (*See* Complaint ("Compl.") ¶ 26 ("Defendants knew or should have known that the door latch system and door handle system had to comply with the U.S. Federal Motor Vehicle Safety Standards . . . specifically known as FMVSS 206 for door latch retention and

integrity."); *id.* ¶ 30 ("None of the Plaintiffs' vehicles' originally installed door latches comply with FMVSS 206.").)

4.      Throughout the Complaint, Plaintiffs repeatedly cite Defendants' alleged failure to comply with FMVSS 206 as the basis for their various causes of action. (*See, e.g.*, Compl. ¶¶ 25, 26, 32, 42, 43, 46, 62(c), 62(d), 62(e), 62(f), 62(k), 62(o), 62(q), 63(c), 63(f), 64(b), 64(j), 64(l).)

5.      Specifically, in Count I, Plaintiffs allege that Defendants violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), because the statute punishes anyone who "violates 'any law, statute, rule, regulation, or ordinance which proscribes unfair , deceptive, or unconscionable acts or practices." (Id. ¶ 92 (quoting Fla. Stat. ch. 501.203(3)(c)). According to the Complaint, Defendants violated this proscription, when they allegedly "designed, manufactured, supplied and/or sold the Subject Ford Vehicles containing defective door latches in violation of FMVSS 206 and [Canadian Motor Vehicle Safety Standards] in exchange for payment, and in a cover-up scheme to save hundreds of millions of dollars." (*Id.* ¶ 93.)

6.      Likewise, in Count II for Breach of Express Warranty, Plaintiffs claim that "Defendants expressly warranted that the Subject Ford Vehicles which would include component parts therein including the door latches were in compliance with FMVSS 206." (*Id.* ¶ 100; *see also id.* ¶ 101 ("The Subject Ford Vehicles display a sticker wherein Ford and Ford Canada certify and promise and warrant that the vehicle conforms to all applicable Federal Motor Vehicle Safety Standards in effect on the date of manufacture.").) According to the Complaint, Defendants breached that warranty by allegedly failing to comply with FMVSS 206. (*See id.* ¶ 102 ("Despite having the said knowledge of the defect in the door latch and components, the

defendants certified and warranted that the Subject Ford Vehicles conformed to FMVSS 206.");

*id.* ¶ 107 ("The Subject ford Vehicles and the defective door latches therein do not conform to

these express representations.").)

7.    Thus, for Plaintiffs to succeed on either their FDUTPA claim or their breach-of-

express-warranty claim, they must show that Ford violated FMVSS 206, *i.e.*, 49 C.F.R.

§ 571.206, which was promulgated by the National Highway Traffic Safety Administration

("NHTSA") pursuant to the National Safety Act.  *See* 49 U.S.C. § 30111(a) (NHTSA has

authority to "prescribe motor safety vehicle standards").

8.    Because the predicate issue underlying these state law claims involves a

substantial federal question – *i.e.*, interpretation of a federal motor vehicle safety standard –

Plaintiffs' FDUTPA and breach-of-express-warranty claims necessarily arise under federal law.

*See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983) ("We have often

held that a case 'arose under' federal law where the vindication of a right under state law

necessarily turned on some construction of federal law"); *Ayres v. Gen. Motors Corp.*, 234 F.3d

514, 518-20 (11th Cir. 2000) (federal question jurisdiction existed over a claim under the

Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, where case required

decision whether automobile manufacturer's alleged breach of disclosure duty under National

Traffic and Motor Vehicle Safety Act constituted federal mail and wire fraud); *Ormet Corp. v.

Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (federal jurisdiction existed over a breach-of-

contract claim, because "resolution of the dispute require[d] the interpretation and application of

the [federal Clean Air] Act to the contractual arrangement of the parties").

9.    Insofar as at least one of Plaintiffs' causes of actions necessarily arises under

federal law, this Court has jurisdiction over all of their claims under 28 U.S.C. § 1331 and 28

U.S.C. § 1367.

## COMPLETE PREEMPTION

10.    In the Complaint, Plaintiffs claim that "Defendants failed to warn and/or notify

the National Highway Transport Safety Association . . . and the public . . . of the defect in the

door latch and door handle . . . ."  (Compl. ¶ 26.)

