IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joseph Iannacchino,<br>Victor Marchese, and<br>Soledad Berrios,<br>Individually and as<br>  Representatives of a Proposed Class,<br><br>                    Plaintiffs,<br><br>v.<br><br>Ford Motor Company,<br>Ford Motor Company of Canada, Ltd.,<br>Magna Donnelly Corporation, Individually<br>  And d/b/a Donnelly Corp. and as successor<br>  By merger to Donnelly Corp.,<br>Intier Automotive Seating of America, Inc.,<br>  Individually and d/b/a Dortec Industries,<br>And<br>Intier Automotive Closures of America, Inc.,<br>  Individually and d/b/a Dortec Industries,<br><br>                    Defendants. | Civil Action No. 1:05-CV-11141-RCL |

## FORD'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

COME NOW Defendants Ford Motor Company and Ford Motor Company of Canada,

Ltd. (collectively, "Ford") and submit this Opposition to Plaintiffs' Motion to Remand and

hereby request that the Court deny Plaintiffs' Motion to Remand.

## INTRODUCTION

Ford's removal of Plaintiffs' action to this Court under 28 U.S.C. § 1441 was proper

based on two grounds. *First*, federal question jurisdiction exists under 28 U.S.C. § 1331 because

the central allegation of Plaintiffs' Amended Complaint that the vehicles at issue violate Federal

Motor Vehicle Safety Standard ("FMVSS") 206 raises a substantial issue of federal law. *See*

*Grable & Sons Metal Prods. Inc., v. Darue Eng'g & Mfg.*, ___ U.S. ___, 2005 WL 1383604

(June 13, 2005) (recognizing federal jurisdiction may exist where a substantial and disputed

federal issue is raised even in the absence of a federal claim); *see also Franchise Tax Bd. v.

Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983) ("We have often held that a case 'arose

under' federal law where the vindication of a right under state law necessarily turned on some

construction of federal law.").  **Second**, diversity jurisdiction exists under 28 U.S.C. § 1332

pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, 14

(2005), because this action has been pled as a putative class action, there is complete diversity

between the parties, and the amount in controversy for this matter exceeds $5,000,000.  28

U.S.C. § 1332(d)(2).  Although Plaintiffs tried to elude the provisions of CAFA by filing their

Original Complaint three days before its enactment on February 18, 2005, Plaintiffs' Amended

Complaint, filed after the enactment of this remedial statute, asserts a new cause of action that

seeks a different form of relief and is based upon a separate and new allegation.  Therefore, for

purposes of CAFA, this action commenced upon the filing of the Amended Complaint, and

CAFA's provisions expanding federal jurisdiction over class actions apply to this lawsuit.

Accordingly, Plaintiffs' remand motion must be denied.

## ARGUMENT

I.     **PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE FEDERAL
       QUESTION JURISDICTION EXISTS.**

       Federal question jurisdiction exists where "'the plaintiff's right to relief necessarily

depends on resolution of a substantial question of federal law.'"  *Rossello-Gonzalez v. Calderon-

Serra*, 398 F.3d 1, 12 (1st Cir. 2004) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation

Trust*, 463 U.S. 1, 27-28 (1983)).  In a just-published opinion, the Supreme Court clarified and

expressly affirmed that federal jurisdiction may lie where a federal issue is embedded in state

law claims and rejected the notion that a private right of action under the implicated federal

statute is required for substantial federal question jurisdiction to exist.  *See Grable*, 2005 WL

1383604.  The Court explained that when confronted with federal issues embedded in state law

claims, the question facing the court in deciding jurisdiction is, "does a state law claim

necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum

may entertain without disturbing any congressionally approved balance of federal and state

judicial responsibilities."  *Id.* at *4.  The Court rejected the view that its prior decision, *Merrell*

*Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), mandates the existence of a

federal cause of action in order for federal question jurisdiction to lie.  *See id.* at *6-7.

A.     **Federal Jurisdiction Exists Where State Law Claims Raise A Substantial**
       **And Disputed Federal Issue, Even In The Absence Of A Federal Cause Of**
       **Action.**

In *Grable*, the Supreme Court distinguished between cases where a federal cause of

action is pled and cases involving "federal 'arising-under' jurisdiction."  2005 WL 1383604, at

*3-4.  Emphasizing that it has "recognized for nearly 100 years that in certain cases federal

question jurisdiction will lie over state-law claims that implicate significant federal issues," the

Court asserted that federal jurisdiction will exist, regardless of whether any federal cause of

action is pled or could be pled, when there is a substantial, contested federal issue "indicating a

serious federal interest in claiming the advantages thought to be inherent in the federal forum."

*Id.* at *3-4.  In this reaffirmation of federal "arising-under" jurisdiction, the Court held that an

important consideration is not just whether the federal issue is substantial and contested, but also

whether the line between congressionally approved state and federal jurisdiction will be upset.