11.    Accordingly, the Complaint asserts that "Plaintiffs seek relief in the form of a

court ordered inspection and repair fund/program to assist Plaintiffs and the Class members in

the identification and replacement of the defective door latches and the latch assembly

mechanisms, and an emergency notice to the Class regarding the dangers presented by the

defective door latches and the latch assembly mechanisms, and the need for immediate

inspection, repair, and/or replacement of such defective door latch."  (Compl. ¶ 73; *accord*

Prayer(d) (asking the court for a "court-supervised fund/program, paid for by Defendants, to

finance vehicle inspection and repair/replacement of the defective door latches").)

12.    There is no state law duty for a manufacturer to recall vehicles.  *See E.R. Squibb*

*& Sons, Inc. v. Stickney*, 274 So. 2d 898, 907-08 (Fla. Dist. Ct. App. 1973) (manufacturer had no

state law duty to recall product or advise that its use be discontinued despite instances of product

failure).  Rather, the only duty to recall arises under the National Safety Act.  *See Ford Motor*

*Co. v. Magill*, 698 So. 2d 1244, 1245 (Fla. Dist. Ct. App. 1997) ("NHTSA has accorded present

owners of the vehicles a remedy to secure a correction of the problem to their vehicle, and

Florida courts should defer to NHTSA"); *see also Gregory v. Cincinnati, Inc.*, 538 N.W.2d 325,

334 (Mich. 1995) ("[P]olicymakers have explicitly delegated such authority [to order recalls] to

administrative agencies.") (citing the National Safety Act); *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 861 P.2d 1299, 1315 (Kan. 1993) ("We reason that product recalls are properly the business of administrative agencies as suggested by the federal statutes that expressly delegate recall authority.") (citing the National Safety Act). Accordingly, Plaintiffs' request for a mandatory vehicle recall is completely preempted by the National Safety Act. *See Namovicz v. Cooper Tire & Rubber Co.*, No. CIV. A. WMN-00-3676, 2001 WL 327886, at *2 (D. Md. Feb. 26, 2001).

     13.    Where "Congress . . . so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character," a federal court can exercise jurisdiction over a removed complaint even if it purports to raise only state law claims. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *accord Stern v. IBM*, 326 F.3d 1367, 1371 (11th Cir. 2003). Similarly, here, the Court can assert jurisdiction over Plaintiffs' Class Action Complaint.

     14.    Concurrent with the filing of this Notice of Removal, Ford is giving written notice of this Notice of Removal to the Circuit Court of Escambia County, Florida.

Dated:  September 29, 2004          Respectfully submitted,

David E. Cannella
CARLTON, FIELDS, P.A.
Florida Bar No. 983837
450 South Orange Avenue, Suite 500
Orlando, Florida 32801
(407) 849-0300
(407) 648-9099 (fax)
ATTORNEY FOR DEFENDANT FORD MOTOR
COMPANY

**OF COUNSEL:**

John H. Beisner
John F. Niblock
Mel Andrew Schwing
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., Suite 1000
Washington, D.C. 20006-4001
(202) 383-5300 – Telephone
(202) 383-5414 – Fax

## CERTIFICATE OF SERVICE

I, _DAVID CANNELA,_ hereby certify that a true, correct and complete copy of the

foregoing Notice of Removal was served upon the following counsel of record at the address

listed below via first class mail, on this 29th day of September, 2004:

> Neil D. Overholtz, Esq.
> AYLSTOCK, WITKIN & SASSER, P.L.C.
> 55 Baybridge Drive
> Gulf Breeze, FL 32561

Attorney

**EXHIBIT F**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| RICHARD D. DAY, CHARLES W. DEASON, JAMES L. HALL, and HAYDEN C. MILLER, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:04CV00990 |
| FORD MOTOR COMPANY, MAGNA DONNELLY CORPORATION, INTIER AUTOMOTIVE CLOSURES OF AMERICA, INC., and INTIER AUTOMOTIVE SEATING OF AMERICA, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**FILED**
FEB - 9 2005

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on (1) the motion of Defendant Ford Motor Company ("Ford"), with the consent of the other Defendants, to stay proceedings in this action; and (2) the motion of Plaintiffs to remand this action to the General Court of Justice, Superior Court Division, Guilford County, North Carolina. (Pleading Nos. 10 and 12.) A third motion, Defendant Ford's motion to dismiss the Amended Complaint is also pending but will not be reached at this time. (Pleading No. 14.) For reasons set out below, it will be

ordered that Ford's motion to stay is denied, and it will be recommended that Plaintiffs'
motion to remand be granted.