*See id.*

Applying these principles, the Supreme Court determined that the case before it – a suit

to quiet title to land obtained at a federal tax sale – warranted federal jurisdiction.  At issue was

26 U.S.C. § 6335, which requires the IRS to give notice prior to seizing property to satisfy tax delinquency. *See id.* at *3. The taxpayer's claim to superior title was premised on the IRS's failure to give adequate notice under the statute. *See id.* at *5. The Court concluded there was federal jurisdiction since whether the taxpayer "was given notice within the meaning of the federal statute is . . . an essential element of its quiet title claim and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." *Id.* at *5. Revisiting its holding in *Merrell Dow*, the Court emphasized that the fact that there was no federal cause of action for the taxpayer's claims did not matter: federal question jurisdiction still existed. *See id.* at *6-7.

Nevertheless, Plaintiffs argue that the presence of a federal issue is not sufficient to confer federal jurisdiction. *See* Pls.' Mem. in Supp. of Mot. to Remand ("Pls.' Remand Mem.") at 8 ("[U]nder *Merrell Dow*, the presence of federal issues in Plaintiffs' Complaint does not confer federal question jurisdiction."); *id.* at 10 ("To find that the mere presence of federal issues in the First Amended Complaint (where all causes of action arise under Massachusetts law) confers federal question jurisdiction would be to stretch the limits of jurisdiction and in doing so reach a result contrary to the intent of Congress."). As supposed support for this stance, Plaintiffs point to three cases with similar allegations in which courts have ordered or recommended remand.[1] *See Johnston v. Ford Motor Co.*, No. CV 04-J-2748-S, slip op. (N.D. Ala. Sept. 23, 2004) (Pls.' Remand Mem. Ex. B); Order of Remand, *Hinote v. Ford Motor Co.*, Case No. 3:04cv338/MCR/MD, (N.D. Fl. Sept. 23, 2004) (Pls.' Remand Mem. Ex. D); Order and Recommendation of United States Magistrate Judge, *Richard D. Day et al. v. Ford Motor Co., et al.*, Case No. 1:04CV00990 (M.D.N.C. February 9, 2005) (Pls.' Remand Mem. Ex. F).

---

[1] There has never been a final remand order in *Day, et al. v. Ford Motor Co., et al.*, No. 1:04CV00990 (M.D.N.C.). The *Day* Order is merely a recommendation by a magistrate judge, which the federal court has not adopted to date – over five months since that recommendation was issued.

The orders in those cases, however, misconstrued *Merrell Dow* by placing undue emphasis on language in that opinion, which suggested that federal "arising under" jurisdiction only reaches to cases where a federal statute provided for a private right of action. This reading of *Merrell Dow* inappropriately limits the scope of "arising under" jurisdiction, as governing First Circuit authorities already recognize and as the Court's recent decision in *Grable* now clarifies beyond any doubt.

In each of the orders, the courts relied heavily on the erroneous belief that *Merrell Dow* held (1) that the presence of a federal issue does not confer federal jurisdiction and (2) that federal jurisdiction based upon the interpretation of a federal statute required that the statute in question provide for a private right of action. In *Johnston,* for example, the court reasoned:

> The fact that the plaintiffs' state law claims may implicate certain provisions of the Motor Vehicle Safety Act ("MVSA") is not sufficient to create federal question jurisdiction. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813 (1986) ("the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.") This is especially true in light of the fact that the MVSA does not create a private right of action. *See Nisbett v. Bridgestone Corp.*, 203 F. Supp. 2d 1032, 1036 (S.D. Ind. 2002) [sic] *See also, Campbell v. General Motors Corp.*, 19 F. Supp. 2d 1260 (N.D. Ala.1998) (holding that MVSA provides absolutely no private right of action for consumers).

*Johnston*, slip op. at 2. Quoting the language above and "find[ing] Johnston to be persuasive authority," the magistrate judge in *Day* concluded that federal jurisdiction was absent, thereby perpetuating the same faulty interpretation of Merrell Dow that was used in *Johnston*. *Day* Order at 11-12. Similarly, the *Hinote* court found remand appropriate, only because, in its view, "[i]n order for Defendants to prevail under either the substantial federal question doctrine or the complete preemption doctrine they must show that the MVSA created the rights Plaintiffs seek to vindicate, as well as created a private right of action to enforce such rights." *Hinote* Order at 7.

*Grable* rejected the rationale adopted by those three courts when it limited *Merrell Dow* and held that a private right of action under the pertinent federal statute is ***not*** necessary for federal question jurisdiction. The Court explained:

> *Merrell Dow* should be read in its entirety as treating the absence of a federal private action as evidence relevant to, ***but not dispositive of***, the "sensitive judgments about congressional intent" that § 1331 requires. . . .The [*Merrell Dow*] Court saw the missing cause of action not as a federal door key, always required, but as a missing welcome mat, required in the circumstances where exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. . . . [A] comparable analysis yields a different jurisdictional conclusion in this case. Although Congress also indicated ambivalence in this case by providing ***no private right of action*** to Grable, it is the rare state quiet title action that involves contested issues of federal law. . . .Consequently, jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation. Given the absence of threatening structural consequences and the clear interest the Government, its buyers, and its delinquents have in the availability of a federal forum, there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim.