### Procedural Background

On September 8, 2004, Plaintiffs filed in state court a class action complaint against
the Defendants, and, on September 28, filed an Amended Complaint. Defendants were
served with both the original Complaint and the Amended Complaint on or after
September 30. On November 1, all Defendants joined in a Notice of Removal, removing the
Amended Complaint to this court. As grounds for removal, Defendants asserted that both
federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28
U.S.C. § 1332 exist over this action because:

> [A]n alleged violation of a Federal Motor Vehicle Safety Standard is an
> essential element of Plaintiffs' sole cause of action, the proof of which
> involves the resolution of a substantial, disputed question of federal law, *see*
> National Traffic and Motor Vehicle Safety Act (the "National Safety Act"), 49
> U.S.C. § 30118, *et seq.*, and because the Amended Complaint can be read to
> seek a court-supervised recall, a request that is completely preempted by the
> National Safety Act. Moreover, federal diversity jurisdiction exists over the
> action because it is an action between citizens of different states and the
> amount in controversy exceeds the sum of $75,000.

(Pleading No. 1, Notice of Removal ¶ 1.)

On November 17, Defendant Ford filed a "Notice of Filing of Motion for Transfer and
Consolidation for Pretrial Proceedings." (Pleading No. 9.) Therein, Ford gave notice that
it had filed a motion with the Judicial Panel on Multidistrict Litigation ("the MDL panel")
for an order transferring this action and any other similar class action to a single district, and

consolidating those actions for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. Ford identified this action and a class action pending in the Northern District of Florida as the two nearly identical actions that should be consolidated for MDL treatment. On November 19, Defendants filed their motion to stay these proceedings pending a determination by the MDL panel on the request for transfer and consolidation. (Pleading No. 10.)

Four days later, on November 23, Plaintiffs filed a "Motion to Remand," contending that this court lacks subject-matter jurisdiction over the Amended Complaint under either 28 U.S.C. § 1331 or § 1332. (Pleading No. 12.) Finally, on November 29, Ford filed a motion to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. (Pleading No. 14.) The parties have fully briefed their positions, and the motions are ready for a ruling.

<u>The Amended Complaint</u>

In the Amended Complaint, Plaintiffs, individually and on behalf of class members, allege only one cause of action: violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). Plaintiffs bring this action seeking to represent all persons or entities in North Carolina who own 1997-2000 Ford F-150 series or F-250 Light Duty trucks or who own the same model years Ford Expeditions, Lincoln Navigators, or Lincoln Blackwoods (the "Ford Vehicles"). The named Defendants are Ford Motor Company, Magna Donnelly Corporation, Intier Automotive Closures of America, Inc., and Intier

Automotive Seating of America, Inc. In an introductory paragraph, the Amended Complaint alleges that:

> Defendant Ford has known at least as early as August, 1997 that the Ford Vehicles were and are defective, unreasonably dangerous, and posed and pose a significant health and safety risk to the public and consumers because of defective door latches that prevent doors from remaining latched on impact.

(Pleading No. 1, Ex. A, Am. Compl. ¶ 13.) Plaintiffs specifically plead that there is no federal jurisdiction because, although there is diversity of citizenship among the parties, "the amount in controversy for any individual does not exceed $75,000.00." (Am. Compl. ¶ 18.)