*Grable*, 2005 WL 1383604, at *6-7 (emphasis added). Now that *Grable* has clarified the holding of *Merrell Dow*, it is clear that the orders in *Johnston*, *Hinote* and *Day* were flawed. Conversely, it is just as clear that this case is properly in federal court and should not be remanded.

Even without *Grable*, the motion to remand should be denied, because this Circuit has already had the foresight to adopt the so-called "federal ingredient" doctrine. *See Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 12 (1st Cir. 2004) (emphasizing that the so-called "federal ingredient" doctrine "remains vibrant in this circuit"). Presciently anticipating the holding of *Grable*, the First Circuit has held that "'federal ingredient' jurisdiction . . . permits removal of a well pleaded claim sounding in state law which necessarily requires resolution of a substantial question of federal law." *Metheny v. Becker*, 352 F.3d 458, 460 (1st Cir. 2003)

(citation omitted).  While Plaintiffs criticize the "federal ingredient" doctrine as "unclear" and "controversial," Pls.' Remand Mem. at 8, the Supreme Court's opinion in *Grable* quashes such criticism by clarifying that substantial federal question jurisdiction need not be restricted to only those claims where a federal question appears on the face of the complaint.  Rather, where claims raise a substantial and disputed issue that necessarily requires resolution of a substantial federal question, as in the present case, it is now hornbook law that substantial federal question jurisdiction exists.

### B.   Plaintiffs' Claims Are Predicated On A Substantial Question Of Federal Law.

Plaintiffs' claims fall squarely within the parameters established by the Court in *Grable* for federal question jurisdiction.  All of the claims hinge on one core allegation – that the door handle mechanisms in the vehicles at issue did not comply with federal safety standards, and more specifically with Federal Motor Vehicle Safety Standard ("FMVSS") 206.  *See* Am. Compl. ¶ 37 ("The defect in the outside door handle systems were such that the outside door handle systems are not compliant with Federal Motor Vehicle Safety Standard (FMVSS) 206, 'Door Locks and Door Retention Components' or Canadian Federal Motor Vehicles Safety Standard (CMVSS) 206 at any time for Model Year 1997-2000 vehicles which were manufactured before April, 2000.").  This allegation raises a substantial and disputed federal issue – specifically, the interpretation of FMVSS 206 – that is dispositive as to all of Plaintiffs' claims in this case.  Further, this issue is one that a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities while advancing important governmental interests.

Each of the five counts brought in the Complaint turns on the existence of a defect in the subject vehicles.  *See* Am. Compl. ¶¶ 76-108.  And whether a defect existed, in turn, hinges on

whether the door latches of those vehicles complied with FMVSS 206.  *See* Am. Compl. ¶ 37.

Put another way, Plaintiffs have alleged that Defendant is liable *because* the vehicle at issue does

not comply with FMVSS 206.  In order to assess liability under *any* of Plaintiffs' claims, this

Court must therefore determine if the door handles complied with FMVSS 206.  Accordingly,

because the Court's interpretation of FMVSS 206 and subsequent decision whether the subject

vehicles complied with this federal regulation will be dispositive of each and every one of

Plaintiffs' claims, this federal issue is substantial and federal question jurisdiction is justified.

*See Grable*, 2005 WL 1383604, at *7 (interchanging dispositive with substantial and stating that

"there is no good reason to shirk from federal jurisdiction over the dispositive and contested

federal issue at the heart of the state-law title claim.").   Notwithstanding Plaintiffs' arguments to

the contrary, it is clear that resolution of Plaintiffs' claims *necessarily* requires resolution of a

substantial federal issue.  *See* Pls.' Remand Mem. at 8-10; *see also Rossello-Gonzalez*, 398 F.3d

at 12  ("[A] case arises under federal law for purposes of removal when 'the plaintiff's right to

relief necessarily depends on resolution of a substantial question of federal law.'") (quoting

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).  Indeed, there

is no other way to resolve Plaintiffs' claims than by interpreting FMVSS 206.

     Not only is the interpretation of FMVSS 206 a substantial issue in this litigation, but it is

also "actually disputed," as the *Grable* Court noted is necessary for federal jurisdiction.  *See*

*Grable*, 2005 WL 1383604, at *4.  The gravamen of all of Plaintiffs' allegations is that the door

latches in the subject vehicles did not comply with FMVSS 206.  Whether those door latches

complied or not turns on the meaning of FMVSS 206, and what constitutes compliance under the

regulation.  The issue is clearly in dispute.  For example, in the Amended Complaint, Plaintiffs

allege that Ford used an alternative compliance test to test the door handle mechanisms and that

this alternative test did not comply with FMVSS 206.  *See* Am. Compl. ¶ 69.  The only way that

the Court can evaluate this allegation and all others made by Plaintiffs in the Amended

Complaint regarding compliance with the federal regulation is by reference to FMVSS 206 and

an interpretation of that federal regulation itself.