Plaintiffs' factual allegations include the following:

(1)    Ford obtained Federal Motor Vehicle Safety Standard ("FMVSS") certifications required pursuant to FMVSS 206 (Door Latch Retention and Integrity) and the National Highway Transportation Safety Administration ("NHTSA") for the outside door latch assembly and handle;

(2)    Ford marketed the Ford Vehicles representing that the vehicles and their components were properly designed, safe, and complied with all applicable FMVSSs;

(3)    On or about August 11, 1997, Transport Canada (the Canadian government's motor vehicle safety agency) notified Ford of a "safety defect and concern" in that during a Transport Canada test, and upon impact with a moving test barrier, the passenger's side door opened;

(4)    Thereafter, Ford took no effort to repair the Ford Vehicles;

-4-

(5)    Ford conducted various tests which revealed that certain safety-related door hardware components did not comply with Ford's own internal safety standards, its testing specification, or the FMVSS;

(6)    Additionally, Ford reviewed various supplier reports and conducted crash testing that showed doors opening in crashes and that Ford Vehicles did not comply with FMVSS 206;

(7)    Since February 2000, Ford has had actual knowledge that door latches did not conform to internal safety standards and the FMVSS;

(8)    On information and belief, Ford stopped using the defective door latches and installed compliant door latches beginning in May of 2000;

(9)    Other Defendants in this action manufactured and assembled the defective door handles and knew or should have known they were defective and unsafe; and

(10)    After Ford knew or should have known about the defective door latches, it failed to warn consumers, and represented that the latches were reliable.

(Am. Compl. ¶¶ 21-29, 40-43, and 48-49.)

The Amended Complaint alleges violation of North Carolina's UDTPA, N.C. Gen. Stat. § 75-1.1 *et seq.* No federal cause of action is pleaded. For relief, Plaintiffs ask for compensatory damages for the costs of repair or replacement of the defective door latches, for treble damages under the UDTPA, and for costs and attorneys' fees.

## Defendants' Motion to Stay

The Court first turns to Defendants' motion to stay this action to await a ruling by the MDL panel on Ford's request for consolidation of this and one other "door latch" case for MDL treatment. The motion to stay will be denied. Pending before this Court is also Plaintiffs' motion to remand based upon lack of federal subject-matter jurisdiction. It is axiomatic that a federal court has jurisdiction to determine whether it has subject-matter jurisdiction. *See Shannon v. Shannon*, 965 F.2d 542, 545 (7th Cir. 1992). This Court believes that it is the better practice to rule on jurisdictional issues at the outset, even before MDL treatment is considered. *Accord Farkas v. Bridgestone/Firestone, Inc.*, 113 F. Supp. 2d 1107, 1115 n.8 (W.D. Ky. 2000); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, Inc.*, 48 F. Supp. 2d 37, 39 (D.D.C. 1999); *Stern v. Mut. Life Ins. Co. of N.Y.*, 968 F.Supp. 637, 639 (N.D. Ala. 1997); and *McGrew v. Schering-Plough Corp.*, No. CIV.A. 01-2311-6TV, 2001 WL 950790, at *3 (D. Kan. Aug. 6, 2001).

Accordingly, **IT IS ORDERED** that the motion to stay is **DENIED**, and the Court will proceed to entertain Plaintiffs' motion to remand.

## Plaintiffs' Motion to Remand

In their motion to remand, Plaintiffs contend that this court lacks subject-matter jurisdiction over the Amended Complaint. Plaintiffs say there is neither diversity jurisdiction nor federal question jurisdiction under the circumstances of this case. Upon consideration of the argument of the parties, the Court agrees with Plaintiffs.

-6-

Defendants, as the parties seeking removal, bear the burden of establishing federal jurisdiction. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns, [the federal courts] must strictly construe removal jurisdiction," and if federal jurisdiction is doubtful, remand is necessary. *Id.*

It is well established that the plaintiff is the master of his or her complaint, and the "well-pleaded" complaint rule determines the question of jurisdiction. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). If the plaintiff's claim is not federally created, and diversity jurisdiction does not lie, removal is improper unless resolution of the claim necessarily turns on a substantial question of federal law or the claim is "really" a federal law claim. *See Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust for Southern California*, 463 U.S. 1, 13 (1983), *superseded by statute on other grounds*, 28 U.S.C. § 1441(e). In order for a state-law claim to raise a substantial question of federal law, "[federal] law must be an essential element of the plaintiff's claim; [and] the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another." *See Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1982). State law claims completely preempted by federal law are removable, but the class of cases to which complete preemption applies is exceedingly narrow. The Supreme Court has identified only three federal statutes that completely preempt related state-law claims: § 301 of the Labor

Management Relations Act, 29 U.S.C. § 185; § 1132 of the Employee Retirement Income