### C.    Strong Governmental Interests Exist In The Uniform Application Of Federal Motor Vehicle Safety Standards In A Federal Forum.

The federal issue here also implicates strong national interests with respect to the federal

traffic safety laws that are best vindicated in federal court.  *Grable*, 2005 WL 1383604, at *5, *7.

The Federal Motor Vehicle Safety Standards that have been promulgated pursuant to the

National Safety Act create a federal regime whose stability and efficiency necessitate federal

jurisdiction in a case such as this.  Congress passed the National Safety Act in 1966, based upon

a perceived need for "a law establishing binding Federal vehicle safety standards."  S. Rep. No.

89-1301 at 2 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2709, 2712.  The statute was "intended to

result in uniformity of standards so that the public as well as industry will be guided by one set

of criteria rather than by a multiplicity of diverse standards."  H.R. Rep. 1776, 89th Cong., 2d

Sess. 17 (1966); *see also* S. Rep. No. 1301, 89th Cong., 2d Sess. 12, *reprinted in* 1966

U.S.C.C.A.N. 2709, 2720 ("The centralized, mass production, high volume character of the

motor vehicle manufacturing industry in the United States requires that motor vehicle safety

standards be not only strong and adequately enforced, but that they be uniform throughout the

country.").  Accordingly, it replaced the inconsistent regime of the several States with an

elaborate federal regime overseen by the Secretary of Transportation, through its delegate, the

National Highway Traffic Safety Administration ("NHTSA").  *See id.* ("While the contribution

of the several States to automobile safety has been significant, and justifies securing to the States

a consultative role in the setting of standards, the primary responsibility for regulating the

national automotive manufacturing industry must fall squarely upon the Federal Government.").

Foremost among NHTSA's delegated responsibilities is the authority to "prescribe motor vehicle

safety standards." 49 U.S.C. § 30111(a). The National Safety Act expressly identifies the

factors that NHTSA is required to consider in promulgating these standards. *See* 49 U.S.C. §

30111(b).

By passing the National Safety Act, Congress expressed a strong federal interest in "the

stability and efficiency of a federal statutory regime" to regulate automotive safety. State-by-

state variations in the interpretation of Federal Motor Vehicle Safety Standards, such as FMVSS

206, could undermine the efficacy of the comprehensive federal regime for oversight of the

automotive industry that was created when Congress passed the National Safety Act in 1966. In

*Wood v. General Motors Corporation*, 865 F.2d 395, 412 (1st Cir. 1988), the U.S. Court of

Appeals for the First Circuit recognized this strong governmental interest in uniformity

embodied within the National Safety Act, when it held that FMVSS 208, a federal regulation

dealing with air bag requirements, preempted a common law products liability claim:

> Congress, in enacting the Safety Act, set up a clear division of authority between
> the states and the federal government. . . .This division of authority between state
> and federal government was part of Congress's chosen method for implementing
> the Safety Act. Congress believed that for the federal standards to be effective,
> they had to be uniform throughout the country.

*Id.* at 12 (citing S. Rep. No. 1301, 89th Cong., 2d Sess. 12, *reprinted in* 1966 U.S.C.C.A.N.

2709, 2720); *see also Garcia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 298 (7th Cir. 1997)

("The Safety Act, in order that it might achieve its primary purpose of reducing traffic injuries

and fatalities, also had the objective of establishing uniform national safety standards and

adequate enforcement of those standards, as the legislative history indicates."). As in *Wood*,

federal jurisdiction is appropriate in cases such as this one where liability is premised on non-

compliance with federal traffic safety regulations, in order to avoid disparate rules and results between varying state jurisdictions. *See also Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861 (2000) (tort action under state law based on lack of an airbag preempted because it would stand as an obstacle to federal objectives).

### D.  Plaintiffs' Claims Involve A Rare Federal Issue That Will Not Upset The Balance Between State And Federal Jurisdiction.