Security Act of 1974, 29 U.S.C. § 1001 *et seq*; and §§ 85 and 86 of the National Bank Act,

12 U.S.C. § 21 *et seq*. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-11 (2003).

Defendants argue for both diversity jurisdiction and federal question jurisdiction in

this case. *See* 28 U.S.C. §§ 1331 and 1332. They contend there is diversity jurisdiction over

the Amended Complaint because the parties are completely diverse in citizenship and more

that $75,000 is in controversy under Plaintiffs' claim. Defendants state that the pecuniary

impact on them will undoubtedly exceed $75,000 on any Plaintiff's claim because,

"according to the Amended Complaint, Plaintiffs seek equitable relief tantamount to a court-

supervised recall," and a statewide recall by Ford would cost Ford millions of dollars.

(Notice of Removal ¶ 22-25).

Defendants argue for federal question jurisdiction under two theories. They contend

that Plaintiffs' state-law claim for violation of North Carolina's UDTPA raises a substantial

federal question since "[t]he gravamen of Plaintiffs' Amended Complaint is the allegation

that a door latch system and door handle mechanism used in various Ford vehicles does not

comply with federal safety standards, and more specifically with Federal Motor Vehicle

Safety Standard ("FMVSS") 206." Defendants conclude that Plaintiffs' claim necessarily

arises under federal law since the claim relies upon the resolution of a substantial federal

question – alleged violation by Defendants of FMVSS 206. (Notice of Removal ¶¶ 3-8.)

As an alternate basis for federal question jurisdiction, Defendants argue that because the Amended Complaint requests "such other and further relief, at law and in equity which the court may deem just and proper," the Amended Complaint appears to seek equitable relief in the form of a court-supervised recall of Ford vehicles. (*See* Notice of Removal ¶ 9; Am. Compl. at 14, Prayer for Relief ¶ 5.) Defendants assert that the National Safety Act grants to the National Highway Traffic Safety Administration ("NHTSA") the exclusive authority to order such recalls. *See* 49 U.S.C. §§ 30118-30120; *see also Ford Motor Co. v. Magill*, 698 So. 2d 1244, 1245 (Fla. Dist. Ct. App. 1997) ("NHTSA has accorded present owners of the vehicles a remedy to secure a correction of the problem to their vehicle, and Florida courts should defer to NHTSA."). Accordingly, Defendants reason that Plaintiffs' request for a mandatory vehicle recall is completely preempted by the National Safety Act. Defendants conclude that because Congress has preempted the field with regard to vehicle recalls, this federal court has jurisdiction over the removed Amended Complaint even though it purports to raise only a state-law claim.

Defendants' first and third arguments for subject-matter jurisdiction may be dismissed out-of-hand. Both arguments rely upon Defendants' characterization of the Amended Complaint as requesting equitable relief in the form of a court-supervised recall of Ford vehicles. This characterization is unreasonable and without basis. Indeed, Defendants have constructed the issue of "recall" almost out of thin air, relying solely on Plaintiffs' formulaic language in closing their complaint, wherein they request "such other and further relief, at

-9-

law and in equity which the court may deem just and proper." This is the thinnest of reeds; this boilerplate prayer for relief is simply not a request for a recall.

A review of the Amended Complaint demonstrates that Plaintiffs have not, in fact, requested a recall of Ford vehicles, but have instead requested a specific compensatory damage remedy (the costs of repair or replacement) for each class member who participates in class action procedures in this action. Defendants cannot convert Plaintiffs' well-pleaded complaint into something that it is not for the mere convenience of their jurisdictional argument. Because construction of the Amended Complaint as requesting a recall of vehicles is unreasonable and unfounded, but is a necessary underpinning of Defendants' argument for diversity jurisdiction and for federal question jurisdiction based upon preemption, those two jurisdictional arguments may be dismissed without further consideration.

Defendants' remaining argument for federal question jurisdiction is that "jurisdiction exists under 28 U.S.C. § 1331 because the 'central allegation' of plaintiffs' First Amended Complaint is that the vehicles at issue violate Federal Motor Vehicle Safety Standard 206, thereby raising a substantial question of federal law." (Pleading No. 20, Ford's Opp. to Mot. to Remand at 2.) This argument has recently been rejected in a "door-latch" case indistinguishable from the case now before this court.