Recognizing federal jurisdiction in this case does not mean that the doors of the federal court will be opened to garden-variety lawsuits seeking damages from accidents caused by alleged motor vehicle defects. *Grable*, 2005 WL 1383604, at *4 ("Because arising-under jurisdiction to hear state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction."). In contrast with the typical case involving an alleged statutory or regulatory violation, this is not a case where Plaintiffs assert that non-compliance with a regulation is mere evidence of negligence, or even that it constitutes negligence per se. *See, e.g., Swift v. United States*, 866 F.2d 507, 508 (1st Cir. 1989) ("In Massachusetts, violating a safety statute does not, as a general rule, constitute negligence per se. Nevertheless, such a violation can be evidence of negligence. In other words, proof that a statute has been violated constitutes some evidence of negligence . . . .") (citations omitted). Rather, Plaintiffs' claims go much further.  Plaintiffs are alleging that ***because*** the door handle mechanisms did not comply with FMVSS 206, they are defective.  In essence, the defect is the alleged non-compliance itself.  Under Plaintiffs' theory, if the door handle mechanisms on the subject vehicles complied with FMVSS 206, there is no basis for liability in this case.  Plaintiffs have not pled any alternative theory as to Defendants' liability other than

that Defendants are liable due to the door handle mechanisms' alleged noncompliance.  Nowhere in the Amended Complaint do Plaintiffs allege any independent basis for the existence of a defect apart from the issue of compliance with FMVSS 206.

Therefore, the sole issue in this case, and one that is not likely to arise in other contexts, is the meaning of FMVSS 206.  This case represents a unique and extremely narrow subclass of products liability cases, where the resolution of the meaning of a federal safety standard will dispose of the core issue in the entire case.  Based on the allegations in the Amended Complaint, a determination that the vehicles at issue complied with FMVSS 206 leaves no further inquiry. Therefore, the balance between state and federal court jurisdiction will not be upset by conferring federal jurisdiction in this case.  *See Grable*, 2005 WL 1383604, at *4 ("Because arising under jurisdiction always raises the possibility of upsetting the state-federal line drawn . . . by Congress . . . there must always be an assessment of any disruptive portent in exercising federal jurisdiction.").  Indeed, there is a substantial federal interest in the interpretation of federal safety standards.  NHTSA's statutorily-defined role includes the enforcement of federal safety standards, and if it concludes that vehicles on the road do not comply with federal standards or have a safety defect, it is authorized to order a recall and repair or replacement of the offending component.  *See* 49 U.S.C. §§ 30118, 30120.  Because compliance with FMVSS 208 is the central issue in this case and because of the significant governmental interest implicated by its uniform resolution, this Court should recognize that federal issue jurisdiction exists pursuant to the ruling in *Grable*.

## II.    PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE DIVERSITY JURISDICTION EXISTS IN THIS CASE.

### A.    The Provisions Of CAFA Apply To This Action.

On February 18, 2005, the Class Action Fairness Act of 2005 ("CAFA") was signed into

law by President George W. Bush. *See* Pub. L. No. 109-2, 119 Stat. 4, 14 (2005). Pursuant to its

terms, CAFA "appl[ies] to any civil action commenced on or after the date of enactment of this

Act." *Id.* In order to avoid the provisions of this statute, which expanded the scope of federal

jurisdiction over class actions, Plaintiffs filed their Original Complaint in this action on February

15, 2005 – just three days before CAFA became effective – alleging that Defendants violated the

Massachusetts Consumer Protection Act and were liable for civil conspiracy, breach of express

warranty, and breach of implied warranty. For over two months, Plaintiffs chose not to serve

Defendants with the Complaint.

On April 29, 2005, still having not served Defendants with the Original Complaint,

Plaintiffs filed an Amended Complaint. The Amended Complaint brought a new cause of action

against Defendants for unjust enrichment. *See* Am. Compl. ¶¶ 102-08. Unlike the four causes of

action in the Original Complaint, which simply seek monetary damages from Defendants for

supposed injuries caused by the subject vehicles' alleged noncompliance with FMVSS 206,

Plaintiffs' unjust enrichment claim asks the Court to exercise its equitable powers and force

Defendants to disgorge their profits from the sale of the subject vehicles because they "refused to

issue a recall and/or fund the cost of a field fix for the defects." *Id.* ¶ 14. To support this new

cause of action, Plaintiffs also added a new factual allegation to their Amended Complaint,

specifically that Ford, in a 2000 memorandum, after "estimating the cost of the field fix,

recommended not to fix the outside door handles that affected the vehicles." Am. Compl. ¶ 73.

According to precedent of this Court, an amended complaint, which raises a new cause

of action supported by new factual allegations, does not "relate back" to the original complaint

under Rule 15 of the Federal Rules of Civil Procedure, but instead supersedes the new complaint.

*See New Bank of New England, N.A. v. Tritek Communications, Inc.*, 143 F.R.D. 13, 17 (D.

Mass. 1991) ("Where the amended complaint . . . asserts a different action, the amended

complaint supersedes the original and should serve as the Court's basis for determining

jurisdiction."); *cf. Benjelloun v. Robbins* (*In re Robbins*), 178 B.R. 299, 305 (Bankr. D. Mass.