In *Johnston v. Ford Motor Co.*, No. CV 04-J-2748-S, slip op. (N.D. Ala. Sept. 23, 2004) (Pleading No. 13, Pls.' Br. in Supp. of Mot. to Remand, Ex. A, Order of Remand), the district court remanded to the Alabama state courts a class action complaint removed to

-10-

federal court by Ford on grounds of asserted federal question jurisdiction. The complaint in

*Johnston* alleged that Ford affixed to various vehicles the following express warranty: "This

vehicle conforms to all applicable federal motor vehicle safety standards in effect on the date

of manufacture shown above." (Pls.' Br., Ex. C, Notice of Removal at 2.) Specifically, the

plaintiffs in *Johnston* complained that the door latch assembly of the Ford vehicles failed to

comply with FMVSS 206. They brought only a claim under state law for breach of express

warranty. The district court found no basis for the exercise of federal jurisdiction, reasoning

that:

> The fact that the plaintiffs' state law claims may implicate certain
> provisions of the Motor Vehicle Safety Act ("MVSA") is not sufficient to
> create federal question jurisdiction. *See Merrell Dow Pharmaceuticals, Inc.*
> *v. Thompson*, 478 U.S. 804, 813 (1983)("the mere presence of a federal issue
> in a state cause of action does not automatically confer federal-question
> jurisdiction.") This is especially true in light of the fact that the MVSA does
> not create a private right of action. *See Nisbett v. Bridgestone Corp.*, 203
> F. Supp. 2d 1032, 1036 (S.D. Ind. 2002) *See also, Campbell v. General Motors*
> *Corp.*, 19 F. Supp. 2d 1260 (N.D. Ala. 1998)(holding that the MVSA provides
> absolutely no private right of action for consumers).
>
> Furthermore, the facts of this case fit with those in *Merrell Dow* in
> which the Supreme Court held that "a complaint alleging a violation of a
> federal statute as an element of a state cause of action, when Congress has
> determined there should be no private, federal cause of action for the violation,
> does not state a claim 'arising under the Constitution, laws or treaties of the
> United States.'" *Merrell Dow*, 478 U.S. at 817. Accordingly, this court finds
> that there is no federal question jurisdiction in this case.

*Johnston*, slip op. at 2-3 (footnote omitted).

The reasoning in *Johnston* is fully applicable under the facts of the case at bar, and

the Court finds *Johnston* to be persuasive authority. In fact, under the Amended Complaint

filed by Plaintiffs in this case, failure to comply with FMVSS 206 is only one of several

defaults of the Defendants alleged by Plaintiffs, whereas in *Johnston* it was the sole default.

Here, Plaintiffs allege that Defendants knew that the Ford vehicles in question were unsafe

as a result of crash tests conducted by Transport Canada. Plaintiffs also allege that in 1997

Ford and its suppliers conducted various tests on the door latches and knew that safety-

related components of the assembly did not comply with Ford's internal standards or with

the testing specification it was using. And Plaintiffs further allege that Ford and its suppliers

reviewed various supplier records and conducted testing in 2000 that showed doors opening

in crash tests. (Am. Compl. ¶¶ 23-28.) No federal issues are raised by these allegations, yet

they may serve to fully support and make out Plaintiffs' state-law UDTPA claim. Under

these circumstances, it cannot be fairly said that the Amended Complaint "turns on a

substantial, disputed question of federal law." *Franchise Tax Bd. of California*, 463 U.S. at

27-28. Accordingly, Defendants have not met their burden to show federal jurisdiction over

the Amended Complaint, and this action should be remanded to the North Carolina state

courts. In its discretion, the Court should deny Plaintiffs' request for costs and attorneys'

fees incurred by reason of Defendants' removal of this action.

### Conclusion

For reasons set forth above, **IT IS ORDERED** that Defendants' motion to stay

(Pleading No. 10) is **DENIED**; and **IT IS RECOMMENDED** that Plaintiffs' motion to

remand (Pleading No. 12) be granted.  In view of remand, the Court should not reach Ford's

Rule 12(b)(6) motion to dismiss. (Pleading No. 14).


P./Trevor Sharp, U.S. Magistrate Judge


February 9th, 2005