1995) ("Amendment of a complaint to assert a new cause of action is the equivalent, for statute

of limitation purposes, to the filing of a new complaint on that cause of action.") (citing

*O'Loughlin v. Nat'l R.R. Passenger Corp.,* 928 F.2d 24 (1st Cir. 1991)).  Likewise, because

Plaintiffs' Amended Complaint asserted a new cause of action, seeking a new form of relief and

based on a new factual allegation, the commencement date of this action for the purpose of

CAFA does not "relate back," but instead is April 29, 2005 – the date on which Plaintiffs filed

their Amended Complaint.  *See New Bank of New England*, 143 F.R.D. at 18 (deeming an action

to have been commenced with an amended complaint for the basis of determining subject matter

jurisdiction because the amended complaint alleged new causes of action that sought new types

of relief).  The only circuit court that has addressed this issue agrees:

> [A] new claim for relief (a new "cause of action" in state practice), the addition of
> a new defendant, or any other step sufficiently distinct that courts would treat it as
> independent for limitations purposes, could well commence a new piece of
> litigation for federal purposes even if it bears an old docket number for state
> purposes. . . .We imagine . . .that a similar approach will apply under [CAFA],
> perhaps modeled on Fed.R.Civ.P. 15(c), which specifies when a claim relates
> back to the original complaint (and hence is treated as part of the original suit)
> and when it is sufficiently independent of the original contentions that it must be
> treated as fresh litigation.

*Knudsen v. Liberty Mutual Ins. Co.*, ___ F.3d ___, 2005 WL 1389059 at *2 (7th Cir. April 29,

2005) (Easterbrook, J.) (citations omitted).  Accordingly, as this action, in effect, "commenced"

when the Amended Complaint was filed on April 29, 2005 and therefore after the enactment of

CAFA on February 18, 2005, the provisions of that reform statute are applicable to this litigation.

Plaintiffs disagree, claiming that their Amended Complaint should relate back to the

Original Complaint under either Federal Rule of Civil Procedure 15(c) or Massachusetts Rule of

Civil Procedure 15(c),[2] because "[t]he cause of action for unjust enrichment is based almost

entirely on the conduct outlined in the original complaint with the exception of the single factual

allegation that was added." Pls.' Remand Mem. at 17. Even a cursory reading of Plaintiffs'

Original Complaint reveals the flawed nature of this argument. Plaintiffs' new claim for unjust

enrichment arises from Defendants' alleged "refus[al] to issue a recall and/or fund the cost of a

field fix," Am. Compl. ¶ 104, whereas the Original Complaint dealt with Defendants' alleged

design, manufacture and marketing of the vehicles at issue. *See* Compl. ¶¶ 33-74. Notably

absent from the Original Complaint is any mention of this alleged decision not to institute a

recall. And one could not deduce, and hence be put on notice, from the facts in the Original

Complaint that Plaintiffs would amend and add a claim premised on this separate and temporally

distinct act by Defendants, where the allegations only addressed the design, manufacture, and

testing of the vehicles at issue. Plaintiffs could not have added the unjust enrichment claim to

their Amended Complaint without the complementary allegations that Defendants "estimate[ed]

the cost of the field fix" and "recommended not to fix the outside door handles that affected the

vehicles." Am. Compl. ¶ 73. Considering, contemplating, and ultimately choosing not to initiate

a recall is wholly different than designing, manufacturing, and testing a vehicle, and any cause of

action that arose from the former would likewise be distinct from claims based on the latter. *See*

*Buonanno v. Colmar Belting Co.*, 736 A.2d 86 (R.I. 1999) (amended complaint did not relate to

the original complaint because "the act of ***designing, assembling, and installing*** a mechanical

---

[2] Plaintiffs argue that the Massachusetts law regarding relation back applies in this case. *See* Pls.'
Remand Mem. at 13-14. Though Plaintiffs fail to explain the significance of applying Massachusetts law
versus federal law and actually argue relation back under both the federal and state rules, *see id.* at 14,
Plaintiffs are incorrect that the state law applies. *See Magno v. Canadian Pac., Ltd.*, 84 F.R.D. 414, 416
(D. Mass. 1979) ("While it is true that this Circuit does follow the minority view that federal courts sitting
in diversity cases follow state procedure as to relation back when state substantive law provides the rule
of decision, that rule does not apply to diversity cases where federal law provides the rule of decision or
in federal question cases. If federal substantive law controls the decision of the case, a federal court, even
in this Circuit, must apply federal Rule 15(c).") (citations omitted).

conveyor belt concerns a wholly different occurrence from the act of ***maintaining*** the equipment and the real property where the equipment is located") (emphasis added).

Not only is the unjust enrichment unveiled in Plaintiffs' Amended Complaint based on different facts than the claims in Plaintiffs' Original Complaint, it calls for wholly different relief than what was sought by the claims in the Original Complaint. The only form of relief Plaintiffs sought in their original causes of action – *i.e.*, breach of express warranty, breach of implied warranty, conspiracy, and violation of the Massachusetts Consumer Protection Act – was monetary damages. *See* Compl. ¶¶ 82, 91, 96, 101. For their new unjust enrichment cause of action, Plaintiffs seek, for the first time, an equitable remedy, specifically "disgorgement of profits made as a result of the injuries to Plaintiffs and members of the proposed Class." Am. Compl. ¶ 108. That Plaintiffs now seek this new form of relief, of both a different type and measure than the "compensatory damages" sought in the Original Complaint, is further proof that the Amended Complaint's unjust enrichment claim "is sufficiently independent of the original contentions that it must be treated as fresh litigation." *Knudsen*, 2005 WL 1389059, at *2.

Adding one final bit of support that the Plaintiffs' Amended Complaint should not relate back to their Original Complaint is their long delay in both serving and amending the Original Complaint. Plaintiffs have not offered any explanation for this delay, even though they are obliged to explain it. *See Weber v. Cmty. Teamwork, Inc.*, 434 Mass. 761, 786 (2001) ("While the rules of 'relation back' are liberal where a party seeks to amend a complaint after a statute of limitations has expired, the rules are 'not so broad as to encompass any claim that was known to the complainant that could have been brought in a timely fashion.") (citing *Wynn & Wynn, P.C. v. Mass. Comm'n Against Discrimination*, 431 Mass 655, 673 (2000)); *Mathis v. Mass. Elec.*

*Co.*, 409 Mass. 256, 264-65 (1991) ("[U]nexcused delay in seeking to amend is a valid basis for denial of a motion to amend.").  Given that the Original Complaint was filed just a few days before CAFA was enacted (but after it was clear that President Bush planned to sign it into law), and that the Original Complaint was amended before it was even served, Plaintiffs clearly rushed to file their Original Complaint to avoid the jurisdictional provisions of CAFA but never planned to use that pleading.  Hence, this Court should factor that Plaintiffs never intended to litigate this case based upon the Original Complaint in its consideration as to when this action commenced. *See Zee-Bar, Inc. v. Kaplan*, 162 F.R.D. 422, 425 (D.N.H. 1993) (in determining whether to allow amendment, court should consider the "totality of circumstances" and "balance the equitable considerations"); *Conroy v. Boston Edison Co.*, 758 F. Supp. 54, 58 (D. Mass. 1991) (holding that amendment that "add[ed] an entirely new and distinct claim of discrimination" did not relate back and noting that courts look closely at the timing of the filing of the amendment if it appears to be an attempt to avoid filing requirements).  Lest it wish to reward the Plaintiffs' gamesmanship, this Court should hold that this action commenced upon filing of the Amended Complaint and that CAFA applies to Plaintiffs' claims.

       **B.**      **The Requirements For Federal Jurisdiction Under CAFA Are Met Here.**

      Under CAFA, federal jurisdiction exists over any class action where "any member of a class of plaintiffs is a citizen of a State different from any defendant" and where "the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs. . . ."  28 U.S.C. § 1332(d)(2).  In their remand motion, Plaintiffs do not even try to argue that this action does not meet those jurisdictional requirements, because they cannot.  All of these requirements are clearly met here:  (1) Plaintiffs have brought this action as a putative class action on behalf of all Massachusetts residents owning certain Ford vehicles model years 1997-2000;  (2) the amount in controversy in this matter exceeds $5,000,000; and (3) complete diversity exists as

none of the named plaintiffs are residents of the same state as any of the defendants.  *See* Am. Compl. ¶¶ 7-10, 13-14, 23.

*First*, while CAFA only applies to class actions, *see* 28 U.S.C. § 1332(d)(2), Plaintiffs have pled this action as a putative class action, seeking to certify a class consisting of:

> [o]wners of model year 1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition or model year 2000 Ford F150 Super Crew vehicles that contain defective outside door handle systems and who are residents of Massachusetts. Excluded from the class are all claims for personal injury by Plaintiffs or class members.  Also excluded from the class of defendants, any entity in which defendants have a controlling interest and defendants' legal representatives, heirs and successors.

Am. Compl. ¶¶ 1, 23.

*Second*, CAFA requires diversity of citizenship, that is, that "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2).  The named plaintiffs in this case, Joseph Iannacchino, Victor Marchese, and Soledad Berrios are all citizens of Massachusetts, *see* Am. Compl. ¶¶ 7-9, whereas no Defendant is a citizen of this State.  Defendant Ford is a citizen of Delaware or Michigan.  *See* Am. Compl. ¶ 10.  Defendant Ford Motor Company of Canada Limited is a citizen of Canada.  *See* Am. Compl. ¶ 12. Defendant Magna Donnelly Corporation is a citizen of Michigan.  *See* Am. Compl. ¶ 12. Defendant Intier Automotive Closures of America, Inc. is a citizen of Delaware or Michigan. *See* Am. Compl. ¶¶ 13-14.  Because Plaintiffs are citizens of Massachusetts and none of the Defendants are citizens of Massachusetts, the diversity requirements of 28 U.S.C. § 1332(d)(2)(A) are clearly met.

*Third*, the amount-in-controversy requirement is clearly met as well.  Under 28 U.S.C. § 1332(d)(2), federal diversity jurisdiction exists when "the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs. . . ."  28 U.S.C. § 1332(d)(2).  In their

Amended Complaint, Plaintiffs seek to represent a class of all Massachusetts residents owning

"1997 to 2000 Ford F-150, Ford F250 (light duty), Ford Expedition or model year 2000 Ford

F150 Super Crew vehicles."  Am. Compl. ¶ 23.  Ford attached to its Notice of Removal a

declaration from Richard Serafini, Ford's Supervisor of North American Sales Reporting,

asserting that approximately 43,242 new Ford F-150 trucks, Ford F-250 trucks, and Expeditions,

model years 1997 through 2000, were sold in Massachusetts. *See* Serafini Decl. ¶ 7.  While the

body of the Amended Complaint is artfully vague as to the type and amount of damages

Plaintiffs and other putative class members supposedly suffered, Plaintiffs' demand letters,

which were attached to the Amended Complaint, assert that "[e]ach individual Plaintiff has

suffered economic damages based on the conduct of Ford and each of the manufacturing

defendants in the amount of approximately $1,200 per vehicle."  Am. Compl. Exs. A-E.

Multiplying this amount sought per plaintiff by the number of subject vehicles sold in

Massachusetts shows that approximately $51,890,400 in damages is in dispute in this litigation.

Clearly the jurisdictional threshold of $5,000,000 is met in this case, without taking into account

any double, treble, or punitive damages which are available to Plaintiffs under their causes of

action and which they are seeking.  *See* Am. Compl. Prayer for Relief ¶ 3; Am. Compl. Exs. A-E

("If you fail to make a tender of settlement [of $1,200 per putative class member], or if the relief

tendered is not reasonable, your company may be liable for double or treble damages, together

with interest, costs, and attorneys' fees."); Mass. Gen. Laws. ch. 93A, § 9(3) ("[I]f the court finds

for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars,

whichever is greater; or up to three but not less than two times such amount if the court finds that

the use or employment of the act or practice was a willful or knowing violation of said section

two or that the refusal to grant relief upon demand was made in bad faith with knowledge or

reason to know that the act or practice complained of violated said section two."); *see also F.C.I. Realty Trust v. Aetna Cas. & Ins. Co.*, 906 F. Supp. 30, 32 n.1 (D. Mass. 1995) (explaining that treble damages under Mass. Gen. L. c. 93A "are a form of punitive damages, and '[w]here both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount.'") (citing *Bell v. Preferred Life Assur. Soc.*, 320 U.S. 238, 240 (1943)).

Accordingly, because CAFA governs this action and that statute's requirements for federal diversity jurisdiction have been met, this Court should uphold the removal of this action.

## CONCLUSION

For all the foregoing reasons, Ford Motor Company and Ford Motor Company of Canada respectfully request that this Court deny Plaintiffs' Motion to Remand.

Dated: July 14, 2005

Respectfully Submitted,

FORD MOTOR COMPANY,
FORD MOTOR COMPANY OF
CANADA, LTD.,

By their Attorneys:
/s/Joseph S. Sano_____
Joseph S. Sano, Esq. (BBO #545706)
Daniel S. Tarlow, Esq. (BBO# 552920)
Walter B. Prince, Esq. (BBO#: 406640)
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8100

**OF COUNSEL:**

John H. Beisner
Brian C. Anderson
Mel Andrew Schwing
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., Suite 1000
Washington, D.C. 20006-4001
(202) 383-5300 – Telephone
(202) 383-5414 – Fax

## CERTIFICATE OF SERVICE

I, Joseph S. Sano, hereby certify that on July 14, 2005, I served the within document by causing copies to be mailed by first class mail postage prepaid to counsel of record as follows:

Plaintiffs' Counsel:
David C. Strouss, Esq.
Kristin Marquis Fritz, Esq.
THORNTON & NAUMES
100 Summer Street – 30th Floor
Boston, MA 02110

Plaintiffs' Counsel:
Frederick Jekel, Esq.
William Narwold, Esq.
Suzanne Lafleur Klok, Esq.
MOTLEY RICE LLP
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464

Intier Automotive Counsel:
John B. Strasburger, Esq.
Jason W. Billeck, Esq.
Weil, Gotshal & Manges LLP
700 Louisiana
Suite 1600
Houston, Texas 77002

Magna Donnelly Corp.'s Counsel:
Terri Steinhaus Reiskin, Esq.
Hogan & Hartson
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004-1109

Intier Automotive Counsel - Local
James Messenger, Esq.
Weil, Gotshal & Manges LLP
100 Federal Street
Boston, MA 02110
617-772-8300

Of Counsel - Ford Motor Company:
John H. Beisner
John F. Niblock
Mel Andrew Schwing
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., Suite 1000
Washington, D.C. 20006-4001

/s/Joseph S. Sano
Joseph S. Sano

DC1:633121.2